1  Andrew Hudson (DC Bar No.  996294)
2  (202) 326-2213 / ahudson@ftc.gov
   Laura Basford (DC Bar No.  993645)
3  (202) 326-2343 / lbasford@ftc.gov
   Jody Goodman (DC Bar No.  404879)
4  (202) 326-3096 / jgoodman1@ftc.gov
5  600 Pennsylvania Ave., NW, CC-8528
   Washington, DC 20580
6
7  Local Counsel
   Kenneth Abbe (CA Bar No. 172416)
8  (310) 824-4313 / kabbe@ftc.gov
9  10990 Wilshire Boulevard, Suite 400
   Los Angeles, California 90024
10
11
12 Attorneys for Plaintiff
   Federal Trade Commission
13

**FILED**
CLERK, U.S. DISTRICT COURT

January 29, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ____AK____ DEPUTY

**LODGED**
CLERK, U.S. DISTRICT COURT

1/29/2018

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

14          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15

16 **Federal Trade Commission**,          <u>**Filed Under Seal**</u>

17          Plaintiff,

18     vs.                               No.  _2_ :18-CV-_729-JAK-MRW_x

19                                       COMPLAINT FOR PERMANENT
20 **Digital Altitude LLC**, a Delaware   INJUNCTION AND OTHER
   limited liability company,            EQUITABLE RELIEF
21 **Digital Altitude Limited**, a United
   Kingdom company,
22 **Aspire Processing LLC**, a Nevada
   limited liability company,
23
   **Aspire Processing Limited**, a United
24 Kingdom company,
25 **Aspire Ventures Ltd**, a United
   Kingdom company,
26 **Disc Enterprises Inc.**, a Nevada
   corporation,
27
   **RISE SYSTEMS & ENTERPRISE LLC**, a
28 Utah limited liability company,

1

| | |
|---|---|
| 1 | **RISE Systems & Enterprise LLC**, a |
| 2 | Nevada limited liability company, |
| | **Soar International Limited Liability** |
| 3 | **Company**, a Utah limited liability |
| 4 | company, |
| | **The Upside, LLC**, a California limited |
| 5 | liability company, |
| 6 | **Thermography for Life, LLC, also** |
| | **d/b/a Living Exceptionally, Inc.**, a |
| 7 | Texas limited liability company, |
| 8 | **Michael Force,** individually and as an |
| | officer, member, and/or manager of |
| 9 | Digital Altitude LLC and Soar |
| 10 | International Limited Liability |
| | Company, |
| 11 | **Mary Dee**, individually and as an |
| 12 | officer, member, and/or manager of |
| | Digital Altitude LLC, Digital Altitude |
| 13 | Limited, Aspire Processing LLC, RISE |
| 14 | Systems & Enterprise LLC, The Upside, |
| | LLC, and Thermography for Life, LLC, |
| 15 | **Morgan Johnson**, individually and as |
| 16 | an officer, member, and/or manager of |
| | Digital Altitude LLC and RISE Systems |
| 17 | & Enterprise LLC, |
| 18 | **Alan Moore**, individually and as an |
| | officer, member, and/or manager of |
| 19 | Digital Altitude LLC and Aspire |
| 20 | Processing Limited, |
| | **Sean Brown**, individually and as an |
| 21 | officer, member, and/or manager of |
| 22 | Aspire Processing LLC, Disc |
| | Enterprises Inc. and RISE Systems & |
| 23 | Enterprise LLC, |
| 24 | Defendants. |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution,

1 | the refund of monies paid, disgorgement of ill-gotten monies, and other equitable
2 | relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act,
3 | 15 U.S.C. § 45(a).

**JURISDICTION AND VENUE**

4 |
5 | 2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§
6 | 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).
7 | 3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3),
8 | (c)(1), and (c)(2), and 15 U.S.C. § 53(b).

**SUMMARY OF THE CASE**

10 | 4.      Defendants operate a fraudulent scheme that preys on consumers
11 | hoping to earn money while working from home. Defendants falsely tell
12 | consumers that through their "system" or "program," consumers will earn large
13 | sums of money operating their own business online. Defendants represent to
14 | consumers that Defendants' program will enable consumers to "start and grow a
15 | profitable online business" and "make six figures online in the next ninety days or
16 | less." Defendants extract steep fees for membership, but the vast majority of
17 | consumers who pay Defendants never earn substantial income, much less the
18 | claimed "six figures."
19 | 5.      Defendants' program consists of a series of tiered membership levels,
20 | each with a membership fee higher than the last. Defendants pay a consumer only
21 | when the consumer recruits new consumers to join the program, through
22 | commissions on the new consumers' membership fees. Although Defendants'
23 | program ostensibly provides business coaching that will help members build a
24 | successful business, the goal of that "coaching" is to persuade the member to
25 | purchase a higher membership tier.
26 | 6.      Defendants have charged individual consumers substantial amounts of
27 | money, ranging from several hundred dollars to more than $50,000, with total
28 | consumer injury exceeding $14,000,000.

7.     Defendants' deceptive sales pitches violate the FTC Act.

## PLAINTIFF

8.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

9.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A).

## DEFENDANTS

### Corporate Defendants

10.    Defendant **Digital Altitude LLC** ("Digital Altitude") is a Delaware limited liability company with a registered agent address of 16192 Coastal Highway, Lewes, DE 19958 and has maintained a principal place of business of 520 Broadway, Santa Monica, CA 90401. The founder and CEO of Digital Altitude is Michael Force and its officers include Mary Dee, Morgan Johnson, and Alan Moore. Digital Altitude transacts or has transacted business in this district and throughout the United States.

11.    Defendant **Digital Altitude Limited** ("Digital Altitude UK") is a United Kingdom company that uses a mail forwarding company's address of Third Floor, 207 Regent Street, London, United Kingdom, W1B 3HH as its registered business address. Digital Altitude UK transacts or has transacted business in this district and throughout the United States. Michael Force owns Digital Altitude UK, and Mary Dee is its manager. Digital Altitude UK is listed in the "Terms of Service" on Digital Altitude's website, and elsewhere on the website, as Digital Altitude's "UK Address."  Defendants have also used Digital Altitude UK to open

a merchant account that processed consumers' credit card payments to Digital
Altitude. Digital Altitude UK has shared an address with Aspire Processing
Limited. Digital Altitude UK has controlled a website, www.aspireonline.co, that
advertises Digital Altitude memberships and appears nearly identical to certain
pages of Digital Altitude's website, and to a website controlled by Aspire
Processing LLC. When consumers on the www.aspireonline.co website click to
make a purchase, the website takes them to a Digital Altitude website to enter their
payment information. Ownership of www.aspireonline.co has passed from Digital
Altitude UK to Aspire Processing Limited and then to Aspire Ventures Ltd,
although the website has continued to advertise the same Digital Altitude
memberships in the same manner.

12. Defendant **Aspire Processing LLC** ("Aspire Processing") is a
Nevada limited liability company with a registered agent address of 701 South
Carson Street, Suite 200, Carson City, NV 89701. Aspire Processing transacts or
has transacted business in this district and throughout the United States. Mary Dee
is a manager of Aspire Processing, and Sean Brown is an officer. Defendants have
used Aspire Processing to open merchant accounts that process consumers' credit
card payments to Digital Altitude. Aspire Processing has used Digital Altitude's
registered agent's Lewes, DE address, a Fort Worth, TX residential address used by
Thermography for Life, LLC, and the address of a Walnut, California mail
forwarding company with which Digital Altitude has an account. Aspire Processing
has used Digital Altitude's federal tax ID number to open bank accounts. Aspire
Processing has shared telephone numbers and an email address with Aspire
Processing Limited and Aspire Ventures Ltd. In an application to a payment
processor, Aspire Processing has stated that its website is www.aspireonline.co,
which, as described in Paragraph 11, advertises Digital Altitude memberships and
takes purchasers to Digital Altitude's website for payment, and has been controlled
at various times by Digital Altitude UK, Aspire Processing Limited and Aspire

Ventures Ltd. Aspire Processing has controlled a website, www.aspirereach.com, that advertises Digital Altitude memberships and appears nearly identical to certain pages of Digital Altitude's website, and to www.aspireonline.co. When consumers on the www.aspirereach.com website click on certain links to make a purchase, the website takes them to a Digital Altitude website to enter their payment information. On the www.aspirereach.com website, Aspire Processing lists its address as "16192 Coastal Hwy London N15 5NU," using the street address of Digital Altitude's registered agent and the city and postal code of Aspire Processing Limited and Aspire Ventures Ltd.

13.     Defendant **Aspire Processing Limited** ("Aspire Processing UK") is a United Kingdom company with a registered business address of ████████████████ ████, London ████████, United Kingdom, which appears to be a residence. Aspire Processing UK transacts or has transacted business in this district and throughout the United States. Aspire Processing UK is owned by Mary Dee, and Alan Moore is an officer. Aspire Processing UK has shared an address with Digital Altitude UK. Aspire Processing UK has shared telephone numbers and an email address with Aspire Processing and Aspire Ventures Ltd. Aspire Processing UK has registered a website, www.aspireonline.co, that, as described in Paragraph 11, advertises Digital Altitude memberships and takes purchasers to Digital Altitude's website for payment.

14.     Defendant **Aspire Ventures Ltd** ("Aspire Ventures") is a United Kingdom company with the same registered business address as Aspire Processing UK: ████████████████, London ████████, United Kingdom. Aspire Ventures transacts or has transacted business in this district and throughout the United States. Aspire Ventures has shared telephone numbers and an email address with Aspire Processing and Aspire Processing UK. Aspire Venture's website, www.aspireonline.co, as described in Paragraph 11, advertises Digital Altitude memberships and takes purchasers to Digital Altitude's website for payment. A

website owned and controlled by Aspire Processing repeatedly lists Aspire
Ventures as the owner or controller of the website in its "Terms of Service."

15.    Defendant **Disc Enterprises Inc.** ("Disc") is a Nevada corporation
with a registered agent address of ████████████, Las Vegas, NV ████.
Disc transacts or has transacted business in this district and throughout the United
States. Disc's officers include Sean Brown and Digital Altitude's Vice President for
Business Development (who is not named as a defendant), and the signatories on
its bank account include Mary Dee and Morgan Johnson. Defendants have used
Disc to open merchant accounts that process consumers' credit card payments to
Digital Altitude. Disc has commingled funds with Digital Altitude and
Thermography for Life, LLC. Disc has used Digital Altitude's registered agent's
Lewes, DE address, shared an address with Thermography for Life, LLC, and
shared a business phone number with Aspire Processing.

16.    Defendant **RISE Systems & Enterprise LLC** ("RISE Utah") is a
Utah limited liability company with a registered business address of 1501 North
Technology Way Building B, Orem, UT 84121. RISE Utah transacts or has
transacted business in this district and throughout the United States. RISE Utah's
manager is Sean Brown and the signatories on its bank accounts include Mary Dee
and Morgan Johnson. Defendants have used RISE Utah to open merchant accounts
that process consumers' credit card payments to Digital Altitude. RISE Utah has
commingled funds and shared an address and phone numbers with Digital Altitude,
and used the Lewes, DE address of Digital Altitude's registered agent.

17.    Defendant **RISE Systems & Enterprise LLC** ("RISE Nevada") is a
Nevada limited liability company with a registered agent address of 701 South
Carson Street, Suite 200, Carson City, NV 89701. RISE Nevada transacts or has
transacted business in this district and throughout the United States. Mary Dee and
Morgan Johnson are managers of RISE Nevada. Defendants have used RISE
Nevada to open merchant accounts that process consumers' credit card payments to

1   Digital Altitude. RISE Nevada has shared an address at a mail forwarding service

2   with Digital Altitude, shared a phone number with Digital Altitude, and has used

3   Digital Altitude's registered agent's Lewes, DE address.

4   18.   Defendant **Soar International Limited Liability Company** ("Soar")

5   is a Utah limited liability company with a registered business address of 1426 East

6   750 North, 1st Floor, Orem, UT 84097. Soar transacts or has transacted business in

7   this district and throughout the United States. Soar's managers are Michael Force

8   and Digital Altitude's Vice President for Business Development (who is not named

9   as a defendant), and signatories on its bank accounts include Mary Dee and Sean

10   Brown. Digital Altitude has used Soar's address in at least one account with a

11   payment processor.

12   19.   Defendant **The Upside, LLC** ("Upside") is a California limited

13   liability company with a registered business address of 340 South Lemon Avenue,

14   Walnut, CA 91789—which is the address of a mail forwarding company with

15   which Digital Altitude has an account. Upside transacts or has transacted business

16   in this district and throughout the United States. Mary Dee is a manager of Upside.

17   Defendants have used Upside to open a merchant account to process consumers'

18   credit card payments to Digital Altitude. Defendants also directed their salespeople

19   to use Upside's website, which was controlled by Alan Moore, to process

20   consumers' payments to Digital Altitude.

21   20.   Defendant **Thermography for Life, LLC, also d/b/a Living**

22   **Exceptionally, Inc.** ("Thermography") is a Texas limited liability company with a

23   registered business address of 6340 Lake Worth Boulevard, #103, Fort Worth, TX

24   76135. Thermography transacts or has transacted business in this district and

25   throughout the United States. Mary Dee is a principal of Thermography. Although

26   Thermography may have previously been involved in other ventures, since 2016,

27   Thermography's activities have been primarily or solely related to the Digital

28   Altitude scheme. Thermography has sent payments to Digital Altitude's employees

1    and affiliates and received payments from payment processors for Digital

2    Altitude's benefit. Thermography has commingled funds with Digital Altitude and

3    Disc. Thermography's registered business address is a PO Box with a mail

4    forwarding service that Thermography shares with Digital Altitude. Thermography

5    has used a Fort Worth, TX residential address also used by Disc and Aspire

6    Processing.

7    ***Individual Defendants***

8           21.    Defendant **Michael Force** ("Force") is a California resident. He is the

9    CEO and founder of Digital Altitude, the sole shareholder of Digital Altitude UK,

10   and a member and manager of Soar. At all times material to this Complaint, acting

11   alone or in concert with others, he has formulated, directed, controlled, had the

12   authority to control, or participated in the acts and practices set forth in this

13   Complaint. Force resides in this district and, in connection with the matters alleged

14   herein, transacts or has transacted business in this district and throughout the

15   United States.

16          22.    Defendant **Mary Dee** ("Dee") is a Texas resident. She is a member

17   and manager of Aspire Processing, RISE Nevada, and Upside, a manager of

18   Thermography, the sole director of Digital Altitude UK, the sole shareholder of

19   Aspire Processing UK, and an officer of Digital Altitude. During all or part of the

20   times material to this Complaint, acting alone or in concert with others, she has

21   formulated, directed, controlled, had the authority to control, or participated in the

22   acts and practices set forth in this Complaint. In connection with the matters

23   alleged herein, Dee transacts or has transacted business in this district and

24   throughout the United States.

25          23.    Defendant **Morgan Johnson** ("Johnson") is a Texas resident. She is a

26   member and manager of RISE Nevada, and an officer of Digital Altitude. During

27   all or part of the times material to this Complaint, acting alone or in concert with

28   others, she has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices set forth in this Complaint. In connection with the matters alleged herein, Johnson transacts or has transacted business in this district and throughout the United States.

24.     Defendant **Alan Moore** ("Moore") is a Massachusetts resident. He is the Chief Technology Officer of Digital Altitude and secretary of Aspire Processing UK. During all or part of the times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. In connection with the matters alleged herein, Moore transacts or has transacted business in this district and throughout the United States.

25.     Defendant **Sean Brown** ("Brown") is a Utah resident. He is the sole principal of RISE Utah, an officer of Aspire Processing, and claims to be a member of the board of directors of Digital Altitude. During all or part of the times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. In connection with the matters alleged herein, Brown transacts or has transacted business in this district and throughout the United States.

## **COMMON ENTERPRISE**

26.     Defendants Digital Altitude, Digital Altitude UK, Aspire Processing, Aspire Processing UK, Aspire Ventures, Disc, RISE Utah, RISE Nevada, Soar, Upside, and Thermography (collectively "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged in the Complaint. The Corporate Defendants have conducted the business practices described herein through an interrelated network of companies that have a common business purpose, business functions, and employees; have commingled funds; and are all controlled by Force, the other Individual Defendants, and others acting at their behest. Because all of the Corporate Defendants have operated as a common

1    enterprise, each of them is jointly and severally liable for the acts and practices

2    alleged below. Individual Defendants Force, Dee, Johnson, Moore, and Brown

3    have formulated, directed, controlled, had the authority to control, or participated

4    in the acts and practices of the Corporate Defendants that constitute the common

5    enterprise.

6                                    **ALTER EGO**

7           27.    As stated in Paragraphs 10-14, 21-22, and 24, there is such a unity of

8    interest between Digital Altitude UK, Aspire Processing UK, and Aspire Ventures

9    (the "UK Entities"), and Digital Altitude, Aspire Processing, Michael Force, Mary

10   Dee, and Alan Moore that the UK Entities are alter egos of Digital Altitude, Aspire

11   Processing, Michael Force, Mary Dee, and Alan Moore, individually and/or

12   collectively. The UK Entities are all dominated and controlled by Michael Force,

13   directly or through the other Individual Defendants and others involved with the

14   scheme, and were created to facilitate the Digital Altitude scheme.

15          28.    Failure to disregard the UK Entities' corporate forms would sanction a

16   fraud and injustice by shielding and safeguarding the UK Entities from liability for

17   their role in a deceptive scheme that has caused at least $14 million in consumer

18   injury, and unjustly enriching them by permitting them to keep moneys obtained

19   from consumers through fraud and their participation in the fraudulent Digital

20   Altitude scheme.

21          29.    This Court has personal jurisdiction over the UK Entities because the

22   UK Entities are alter egos of Digital Altitude, Aspire Processing, Michael Force,

23   Mary Dee, and Alan Moore, individually and/or collectively.

24                                    **COMMERCE**

25          30.    At all times material to this Complaint, Defendants have maintained a

26   substantial course of trade in or affecting commerce, as "commerce" is defined in

27   Section 4 of the FTC Act, 15 U.S.C. § 44.

28

## DEFENDANTS' BUSINESS PRACTICES

31.     Since at least 2015, Defendants have marketed and sold purported money-making opportunities to consumers throughout the United States and abroad. Defendants advertise their purported money-making program extensively through online webpages and social media platforms, including Facebook and Instagram. Once consumers join, Defendants encourage them to add to the marketing effort by placing their own advertisements online, on social media platforms, and otherwise. Defendants make their own advertising copy, branded images, and other marketing materials available to consumers for this purpose, and direct consumers to use these materials in the consumers' marketing efforts. A substantial number of consumers have created marketing websites of their own, posted YouTube videos, and/or placed advertisements and marketing posts of their own on social media, all touting Defendants' program.

32.     The main focus of Defendants' advertisements—whether placed on a website, social media platform, or elsewhere, and whether placed by Defendants directly or by consumers using Defendants' marketing materials—is a representation that consumers will quickly make substantial earnings with Defendants' program. For example, the advertisements frequently claim that, with Defendants' program, consumers will "make six figures online in the next ninety days or less."

33.     Defendants' program consists of a series of tiered membership levels, each with a membership fee higher than the last. The underlying membership program, called Aspire, requires payment of a recurring monthly fee. Until August 2017, monthly membership fees for Aspire were $37, $67, or $127. Starting in August 2017, the Aspire fees changed to $47 or $97 a month. Defendants also use Aspire to refer to their program as a whole ("the Aspire program" or "the Aspire system").

34.     In conjunction with the Aspire membership, consumers are induced to purchase Digital Altitude's levels, or tiers: Base, Rise, Ascend, Peak, and Apex. These tiered levels' membership fees are each a one-time payment. However, consumers must continue to pay a monthly Aspire fee to remain an active member of Defendants' program, even after they buy in to these higher membership tiers. The prices for the higher tiers increase dramatically, starting at $597 for Base and rising to $26,997 for Apex. Starting in August 2017, the price for Apex increased to $29,997.

35.     Typically, advertisements direct consumers to a webpage controlled by Digital Altitude, which contains a large advertisement stating that the Aspire system offers "6 steps to 6-figures online in 90-days or less."  The site asks the consumer to provide an email address, offering "Instant Access to Step 1" of the system. The webpage typically includes a number of testimonial videos from individuals who claim to have made money with Defendants' program.

36.     For example, Defendants' website www.aspir.info contains the following advertisement:



37.     Once a consumer provides an email address, the webpage typically takes the consumer to a video message from Defendant Force, in which he states that the consumer is about to learn how to "make six figures online in the next ninety days or less."  Force explains that the consumer will earn this money because he, Force, will "give" the consumer Force's own "million dollar business." Force introduces the "Aspire business system," a "powerful, done-for-you, digital business system" containing "all the tools you need to start making money online."

38.     The consumer then begins to receive emails from Michael Force, which also state the consumer will make significant income if he or she joins Digital Altitude. For example, one email from Michael Force that was sent to consumers who had recently joined Aspire makes the following claims: "The ASPIRE program has been tested and proven by tens-of-thousands of people. The 18 steps WORK. You just have to follow them. Step 1 lays the foundation for you to build a 6-Figure digital business in 90 days… even if you're starting from scratch."

1     39.    Defendants have offered both a free 14-day trial of the Aspire program

2  and a 14-day trial of the Aspire program for one dollar.

3     40.    The Aspire program consists of a series of nineteen "training" videos,

4  a few PDF documents, and "mentorship" from a business "coach."  However, the

5  videos, which Michael Force narrates, are designed to convince consumers to

6  purchase higher-tier memberships, and the "coach" is really a salesperson for

7  Defendants, paid on commission.

8     41.    Digital Altitude pays consumers only when they recruit new

9  consumers to join the program, in the form of commissions on the new consumers'

10  membership fees. And, consumers can collect commissions only for sales of

11  membership tiers that they themselves have already purchased. Commissions are a

12  percentage of the purchase price, and thus the potential commissions for sales of

13  the higher-tier memberships are dramatically higher than the potential

14  commissions for sales of the lower-tier memberships. Defendants and their

15  salespeople warn consumers that they must purchase the highest possible tier

16  membership so they will not miss out on these substantially higher commissions.

17     42.    Defendants also offer ancillary products and services that they claim

18  will help consumers recruit new members, and thus earn commissions. These

19  services include providing internet traffic and help with social media postings,

20  among others. Many consumers learn only after they join that there are additional

21  costs for these products and services.

22                        *Defendants' Deceptive Marketing*

23     43.    Defendants have marketed their purported money-making program

24  through online advertisements and videos on websites and social media platforms

25  such as Facebook and Instagram.

26     44.    Defendants have maintained websites and online marketing materials

27  that tell consumers they can make "six figures in ninety days or less." Among other

28  things, the websites say Defendants' training program was "developed *by* 7-figure

15

digital marketers, *for* digital marketers." In one promotional video on one of Defendants' websites, Defendant Force says, among other things, "You are about to receive a very special guide that reveals how you can make six figures online in the next ninety days or less," "If you follow the process, results are guaranteed," and "I promise you we won't stop until you've earned your first six figures."

45.     In truth and in fact, most consumers who join Defendants' program never make six figures, or any substantial amount of money. Defendants' "system" consists of little more than high-pressure sales tactics to get consumers to pay hundreds or thousands of dollars to Defendants. Most consumers make little or nothing, and do not even recoup their investment.

46.     Defendants themselves admit, on an un-advertised and hard-to-find website (Defendants include a nondescript link to this website, in small font, at the bottom of one webpage they operate), that the majority of consumers who actively participate in Digital Altitude's program earn less than $100 per month, and that less than one percent earn six figures in a 90-day period:

The table below shows the monthly high, low and average income earned by active affiliates that earned commissions during the month from Jan 1st, 2017 to Nov 30th, 2017.

| Monthly Income Level | Active Affiliates | Monthly High Income | Monthly Low Income | Monthly Avg. Income | Annualized Avg. Income |
|---|---|---|---|---|---|
| $50,000- $179,535.73 | < 1% (< 1% $50,000+) | $179,535.73 | $50,029.51 | $82,132.96 | $985,595.57 |
| $25,000 - $49,999 | < 1% (1.3% $25,000+) | $49,915.19 | $25,089.48 | $33,254.82 | $399,057.84 |
| $10,000 - $24,999 | 2% (3.3% $10,000+) | $24,993.01 | $10,050.99 | $15,932.24 | $191,186.84 |
| $5,000 - $9,999 | 2.3% (5.6% $5,000+) | $9,986.32 | $5,006.09 | $7,091.56 | $85,098.77 |
| $2,500 - $4,999 | 3.1% (8.7% $2,500+) | $4,989.42 | $2,500.00 | $3,453.38 | $41,440.55 |
| $1,000 - $2,499 | 5% (13.7% $1,000+) | $2,499.25 | $1,000.00 | $1,547.61 | $18,571.27 |
| $500 - $999 | 8.4% (22.1% $500+) | $999.69 | $500.00 | $657.85 | $7,894.22 |
| $250 - $499 | 6.3% (28.3% $250+) | $499.97 | $250.80 | $364.53 | $4,374.35 |
| $100 - $249 | 8.5% (36.8% $100+) | $249.93 | $100.28 | $164.85 | $1,978.21 |
| Less than $100 | 60.1% | $99.94 | $0.00 | $24.89 | $298.64 |

Because the figures include only "active affiliates" (consumers who are paying an additional $17 per month to Digital Altitude in order to be "eligible" to earn commissions), they entirely omit many consumer victims, such as those who

1   realized they would not make money with Defendants' program and quit without

2   becoming "active affiliates."

3   *Defendants' Deceptive Sales Pitch*

4        47.    Once consumers join Defendants' program, often through a free or

5   one dollar trial, Defendants assign consumers a "coach"—i.e., a Digital Altitude

6   salesperson. These salespeople typically communicate with consumers via

7   webchats and online calls or video conferences. The salespeople instruct

8   consumers to watch the nineteen online Aspire videos.

9        48.    The Aspire videos, narrated by Michael Force, form both the bulk of

10   the Aspire program and the heart of Digital Altitude's sales pitch to consumers. In

11   the videos, Michael Force makes additional claims about the large sums of money

12   consumers can make with Defendants' program. For example, in the Aspire Step 1

13   video, entitled "How to Create a 6-Figure Online Business in 90-Days or Less,"

14   Force claims, "I'm going to show you how to build a six-figure digital business in

15   ninety days from scratch, just the way I did." In the Aspire Step 6 video, Force

16   claims the consumer can "reach your goals," including "if you want to promote

17   Digital Altitude and get to ten, twelve, twenty, thirty, forty, fifty thousand dollars or

18   more a month. It's all possible. I've done it all and I've seen literally hundreds of

19   people over the years do it." The videos advocate buying higher membership

20   levels in Digital Altitude to enable higher commissions. Defendants' salespeople

21   reiterate this message, telling consumers that they will make money with the

22   program, but that they need to buy a higher-tier membership in Digital Altitude to

23   do so.

24        49.    Typically, Defendants' salespeople ensure the consumer has watched

25   all of the videos up through Step 6 before giving the first such sales pitch—usually

26   for the Rise level, at a cost of approximately $2,000.

27        50.    As a consumer progresses through the Aspire videos and buys into

28   higher levels of Defendants' program, Defendants continue to make

17

misrepresentations about how much money consumers can earn with Digital Altitude. For example, the Aspire Step 9 video is called "How to Get 4500 in Commissions With No Extra Work," and exhorts consumers to buy an Ascend membership, with claims that they can earn $20,000 to $30,000 a month. The Aspire Step 10 video is called "How to Get 7500 in Commissions With No Extra Work" and urges consumers to purchase the Peak membership, assuring consumers of thousands of dollars in commissions. And Aspire Step 14, entitled "The Power of Positioning: How to Live the Real 4-Hour Workweek" warns consumers: "You are leaving $60,000 on the table by not being an ASCEND, PEAK and APEX [member]. . . . This is exactly how I have generated over $100,000 a month minimum for the last 15 years."

51. Defendants also tell consumers, for example, that Digital Altitude salespeople will "do all the work" for the consumer to generate sales, which will yield commissions—the consumer's anticipated income. This is not the case. Instead, the consumer is responsible for advertising, generating internet traffic, and bringing new consumers to Digital Altitude. For many consumers, even doing all of this yields few if any sales, and little or no income.

52. Similarly, Defendants' Aspire Step 6 video tells the consumers that the system "includes all the automation, all the sales funnels, the follow-up, the community, tools, and resources, the affiliate tracking platform, everything is all built into it for you to ensure your success." Consumers soon learn, however, that their Digital Altitude membership does not provide "everything" necessary to their success. Defendants' salespeople tell consumers to go to other websites, and pay more money to buy internet traffic ("clicks") or email advertising services, to generate sales. As consumers progress deeper into the program, Defendants' salespeople tell them that the substantial income that Defendants claimed they would earn will not actually be forthcoming unless consumers spend significant

additional money—in some cases thousands of dollars each month—on such traffic or marketing services.

53.    Defendants also represent that Digital Altitude's program will provide consumers with significant "passive income." Michael Force and others attest in videos to money pouring into mailboxes or bank accounts while the lucky Digital Altitude member is scuba diving, hiking, lounging by a pool, or engaged in other activities, none of them involving any work. The Aspire Step 6 video says that the Aspire system works for the consumer "on autopilot 24 hours a day, seven days a week, all around the world." Most consumers who buy into the program, however, whether at the Rise or the higher Ascend, Peak or Apex levels, discover that no such income stream is forthcoming.

54.    Defendants' representations about the so-called "coaching" is also deceptive. In the Aspire "Welcome" video, Force tells consumers joining Digital Altitude they will receive "private and personal one-on-one business coaching for you during your start-up phase and your set-up phase and your overall scaling and success phases. So we're going to hand hold you through that entire process. We have a series of coaches all on standby to really help you get up the mountain, so to speak." Later in that same video, Force says, "I've handpicked every single one of the top tier coaches and I know them all very well, okay? They are actually living the life that they have, now showing you how to obtain [sic]. So they are very qualified in what they do. They are great people and they are looking forward to working with you one-on-one." In another video, Force says, "If you follow the process, results are guaranteed," and "I promise you we won't stop until you've earned your first six figures."

55.    These "coaches" are in fact salespeople for Defendants who are paid on commission to sell Digital Altitude memberships. They are not required to have any business coaching qualifications. Indeed, Digital Altitude encourages consumers to use its "sales team" to close sales for them, but many consumers do

1    not realize the "sales team" and the "coaching" staff are one and the same—that

2    their sales tactic is to play the role of "coach."

3        56.    Michael Force has also informed consumers via email that "Your

4    coach is a 6-Figure marketer. In fact, no one can be a coach in our business if they

5    are not already making 6-Figures in their own online business." The "coaches" in

6    the program, however, are not necessarily six-figure marketers.

7        57.    Defendants also have a draconian and confusing refund policy that

8    precludes most consumers from obtaining a refund once they realize they are not

9    going to make money with Defendants' program. Defendants' online

10   advertisements tell consumers that they have a "full 14 days" to try out

11   Defendants' program. For example, Defendants' website www.aspir.info states the

12   following:

13

14   

15

16

17

18

19

20

21

22

23

24

25

26       58.    When a consumer purchases a higher-level Digital Altitude

27   membership, however, Defendants' salesperson sends the consumer an electronic

28   copy of a twelve-page, small-print contract that contains an inconspicuous clause

1   providing a strict 72-hour window from the time of signing to cancel and receive a

2   refund. Defendants' salesperson pressures the consumer to sign quickly and

3   Defendants' frequent use of "Aspire" to describe the whole "system" indicates that

4   the 14-day trial period for Aspire applies to these further purchases. Thus, many

5   consumers do not realize that a different, much shorter refund policy applies. In

6   many cases, by the time a consumer realizes he wants to cancel, it is past the 72

7   hours, and Defendants refuse to give a refund.

8               *Defendants' Misrepresentations to Banks and Payment Processors*

9           59.   In order to accept credit and debit card payments from consumers,

10   Defendants opened merchant accounts with banks through various intermediaries,

11   known as payment processors.

12          60.   Payment processors and banks terminated Defendants' merchant

13   accounts at least ten times between July 2016 and January 2017 because of

14   Defendants' suspect business practices, including numerous consumer disputes of

15   payments they had made to Defendants. Such consumer disputes are known as

16   "chargebacks." Some consumers sought chargebacks after Defendants refused to

17   give them a refund.

18          61.   When the high chargeback rates led payment processors and banks to

19   terminate Defendants' merchant accounts in the name of Digital Altitude,

20   Defendants embarked on further deception to continue to process credit and debit

21   card charges for their sales. Defendants set up new corporations with different

22   names (such as Corporate Defendants Aspire Processing and RISE Systems and

23   Enterprise), opened new merchant accounts with these corporations, and began

24   using the new merchant accounts to process consumers' payments to Digital

25   Altitude. Defendants sometimes used the names of third parties, including

26   individual defendants' spouses, to open such accounts.

27          62.   Defendants also misrepresented Digital Altitude's payment processing

28   history, stating in one merchant account application that Digital Altitude had never

had a merchant account terminated, even though payment processors and banks had previously terminated Digital Altitude merchant accounts at least eight times.

63.  Underwriters for payment processors and banks (who decide whether a processor or bank should open an account for a merchant) may look at a payment processing applicant's websites to learn about the applicant, including whether the applicant's business practices might expose the processor to risk. To evade this scrutiny, Defendants created "dummy" underwriting sites to show payment processors when they sought new merchant accounts. Defendants' dummy underwriting sites differ significantly from the websites that actually generate Defendants' sales. For example, these dummy sites do not include the earnings claims that Defendants make on their sales-generating websites, such as the www.aspir.info site, shown above in Paragraph 36. Below is an example of one such dummy site, www.digitalaltitude.co:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19







20    64.    Furthermore, in an apparent effort to evade the banks' and credit card

21  companies' fraud monitoring programs, Defendants also misrepresented who

22  owned Digital Altitude in their applications for merchant accounts. They variously

23  stated that Defendant Dee owned 51%, 60%, and 90% of the entity, even though,

24  according to Defendant Force's sworn testimony, Defendant Dee is not an owner of

25  Digital Altitude at all.

26                        **VIOLATIONS OF THE FTC ACT**

27    65.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

28  deceptive acts or practices in or affecting commerce."

66.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT I

### Misrepresentations Regarding Earnings

67.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their purported money-making opportunities, Defendants have represented, directly or indirectly, expressly or by implication, that purchasers of their purported money-making opportunities would earn or were likely to earn substantial income, such as six figures in ninety days or less.

68.     Defendants' representations set forth in Paragraph 67 of this Complaint are false, misleading, or were not substantiated at the time the representations were made.

69.     Therefore, Defendants' representations as set forth in Paragraph 67 of this Complaint constitute a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II

### Misrepresentations Regarding Goods and Services Provided

70.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their purported money-making opportunities, Defendants have represented, directly or indirectly, expressly or by implication, that purchasers of their purported money-making opportunities would receive business coaching that would provide what the consumer needed to build a successful business.

71.     Defendants' representations set forth in Paragraph 70 of this Complaint are false, misleading, or were not substantiated at the time the representations were made.

1    72.    Therefore, Defendants' representations set forth in Paragraph 70 of

2    this Complaint constitute a deceptive act or practice in or affecting commerce in

3    violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

4    **CONSUMER INJURY**

5    73.    Consumers have suffered and will continue to suffer substantial injury

6    as a result of Defendants' violations of the FTC Act. In addition, Defendants have

7    been unjustly enriched as a result of their unlawful acts or practices. Absent

8    injunctive relief by this Court, Defendants are likely to continue to injure

9    consumers, reap unjust enrichment, and harm the public interest.

10    **THE COURT'S POWER TO GRANT RELIEF**

11    74.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court

12    to grant injunctive and such other relief as the Court may deem appropriate to halt

13    and redress violations of any provision of law enforced by the FTC. The Court, in

14    the exercise of its equitable jurisdiction, may award ancillary relief, including

15    rescission or reformation of contracts, restitution, the refund of monies paid, and

16    the disgorgement of ill-gotten monies, to prevent and remedy any violation of any

17    provision of law enforced by the FTC.

18    **PRAYER FOR RELIEF**

19    WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15

20    U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

21    A.    Award Plaintiff such preliminary injunctive and ancillary relief as may

22    be necessary to avert the likelihood of consumer injury during the pendency of this

23    action and to preserve the possibility of effective final relief, including but not

24    limited to, temporary and preliminary injunctions, an order freezing assets,

25    immediate access, and the appointment of a receiver;

26    B.    Enter a permanent injunction to prevent future violations of the FTC

27    Act by Defendants;

28

1        C.    Award such relief as the Court finds necessary to redress injury to

2    consumers resulting from Defendants' violations of the FTC Act, including but not

3    limited to, rescission or reformation of contracts, restitution, the refund of monies

4    paid, and the disgorgement of ill-gotten monies; and

5        D.    Award Plaintiff the costs of bringing this action, as well as such other

6    and additional relief as the Court may determine to be just and proper.

7

8                                  Respectfully submitted,

9                                  DAVID C. SHONKA

10                                 Acting General Counsel

11   Dated:  1/29/2018

12                                 /s/

13                                 Andrew Hudson

14                                 Laura Basford

15                                 Jody Goodman

16                                 Federal Trade Commission

17                                 600 Pennsylvania Ave., NW

18                                 Mailstop CC-8528

19                                 Washington, DC 20580

                                (202) 326-2213 / ahudson@ftc.gov

20                                 (202) 326-2343 / lbasford@ftc.gov

                                (202) 326-3096 / jgoodman1@ftc.gov

21

22                                 Attorneys for Plaintiff

23                                 FEDERAL TRADE COMMISSION

24

25

26

27

28