

**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov
www.nvsilverflume.gov

# Instructions for Initial List/Annual List and State Business License Application

***ATTENTION:*** You may now file your Initial/Annual List and State Business License online at www.nvsilverflume.gov

**IMPORTANT: READ ALL INSTRUCTIONS CAREFULLY BEFORE COMPLETING FORM.**

TYPE or PRINT the following information on the Annual List:

1. The *NAME* and *ENTITY NUMBER* of the entity *EXACTLY* as it is registered with this office.

2. The *FILING PERIOD* is the month and year of filing **TO** the month and year 12 months from that date. Example: if the entity date was 1/12/99 the filing period would be 1/1999 to 1/2000.

3. The name and addresses as required on the list should be entered in the boxes provided on the form.

4. If qualified for a statutory exemption from the State Business License, enter the applicable code in the area provided. If claiming exemption, a Declaration of Eligibility for State Business License Exemption must accompany annual list. Entities claiming exemption cannot file online.

5. NRS Chapter 81 – Nonprofit: Entities which are under Unit-owners' association or Religious, charitable, fraternal or other organization that qualifies as a tax-exempt organization pursuant to 26 U.S.C. § 501(c) are excluded from the requirement to obtain a state business license. Please indicate if this entity falls into one of these categories by marking the appropriate box. If the entity does not meet either of these categories please submit $200.00 for the state business license.

6. The *SIGNATURE*, including signer's title and date signed MUST be included in the areas provided at the bottom of the form. Signature may be that of an officer or equivalent or that of another person authorized by the entity to sign the list.

7. Completed *FORM*, *FEES* and applicable *PENALTIES* must be returned to the Secretary of State. Pursuant to NRS 225.085, all Initial and Annual Lists must be in the care, custody and control of the Secretary of State by the close of the business on the due date. Lists received after the due date will be returned unfiled, and will require any associated fees and penalties as a result of being late. Trackable delivery methods such as Express Mail, Federal Express, UPS Overnight may be acceptable if the package was guaranteed to be delivered on or before the due date yet failed to be timely delivered.

<u>*FILING FEES:*</u> The annual filing fee for corporations will be based on the amount represented by the total number of shares provided for in the articles. See fee schedule or contact our office. Annual lists for nonprofit corporations without shares are $50.00. Nonprofit corporations and corporations sole are not required to maintain a State Business License or pay the additional fee.

<u>*ADDITIONAL FORMS*</u> may be obtained on our website at www.nvsos.gov or by calling 775-684-5708.

<u>*FILE STAMPED COPIES:*</u> To receive one file stamped copy, please mark the appropriate check box on the list. Additional copies require $2.00 per page and appropriate order instructions.

<u>*CERTIFIED COPIES:*</u> To order a certified copy, enclose an additional $30.00 and appropriate instructions. A copy fee of $2.00 per page is required for each copy generated when ordering 2 or more certified copies.

<u>*EXPEDITE FEE:*</u> Filing may be expedited for an additional $125.00 fee for 24-hour service, $500.00 for 2-hour service and $1000.00 for 1-hour service.

Filing may be submitted at the office of the Secretary of State or by mail at the following addresses:

**MAIN OFFICE:**
*Regular and Expedited Filings*

> Secretary of State
> Status Division
> 202 North Carson Street
> Carson City NV 89701-4201
> Phone: 775-684-5708
> Fax: 775-684-7123

**SATELLITE OFFICE:**
*Expedited Filings Only*

> Secretary of State – Las Vegas
> Commercial Recordings Division
> 555 East Washington Ave, Suite 5200
> Las Vegas NV 89101
> Phone: 702-486-2880
> Fax: 702-486-2888

Nevada Secretary of State List Instructions
Revised: 10-1-15

## INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE
## BUSINESS LICENSE APPLICATION OF:

FILE NUMBER

| RISE SYSTEMS & ENTERPRISE LLC |
|---|

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

016-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF        AUG, 2016        TO        AUG, 2017.  Due by Sep 30, 2016

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

100401

☐  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:*  *Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign  he form. FORM WILL BE RETURNED IF UNSIGNED.

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the filing fee of $150.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more  han 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200 00. Effective 2/1/2010, $100 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:**  If requested above, one file stamped copy will be returned at no addi ional charge.  To receive a cer ified copy, enclose an additional $30.00 per cer ification.  A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies.  Appropriate instructions must accompany your order.

7. Return the completed form to:  Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of  he Secretary of State on or before the last day of the first month following the incorporation/initial registration date.  (Postmark date is not accepted as receipt date )  Forms received after due date will be returned for additional fees and penalties.  Failure to include initial list and business license fees will result in rejection of filing.

ABOVE SPACE IS FOR OFFICE USE ONLY

FILING FEE: $150.00      LATE PENALTY: $75.00 (if filing late)          BUSINESS LICENSE FEE: $200.00      LATE PENALTY: $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

NRS 76.020 Exemption Codes

☐  Pursuant to NRS Chapter 76, this entity is exempt from the business license fee.  Exemption code: ☐

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE:  If claiming an exemption, a notarized Declaration of Eligibility form must be attached.**
**Failure to attach the Declaration of Eligibility will result in rejection,**

---

NAME

| |
|---|

### MANAGER OR MANAGING MEMBER

ADDRESS                                        CITY                        STATE    ZIP CODE

| | | | |
|---|---|---|---|

---

NAME

| |
|---|

### MANAGER OR MANAGING MEMBER

ADDRESS                                        CITY                        STATE    ZIP CODE

| | | | |
|---|---|---|---|

---

NAME

| |
|---|

### MANAGER OR MANAGING MEMBER

ADDRESS                                        CITY                        STATE    ZIP CODE

| | | | |
|---|---|---|---|

---

NAME

| |
|---|

### MANAGER OR MANAGING MEMBER

ADDRESS                                        CITY                        STATE    ZIP CODE

| | | | |
|---|---|---|---|

---

**None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.**

**I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.**

Title                              Date

**X**

| | | |
|---|---|---|

**Signature of Manager, Managing Member or Other Authorized Signature**

CONFIDENTIAL

Nevada Secretary of State Initial List Manor Mem
Revised: 7-1-15

FTC-CID-000145

F01-AW-0007685

EX 22

742



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**

**ATTACH FORM ONLY IF CLAIMING A
STATE BUSINESS LICENSE EXEMPTION**



*270104*

---

## Declaration of Eligibility for State Business License Exemption

(This form must be notarized)

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                    ABOVE SPACE IS FOR OFFICE USE ONLY

This form must accompany the List of Officers only if claiming exemption from the State Business License.  Please provide the information requested only for the exemption for which you claim eligibility.  Failure to provide the requested information or to notarize this document will result in a rejected filing, which could result in late fees.

**Entity Name:** _____       **NV Business I.D. Number:** _____

**001 - Governmental Entity**
☐ This entity is an incorporated or unincorporated agency or instrumentality of the United States government or any state government; a corporation wholly owned by the United States government; or county, city, district, or other political subdivision of a state.

**002 - 501(c) Nonprofit Entity**
☐ This entity is qualified as a 501(c) Nonprofit Entity pursuant to Title 26 U.S.C. Section 501(c).  Please provide the Internal Revenue Service (IRS) issued **Federal Employer Identification Number (FEIN)** _____

**005 - Motion Picture Company**
Is the primary purpose of this entity to create or produce motion pictures, as defined in NRS 231.020?   ☐ **Yes**   ☐ **No**
If yes to above question, does the creation or production of motion pictures occur in Nevada?   ☐ **Yes**   ☐ **No**
If so, please provide Nevada Film Office registration number: _____

**006 - NRS 680B.020 Insurance Company**
Are the activities of this entity regulated through a license or certificate of authority granted by the Division of Insurance pursuant to NRS Title 57?
☐ **Yes**      ☐ **No**
If yes, provide license or certificate of authority number _____

**I declare under penalty of perjury, as a representative authorized by statute to file on behalf of the above named entity, that the declarations indicated above are true and correct.**

**X** _____     _____     _____
Signature                                                      Title                                    Date

State of _____ County of _____

Subscribed and sworn to before me the _____ 20 _____

by _____
                              (Print name of Signer)

*Notary Signature* CONFIDENTIAL

FTC-CID_000146
Nevada Secretary of State Exemption Declaration
Revised:  1-5-15

EX 22
743



# Invoice

| Date | Invoice # | Due Date |
|------|-----------|----------|
| August 30, 2016 | 333164 | 08/25/2016 |

RISE SYSTEMS & ENTERPRISE
16192 Coastal Hwy
Lewes, Delaware 19958
United States
1 (800) 820-7589

TO:
Alene Ray
████████████
St Paul, MN
United States

SHIP TO:

Alene Ray
?da=hk246&t=t4me

| Qty | Description | Unit Price | Total |
|-----|-------------|------------|-------|
| 1 | ASCEND - $9,997.00 | | |
| | | $9,997.00 | $9,997.00 |
| 1 | PEAK - $16,997.00 | | |
| | | $16,997.00 | $16,997.00 |
| 1 | 3% Administration Fee - $809.82 | | |
| | | $809.82 | $809.82 |
| **Total Purchases** | | | **$27,803.82** |

## Payments Made

| | | |
|---|---|---|
| 8/25/2016 Credit Card (Manual) - PAID | | $10,000.00 |
| 8/25/2016 Credit Card (Manual) - PAID | | $5,000.00 |
| 8/26/2016 Credit Card (Manual) - PAID | | $12,803.82 |
| **Total Payments & Adjustments** | | **$27,803.82** |

## Payments Due

| | | |
|---|---|---|
| 8/25/2016 Current | | $0.00 |
| **Outstanding Balance** | | **$0.00** |
| **Balance Due Now** | | **$0.00** |

| Type | Post Date | Description | Amount | Check or Slip # |
|------|-----------|-------------|--------|-----------------|
| DSLIP | 8/5/2016 | DEPOSIT  ID NUMBER 217162 | 50000 | |

CONFIDENTIAL

F01-AW-0007685

| Type | Post Date | Description | Amount | Check or Slip # |
|------|-----------|-------------|--------|-----------------|
| DSLIP | 8/5/2016 | DEPOSIT  ID NUMBER 217162 | 50000 | |

CONFIDENTIAL

F01-AW-0007685

| Type | Post Date | Description | Amount | Check or Slip # |
|------|-----------|-------------|--------|-----------------|
| DSLIP | 8/5/2016 | DEPOSIT  ID NUMBER 217162 | 50000 | |

CONFIDENTIAL

F01-AW-0007685

| Account Name: Account Name | Subject | Type | Case Owner: Full Name | Status | Date/Time Opened | Subject | Text Body | Is Incoming | Status | Message Date | Unit Token | Case Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RISE Systems & Enterprise | Alert from Square, Inc: Action Required | US Risk | Chanelle Mendoza | Closed | 8/25/2016 13:57 | Alert from Square, Inc: Action Required | Hello Morgan, To ensure the financial security of both you and your customers, we need to verify some information about your account. Unfortunately, we cannot deposit funds to your bank account until we verify this information, although you will be able to accept payments using Square during this period. Our goal is to resume deposits to your bank account as quickly as possible. We're sorry for any inconvenience this may cause. If you?re unsure why you received this email, please see this article. To verify your account, please do the following: Log in to the Square Dashboard. Click "Begin verification" next to the alert icon at the top of the page. Please answer the verification form with as much detail as possible. You can upload documents directly through the questionnaire or fax them to us. Click "Submit." Once you've completed the form, you'll receive an email confirmation and should expect to hear back from us within one to two business days. If you have questions regarding the form, or are unsure of what documentation to send, please read our list of frequently asked questions. If you still have questions, please call +1-855-700-5000 and have your customer code ready: 4006-2316-6206. We're available Monday through Friday from 9 a.m. to 5 p.m. Pacific Time. We apologize for the inconvenience this may cause. We hope to make this process as easy as possible so you can get back to business. Thanks in advance for your cooperation. Square Account Services © 2016 Square, Inc. ref_00DE0Y7ru._500E0eJ5O0:ref | 1 | New | 8/25/2016 13:57 | 5T92P97334UW8 | 17944121 |
| RISE Systems & Enterprise | Alert from Square, Inc: Your action is required | US Compliance | US Compliance Queue | Closed | 8/30/2016 17:48 | Alert from Square, Inc: Your action is required | Hello Morgan, Congratulations on the success of your business! As a high-volume customer, your business is now defined under Visa and MasterCard rules as a Commercial Entity. As such, our Card Network partners request all qualified Square customers review and consent to the terms of the Commercial Entity Agreement. To view and accept the agreement, please do the following: Please log in to the Square Dashboard on a computer at https://squareup.com/login. Click "Sign Commercial Entity Agreement" next to the alert icon at the top of the page. Read the agreement. Complete all required fields and click "I Agree". You will need to be logged into your Square account in order to access the agreement page. If you are not currently logged in, you will be redirected to the sign-in page. This will not affect how your Square account operates. Please find below answers to some commonly asked questions regarding the Commercial Entity Agreement. If you have any additional questions, please don't hesitate to contact our support team. Thank you for your cooperation and your continued business! Sincerely, Square Compliance Team What is a Commercial Entity Agreement? A Commercial Entity Agreement is a compliance requirement set forth by our Card Network partners. It details credit card network (Visa, MasterCard) rules governing the authorization, conveyance and settlement of transactions using services provided by Square. In addition, it is an acknowledgement of the payments you process using Square are associated to a commercial business. Is this required? When happens if I do not sign this agreement? Since this is a compliance requirement, consent to the agreement is mandatory. Square is obligated to obtain the consent from eligible users on behalf of our Card Network partners. In the event we do not receive a consent to the agreement from your business, we will be unable to accept payments for your business using services provided by Square. Why is my business considered a commercial entity? Visa and MasterCard collectively define users who have processed a high volume of payments as commercial entities. Our records indicate your business has approached $100,000 in credit card payments using Square and is therefore defined as a commercial entity. This message was sent from an unmonitored email address. If you have any further questions, please visit our Help Center at https://squareup.com/help or email us at compliance@help-messaging.squareup.com. © 2016 Square, Inc. ref_00DE0Y7ru._500E0eg5O0:ref | 1 | New | 8/30/2016 17:48 | 5T92P97334UW8 | 17998659 |

| Account | Subject | Queue | Sub-Queue | Status | Date | Title | Message | Count | State | Date | Code | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RISE Systems & Enterprise | Alert from Square, Inc: Important Information About Your Account | US Risk | Stacey Guzman | Closed | 9/1/2016 22:11 | Alert from Square, Inc: Important Information About Your Account | Hello Morgan, We're sorry to inform you that we are deactivating your account. Our Account Services team reviewed your account and found a pattern of transactions associated with high-risk activity. For further information about our policies, you can review section 36 of the Square Payment Terms. We regret that, starting today, you will no longer be able to process transactions using Square. Any funds currently in your account will be held for 90 days before being released to your linked bank account. If you'd prefer to receive funds more quickly, you should consider refunding the payments back to the original cards and seeking alternate forms of payment. (Please note that we will refund all the fees, too.) Refunds are available within 60 days of the original payment. To process a refund, log in to the Square dashboard. Use the date selector tool to locate the specific payment. Click the payment you'd like to refund, then click "Issue Refund". Select the reason you're refunding the payment, and click "Issue Refund." Unfortunately, our decision to deactivate your account is final. Due to security reasons and the obligations of our agreements with card networks and other financial institutions, we cannot reverse this decision and are unable to provide additional details. Again, we apologize for any inconvenience this may have caused. Sincerely, Square Account Services © 2016 Square, Inc. ref._00lEOY7ru_S00l0oldxqh.ref | 1 | New | 9/1/2016 22:11 | 5T92P97334LW8 | 18028379 |
| RISE Systems & Enterprise | Action required for a $10,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/7/2016 8:32 | Action required for a $10,000.00 payment dispute | Hello RISE Systems & Enterprise, We've received notice of a $10,000.00 payment dispute on a payment you processed on September 01, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/form/a70b437317c to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $10,000.00 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/oX8y8T53jDFFYe9HP6d5uMF. Thanks, Square Dispute Resolutions Team | 1 | New | 11/7/2016 8:32 | 5T92P97334LW8 | 18625152 |
| RISE Systems & Enterprise | Action required for a $10,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/7/2016 8:32 | We haven't received a response for your $10,000.00 | Hello RISE Systems & Enterprise, We haven't received a response from you regarding the $10,000.00 payment dispute on a transaction that was processed on September 01, 2016. Please fill out this Information Request Form: https://squareup.com/form/a70b437317c within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 11/10/2016 14 07 | 5T92P97334LW8 | 18625152 |
| RISE Systems & Enterprise | Action required for a $10,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/7/2016 8:32 | $10,000.00 payment dispute update | Hello RISE Systems & Enterprise, Thank you for your patience during the resolution process. We are happy to inform you that your $10,000.00 payment dispute has been resolved in your favor. Dispute Reason: Goods/Services not as described Disputed Amount: $10,000.00 Payment Amount: $10,000.00 Payment Date: September 1, 2016 08:55 CDT Payment Card: Visa - 4112 Receipt: https://squareup.com/receipt/preview/oX8y8T53jDFFYe9HP6d5uMF If funds were placed on hold for this dispute, they will be credited back to your Square account within 1-2 business days. Please refer to the dispute notification email we previously sent you for more information. If no funds were placed on hold for this dispute, the dispute will be closed and no further action will be taken. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/oX8y8T53jDFFYe9HP6d5uMF. Thanks, Square Dispute Resolutions Team | 1 | New | 2/13/2017 10:14 | 5T92P97334LW8 | 18625152 |
| RISE Systems & Enterprise | Action required for a $3,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/8/2016 7:00 | Action required for a $3,000.00 payment dispute | Hello RISE Systems & Enterprise, We've received notice of a $3,000.00 payment dispute on a payment you processed on September 01, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/form/f93e5d5aef8 to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $3,000.00 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/klJmgwLnwjHT7U56zVEeAMF. Thanks, Square Dispute Resolutions Team | 1 | New | 11/8/2016 7 00 | 5T92P97334LW8 | 18636965 |

EX 22
750

| Company | Subject | Dept | Queue/Assignee | Status | Date | Short Subject | Message | | New | Timestamp | Ref | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RISE Systems & Enterprise | Action required for a $3,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/8/2016 7:00 | We haven't received a response for your $3,000.00 payment | Hello RISE Systems & Enterprise, We haven't received a response from you regarding the $3,000.00 payment dispute on a transaction that was processed on September 01, 2016. Please fill out this Information Request Form: https://squareup.com/form/93eb545beef8 within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 11/11/2016 14 07 | 57929973340W8 | 18636965 |
| RISE Systems & Enterprise | Action required for a $3,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/8/2016 7:00 | Please fill out a quick survey about your experience | Dear RISE Systems & Enterprise, If you have a minute, we'd like to hear your feedback about your recent chargeback experience. We're constantly looking for ways to improve your experience. Share feedback: https://squareup.com/form/ba6d6b670a5 Thank you in advance for your candid responses. Square Dispute Resolutions Team | 1 | New | 11/30/2016 8 05 | 57929973340W8 | 18636965 |
| RISE Systems & Enterprise | Action required for a $3,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/8/2016 7:00 | $3,000.00 payment dispute update | Hello RISE Systems & Enterprise, Thank you for your patience during the resolution process. We are happy to inform you that your $3,000.00 payment dispute has been resolved in your favor. Dispute Reason: Goods/services not as described Disputed Amount: $3,000.00 Payment Amount: $3,000.00 Payment Date: September 1, 2016 08:52 CDT Payment Card: American Express - 1002 Receipt: https://squareup.com/receipt/preview/kBregwLvwjHfT7U56oYExsMF Issuing Bank Comment: Cm contacted charity sans of your e/s on 10/17/16 via email. on claims investment was made in a multi-level marketing business. the coaching was coercive, inaccurate and misleading. statements made were fraudulent. or systems & enterprise p45v4v (squareup.com/receipts161017 If funds were placed on hold for this dispute, they will be credited back to your Square account within 1-2 business days. Please refer to the dispute notification email we previously sent you for more information. If no funds were placed on hold for this dispute, the dispute will be closed and no further action will be taken. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/kBregwLvwjHfT7U56oYExsMF. Thanks, Square Dispute Resolutions Team | 1 | New | 3/8/2017 10 05 | 57929973340W8 | 18636965 |
| RISE Systems & Enterprise | Action required for a $3,000.00 payment dispute | US Disputes | US Disputes Queue | Closed | 11/8/2016 7:00 | Please Create a New Case with Square Support | Hi Morgan, Thanks for your reply! It's been more than 2 weeks since we last heard from you, so we've closed this case. If you have additional questions, please create a new case with our Support Team by visiting the Support Center (https://squareup.com/help?utm_campaign=case-closed-email&utm_medium=email&utm_source=support-email). Additionally, feel free to visit Square's Seller Community (https://www.sellercommunity.com/?utm_source=email&utm_medium=email&utm_campaign=case-closed-email) to get ideas and help from other Square sellers. Thanks again, Square Support ------ For your reference this is Case #: 18636965 ------ Please keep in mind that Square will be able to use and share any idea you submit without any obligations or restrictions. For more details, please visit Square Legal Agreements, Notices, Licenses, and Policies: https://squareup.com/legal/ua ------ © 2017 Square, Inc. ref _00E07n7ru_5000Lb9tfz ref | 1 | New | 3/8/2017 10 05 | 57929973340W8 | 18636965 |
| RISE Systems & Enterprise | Alert from Square, Inc: Important Information About Your Account | US Risk | Stacey Guzman | Closed | 12/8/2016 17:26 | Alert from Square, Inc: Important Information About Your Account | Hello Morgan, Due to the recent chargebacks on your account, any funds currently in your Square account will be held for an additional 60 days. Thank you for understanding. Sincerely, Square Account Services © 2016 Square, Inc. ref _00E07n7ru_5000LinyLa ref | 1 | New | 12/8/2016 17:26 | 57929973340W8 | 18902597 |
| RISE Systems & Enterprise | Alert from Square, Inc: Important Information About Your Account | US Risk | Stacey Guzman | Closed | 2/13/2017 18:17 | Alert from Square, Inc: Important Information About Your Account | Hello Morgan, We wanted to let you know that the hold on your Square account has expired, and your funds are scheduled to be deposited to your linked bank account within one to two business days. Please note that your account status remains unchanged. We appreciate your patience and apologize again for any inconvenience this may have caused. Sincerely, Square Account Services © 2017 Square, Inc. ref _00E07n7ru_5000Ll8A9 ref | 1 | New | 2/13/2017 18:17 | 57929973340W8 | 19487447 |

Confidential Information - Do Not Distribute
Square Inc.

## Digital Altitude LLC

| Date | Type | Comment |
|---|---|---|
| 3/24/17 at 4:34pm PDT 2 months ago | Web | ▮ has removed the freeze on ▮ H5M1. REASON: Releasing funds. Spoke to recovery and fraud about this one before releasing. No Increase in CBs since last extended. 9CBs(11.93%) + No FD |
| 3/24/17 at 4:34pm PDT 2 months ago | Web | Releasing funds. Spoke to recovery and fraud about this one before releasing. No Increase in CBs since last extended. 9CBs(11.93%) + No FD #hold |
| 1/23/17 at 7:27pm PST 4 months ago | Web | Increasing CBs. 9(11.93%) ▮ |
| 7/25/16 at 5:01pm PDT 10 months ago | Web | ▮ has placed a freeze on ▮ H5M1. REASON: M's business model is quite risky and has 2 ripoff reports in 2013. April & May has quite a good Bank Coverage while March was quite weak. No CBs yet but has a 7.90% refund rate already. #hold:90days |
| 7/25/16 at 5:01pm PDT 10 months ago | Web | M's business model is quite risky and has 2 ripoff reports in 2013. April & May has quite a good Bank Coverage while March was quite weak. No CBs yet but has a 7.90% refund rate already. ▮ |
| 7/25/16 at 5:01pm PDT 10 months ago | Web | disabled ▮ XH5M1's ability to take payment cards. REASON: M's business model is quite risky and has 2 ripoff reports in 2013. April & May has quite a good Bank Coverage while March was quite weak. No CBs yet but has a 7.90% refund rate already. |
| 7/25/16 at 9:48am PDT 10 months ago | Web | this seems like a pyramid scheme, no cbs yet, but I can see a lot service based cbs coming in because the customer may not obtain the success they are looking for through this website |
| 6/27/16 at 4:58pm PDT a year ago | Web | Account already on credit risk watch for 30 days. Balance negative, no transactions to review. Discussed with ▮ |
| 6/20/16 at 5:39pm PDT a year ago | Web | ▮ has removed the freeze on ▮ H5M1. REASON: M can support a dispute, watch for continued accel |

Trade Secret Exempt from Production under FOIA Exemption 4

FTC-CID_000156

| 6/20/16 at 2:56pm PDT a year ago | Web | ▬ fraud declines | ▬ has placed a freeze on ▬ H5M1. REASON: bs, suspected |
| 4/21/16 at 10:15pm PDT a year ago | Web | | ▬ has removed the freeze on ▬ H5M1. REASON: ok docs. M provided contract, zip matches the cc zip. Same customer for both cards. TLO: heavy liens. Ask for bank if there are more txns. |
| 4/20/16 at 5:29pm PDT a year ago | Web | | ▬ has placed a freeze on 96YE3T02XH5M1. REASON: OOO card. |

Trade Secret Exempt from Production under FOIA Exemption 4

FTC-CID_000157

F01-AW-0008339

## Saucey Sliderz

| Date | Type | Comment |
|------|------|---------|
| 9/23/16 at 10:28am PDT 8 months ago | Web | watch carefully - website does describe catering services but high $ CNP watch for sharing w/ linked DA |
| 9/2/16 at 10:11am PDT 9 months ago | Web | ██████████ has removed the freeze on ██████████ BRH7. REASON: Claims high CNP was charged in error - WATCH Linked acct for same agent was DA'd w/ shared cc too |
| 9/1/16 at 7:32pm PDT 9 months ago | Web | ██████████ has placed a freeze on ██ BRH7. REASON: uptick, intl, split payment see also shared |

Trade Secret Exempt from Production under FOIA Exemption 4

# RISE Systems & Enterprise

| Date | Type | Comment |
|---|---|---|
| 2/13/17 at 6:17pm PST 3 months ago | Web | ▮ has removed the freeze on ▮ 4JW8. REASON: it's been 5 months with only 1 CB. 75% Pan. Ok with releasing. |
| 9/1/16 at 10:10pm PDT 9 months ago | Web | ▮ disabled ▮ 4JW8's ability to take payment cards. REASON: claims that this is a new biz when they have been processing similarly on other accts. Could be they rebranded due to the ripoff reports CR found. |
| 8/25/16 at 1:58pm PDT 9 months ago | Web | ▮ has placed a freeze on ▮ 4JW8. REASON: high $ CNP, intl. Linked DAs share geo pins in TX. Hard linked relate to catering. |

Trade Secret Exempt from Production under FOIA Exemption 4

FTC-CID_000159

F01-AW-0008339

EX 22
755

## ASPIRE Processing LLC

| Date | Type | Comment |
|------|------|---------|
| 12/13/16 at 11:35am PST 5 months ago | Web | ███ has removed the freeze on ███ 99JT. REASON: hold elapsed, no CBs. |
| 9/13/16 at 1:58pm PDT 8 months ago | Web | disabled ███ 99JT's ability to take payment cards. REASON: LFU, ███ H5M1 ███ same website as ███ |

Trade Secret Exempt from Production under FOIA Exemption 4

8/30/2017                                          LIVING EXCEPTIONALLY, INC.

## IRFs



| IRF ID | | Group | Type | Requested By | Status | Progress | Submitted | Completed | Reviewed | Reviewed By | |
|--------|---|-------|------|--------------|--------|----------|-----------|-----------|----------|-------------|--|
| 6b2 | ^ | Cbms | Charg | cbms | **Reviewed** | 88% | _ | _ | 1/4/17 at 9 45am PS 8 months ago | cbms | Actions ⌄ |

**Would you like to challenge this dispute?**
Merchant has not responded.

| 672 | ^ | Cbms | Charg | cbms | **Reviewed** | 88% | _ | _ | 1/6/17 at 1 36pm PS 8 months ago | cbms | Actions ⌄ |

**Would you like to challenge this dispute?**
Merchant has not responded.

| 8e0 | ^ | Cbms | Charg | cbms | **Reviewed** | 94% | 12/29/16 at 9 49am PS 8 months ago | _ | 1/19/17 at 1 31pm PS months ago | cbms | Actions ⌄ |

**Would you like to challenge this chargeback?**
yes

**Describe the goods or services sold.**
Merchant has not responded.

**Provide any additional details about this transaction that you  eel are important.**
Merchant has not responded.

**Tell us a bit about your business.**
Merchant has not responded.

**Return or Cancellation Policy**
Merchant has not responded.

**Contract or Agreement**
Merchant has not responded.

**Email Correspondences with Buyer**
Merchant has not responded.

**Copy o  Check Issued**
Merchant has not responded.

**Yelp**
Merchant has not responded.

**Twitter**
Merchant has not responded.

**Facebook**
Merchant has not responded.

**LinkedIn**
Merchant has not responded.

| 6e3 | ^ | Cbms | Charg | cbms | **Reviewed** | 50% | _ | _ | 11/22/16 at 2 00pm PS 9 months ago | cbms | Actions ⌄ |

FTC-CID_LE_000003

F01-AW-0010607                                                                    EX 22
                                                                                   757

8/30/2017                                          LIVING EXCEPTIONALLY, INC.



| IRF ID | Group | Type | Requested By | Status | Progress | Submitted | Completed | Reviewed | Reviewed By |
|--------|-------|------|--------------|--------|----------|-----------|-----------|----------|-------------|

**Would you like to challenge this chargeback?**
Merchant has not responded.

**Signed Sales Slip**
Merchant has not responded.

**Contract or Agreement**
Merchant has not responded.

**Invoice**
Merchant has not responded.

**Email Correspondences with Buyer**
Merchant has not responded.

| 6e3 | ^ Cbms | Disput | cbms | Created | 🗨 25% | _ | _ | _ | — | Actions ⌄ |

**Are you satisfied with your recent interactions with Square, surrounding the chargeback associated with your account?**
Merchant has not responded.

**How likely would you be to recommend Square to a  riend,  amily member or business colleague?**
Merchant has not responded.

**How  amiliar were you with the chargebacks process prior to your recent interaction with Square?**
Merchant has not responded.

**Is there anything else you would like to share with us?**
Merchant has not responded.

| 1a7 | ^ Cbms | Charg | cbms | Reviewed | 🟢 100% | 10/18/16 at 8 18pm PD 10 months ago | 10/18/16 at 8 34pm PD 10 months ago | 11/4/16 at 9 02am PD 10 months ago | cbms | Actions ⌄ |

FTC-CID_LE_000004

F01-AW-0010607                                                                           EX 22
                                                                                          758

8/30/2017                                                 LIVING EXCEPTIONALLY, INC.



| IRF ID | Group | Type | Requested By | Status | Progress | Submitted | Completed | Reviewed | Reviewed By |
|---|---|---|---|---|---|---|---|---|---|

**Would you like to challenge this chargeback?**
yes

**Describe the goods or services sold.**
Member received login and access to online training provided through my client, Digital Altitude. He also received a ticket to our next con erence with Living Exceptionally and Digital Altitude. He's been provided private training and coaching along with everything promised in his purchase agreement. He is outside o  the window to receive a re und and has now claimed not to have recognized the charge.

**Provide any additional details about this transaction that you  eel are important.**
Merchant has not responded.

**Tell us a bit about your business.**
We provide event planning services  or individual small businesses and  or large corporations.

**Signed Sales Slip**
Signed Sales Slip ➡

**Contract or Agreement**
Contract Or Agreement ➡

**Invoice**
nvoice ➡

**Email Correspondences with Buyer**
Email Correspondences With Buyer ➡

**Yelp**
Merchant has not responded.

**Twitter**
Merchant has not responded.

**Facebook**
Merchant has not responded.

**LinkedIn**
Merchant has not responded.

| ATTACHMENTS | |
|---|---|
| 1235037 Signed | CBMS ➡ |
| 1235038 Contra | CBMS ➡ |
| 1235040 nvoice | CBMS ➡ |
| 1235041 Email | CBMS ➡ |
| Open All Attachments | |

| 942 | ∧ Compliance | Comm | regulator | Created | ⚪ 20% | _ | _ | _ | _ | Actions ⌄ |

**Business Name**
Merchant has not responded.

**Legal Entity Type**
Merchant has not responded.

**Business Federal Tax ID**
Merchant has not responded.

**Year o  Incorporation**
Merchant has not responded.

| 76c | ∧ Risk | Basic | Brend | Reviewed | 🟢 100% | 8/2/16 at 11 10pm PD / a year ago | 9/5/16 at 8 20pm PD / a year ago | 9/6/16 at 4 23pm PD / a year ago | Brend | Actions ⌄ |

FTC-CID_LE_000005

F01-AW-0010607

EX 22
759



**DIGITAL ALTITUDE MEMBER PURCHASE AGREEMENT**

Member Purchase Agreement ("Agreement") is entered into between the Purchaser ("Member") and Digital Altitude, LLC. ("Company") located at 16192 Coastal Hwy, Lewes, DE 19958.

By entering into this Agreement, Member is purchasing or upgrading to a Digital Altitude Membership into any of the foregoing digitally delivered suites of online training: ASPIRE monthly memberships, BASE, RISE, ASCEND, PEAK & APEX core products, BUNDLES or TRAFFIC.

**FULL POWER AND AUTHORITY**
Member represents and warrants that: (i) you have the full power and authority to enter into and perform under this Agreement; (ii) execution and performance of this Agreement does not constitute a breach of, or conflict with, any other agreement or arrangement by which you are bound; (iii) the terms of this Agreement are legal, valid, and binding obligation, enforceable against you; (iv) all content you create to promote Company, it's Site, the Content or Service was created without any contribution of any kind from Company including, without limitation, editorial control or approval, that any suggestions regarding content received from Company are made "as-is" and without any warranty; and that you have had all marketing materials created by you reviewed by competent legal counsel and solely assume all responsibility for it; (v) you are at least 18 years of age, (vi) your use of the Site and Content is legal in, and does not violate any laws or rules of, the jurisdictions in which you reside or from which you use or otherwise access the Site, (vii) all information (if any) provided by you to us is correct, (viii) your use of the Site, Content and Services shall be in accordance with this Agreement and your Affiliate Agreement and the Policies and Procedures of Company if you are an affiliate and (ix) you are capable of assuming, and do assume, any risks related to the use of the Site, Content and Services.

**MONTHLY ASPIRE SUBSCRIPTIONS**
*Trial Subscriptions:* The Digital Altitude membership may start with a free/discounted trial period for ASPIRE WALKER, HIKER and/or CLIMBER. The trial period of the membership lasts for 14 days, or as otherwise specified during sign-up. For combinations with other offers, restrictions may apply. Trials are for new Members only. Digital Altitude reserves the right, in its absolute discretion, to determine Member's trial eligibility. The monthly regular retail recurring fee will be charged every 30 days, until canceled by Member. Company reserves the right to change the Membership fee at any time.

*Monthly Subscriptions:* Member has FOURTEEN (14) Days from the date of the original purchase to request a refund for the Digital Altitude ASPIRE monthly subscription. Any refund request after the FOURTEEN (14) DAY time limit will not be honored. Member may cancel at any time to discontinue billing and subscription.

*Annual Subscriptions:* For annual ASPIRE subscription purchases, Member has FOURTEEN (14) Days from the date of the original purchase to request a refund for the Digital Altitude yearly subscription. Any refund request made after 14 days will not be honored.

If Member purchases Digital Altitude products or services that are subscription based, Member agrees to pay, and authorizes automatic recurring billing of the subscription fees with the credit card, or other payment methods on file, until subsequently canceled by Member. The Member's account will be charged every 30 days. Member understands and agrees that each automatic recurring billings of the subscription

fees are non-refundable and will not be prorated as the service is deemed used when accessed. Member authorizes Company to initiate debit entries from the account provided for the subscription fee, as well as any other purchases made on the Site. Member may cancel at any time by contacting Customer Care at support@digitalaltitude.co.

Products that are subscription based for Members and charged monthly are: ASPIRE WALKER, ASPIRE HIKER & ASPIRE CLIMBER.

Products for purchase Individually or Bundled include:
BASE, RISE, RISE BUNDLE, ASCEND, ASCEND BUNDLE, PEAK, PEAK BUNDLE, APEX, APEX BUNDLE & TRAFFIC.

B. Live Events
The events, information, venue and speakers listed on our Sites are subject to change without notification. Member has 60 days prior to the event to request a ticket deferral to the next event if Member cannot attend your scheduled event. Any request after the SIXTY (60) DAY time limit will not be processed. Any unused tickets will be forfeited and are not transferable to another event.

TICKET HOLDERS MAY NOT SELL, OFFER FOR SALE, OFFER AT AUCTIONS, RESELL, DONATE, ACT AS COMMERCIAL AGENT FOR ANOTHER PARTY OR OTHERWISE TRANSFER THEIR TICKETS IN ANY WAY WITHOUT THE SPECIFIC PRIOR WRITTEN CONSENT OF DIGITAL ALTITUDE.

i.Ticket Transfers
Ticket transfers may be processed up to THIRTY (30) Days prior to the event. A $100 transfer fee will be applied to all ticket transfers.

ii. Process for Guest Tickets Transfers
Once a Ticket purchase is confirmed, the Ticket Purchaser may only change the assignment of the Guests accompanying him/her a maximum of 2 times. Requests can be submitted to events@digitalaltitude.co

C. TRAFFIC PACKAGES do NOT include event tickets. TRAFFIC will be delivered no less than 90 days after the official launch date and will be released incrementally based on traffic supply until the number of clicks purchased have been delivered (See Digital Altitude Compensation Plan Document for details).

**REFUND/CANCELLATION POLICY**
A. 72-Hour "No Hassles" Refund Policy on Product Bundles, TRAFFIC & Event inclusive products (RISE BUNDLE, ASCEND, ASCEND BUNDLE, PEAK, PEAK BUNDLE, APEX, APEX BUNDLE & any PRE LAUNCH SPECIALS or BETA Products).

Due to the nature of the digital products, the accessibility of our products immediately upon purchase, and the reservation of your traffic packages and any applicable all-inclusive lodging & meal ticket(s) to the live event(s), there is a strict 72-hour refund policy, which begins on the date of purchase. Member may cancel at any time through your back office or by contacting Customer Care via email at support@digitalaltitude.co

**INVOLUNTARY TERMINATION**
A Member's violation of any of the terms of the Agreement, including any amendments that may be made by Digital Altitude in its sole discretion, may result in any of the actions listed in Section 4.1, including the involuntary termination of his or her Member Agreement. Cancellation shall be effective on the date on which written notice is mailed, emailed, faxed, or delivered to the Member's last known address, email address, or fax number, or to his or her attorney, or when the Member receives actual notice of termination,

whichever occurs first. Where state laws on termination are inconsistent with this termination policy, the applicable state law shall apply.

Digital Altitude reserves the right to terminate all Membership Agreements upon thirty (30) days written notice in the event that it elects to: (a) cease business operations; (b) dissolve as a legal entity or (c) terminates the sale of its products and services via direct selling.

**VOLUNTARY CANCELLATION**

A Member has a right to cancel at any time, regardless of reason. Cancellation must be submitted in writing to the Company at its principal business address or via email to support@digitalaltitude.co. The written notice must include the Member's signature, printed name, address, and Member I.D. Number.

**NON-RENEWAL**

A Member may also voluntarily cancel his or her Member Agreement by failing to renew the Agreement on its anniversary date. The Company may also elect not to renew a Member Agreement upon his/her anniversary date.

**TERMINATION**

Membee agrees that, under certain circumstances, Company may suspend or terminate Member's use of the Site or Service, including without limitation, if Company believes, in our sole and absolute discretion, that Member has breached any term of this Agreement. Member acknowledges and agrees that all suspensions and terminations shall be made in Company's sole discretion and that Company shall not be liable to Member or any other party for said suspension and termination.

Upon termination, Member license to use the Site, Content or Service and everything accessible by or through the Site, Content or Service shall terminate and the remainder of this Agreement shall survive indefinitely unless and until we chose to terminate it.

Upon termination of any part of this Agreement for any reason, we shall make reasonable efforts to ensure that your User Content is inaccessible and cease use of it; however, Member acknowledges and agrees that: (i) caching of, copies of, or references to the User Content may not be immediately removed or possible to remove; (ii) such removed User Content may continue in backups (not available to others) for a relatively short period of time; and such removed User Content may continue to be available (and stored on our servers) through the accounts of other programs.

**PRIVACY POLICY**

Company respects Member privacy and permits Member to control the treatment of Member's personal information. A complete statement of Company's current privacy policy (the "Privacy Policy") can be found here http://www.digitalaltitude.co/privacy-policy. Company's Privacy Policy is expressly incorporated into this Agreement by this reference. When Member is required to submit information to use or access the Site, Content or Service, Member must complete the registration process by providing the information requested on the form. Member agrees to the terms in Company's Privacy Policy regarding the use of the information submitted.

**CHANGES TO THE AGREEMENT**

Digital Altitude reserves the right to amend this Agreement in its sole and absolute discretion. By entering into the Membership Agreement, Member agrees to abide by all amendments or modifications that Digital Altitude elects to make. Amendments shall be effective 30 days after publication of notice that the Agreement has been modified. Amendments shall not apply retroactively to conduct that occurred prior to the effective date of the amendment. Notification of amendments shall be published by one or more of the following methods: (a) posting on the Company's official web site; (b) electronic mail (e-mail); (c) posting in Membership site; (d) inclusion in Company periodicals; or (e) special mailings. In the event of substantive changes, Member will be required to affirmatively assent to the changes. For other changes, the

FTC-CID_LE_000008

continuation of a Member's Digital Altitude membership, the acceptance of any benefits under the Agreement, constitutes acceptance of the amendments.

## LICENSE

Company owns and licenses all intellectual property and other rights, title, and interest in and to the Site, Content and Service, and the materials accessible on the Site and Service, except as expressly provided for in the Agreement. Without limitation, Company owns the trademarks, copyrights and certain technology used in making the Site, its Content and Service available. Except as specifically allowed in this Agreement, the copying, redistribution, use or publication by you of any Content or Service is strictly prohibited. We grant Member a limited revocable license to access and use the Site, Content and our Service for its intended purposes, subject to Member compliance with this Agreement, and Company Policies and Procedures. The revocable license does not include the right to collect or use information contained on the Site or through the Service for purposes that Company prohibits or to compete with Company. No ownership or other interest or other license in or to any patent, copyright, trademark, trade secret and other intellectual property right or to the Content is being granted, assigned or transferred in this Agreement or by reason of your access to, and use of, the Site, Content or Service. If Member uses the Site or our Service in a manner that exceeds the scope of this license or breaches any relevant agreement, Member's license shall terminate immediately.

## CONFIDENTIALITY

For the purposes of this Agreement, "Confidential Information" shall be deemed to include all the information and materials that: (i) if in written format is marked as confidential, or (ii) if disclosed verbally is noted as confidential at time of disclosure or (iii) in the absence of either (i) or (ii) is information which a reasonable party would deem to be non-public information and confidential, including, without limitation, all information provided on or through the Site or Service, trade secrets, inventions, research methods and projects, methods of compiling information, methods of creating database, data processing programs, software, computer models, source and object codes, product formulations, strategies and plans for future business, product and service development and ideas, potential acquisitions or divestitures, marketing ideas, financial information including with respect to costs, commissions, fees, profits and sales, mailing lists, information concerning our affiliates and customers, potential affiliates and customers and suppliers, and employee information including their respective salaries, bonuses, benefits, qualifications, abilities and contact information.

Member acknowledges and agrees that the nature of the Confidential Information to which Member has, and will continue to have, access to derives value from the fact that it is not generally known and used by others in the highly competitive, international industry in which Digital Altitude competes.

Member acknowledges that Member is receiving the Confidential Information in confidence and will not publish, copy or disclose any Confidential Information without prior written consent from Company. Member further agrees that Member shall not attempt to reverse engineer, de-compile or try to ascertain the source code to our software or any other software supplied hereunder.

Member agrees that all originals and any copies of the Confidential Information remain the property of Company. Member shall reproduce all copyright and other proprietary notices, if any, in the same form that they appear on all the materials provided by us, on all permitted copies of the Confidential Information made by Member. Member agrees to return all originals and copies of all Confidential Information in possession or control to us upon request.

## USE OF THE SITE, CONTENT AND SERVICE

Member may only use the Site, Content and Service to log in to the Members area, as expressly permitted in writing by us. Member may not cause harm to the Site or Service. Specifically, but not by way of limitation, Member may not: (i) interfere with the Site, Content or Service by using viruses, programs, or technology designed to disrupt or damage any software or hardware, or which attempts to assess the

FTC-CID_LE_000009

4

vulnerability of, or actually violates, any security feature; (ii) access any content or data not intended for you, or log into an account or server that you are not authorized to access; (iii) modify, create derivative works, reverse engineer, decompile or disassemble any technology used to provide the Site or our Service; (iv) use a robot, spider or other device or process to monitor the activity on or copy pages from the Site or our Service, except in the operation or use of an Internet "search engine," hit counters, or similar technology; (v) collect electronic mail addresses or other information from third parties by using the Site or our Service; (vi) impersonate another person or entity; (vii) engage in any activity that interferes with another user's ability to use or enjoy the Site, or content or our Service; (viii) assist or encourage any third party in engaging in any activity prohibited by this Agreement; (ix) co-brand the Site, or content or our Service; (x) frame the Site or Service; (xi) hyperlink to the Site or Service, without the express prior written permission of an authorized representative of Company; (xii) use the Site, Content or Service, in whole or in part, for any purpose that is unlawful, immoral, or prohibited by this Agreement or any applicable local, state, or federal law, rule, or regulation; (xiii) use the Site, Content or Service in any manner that could damage, disable, overburden, or impair the Site or Service; (xiv) circumvent, or attempt to circumvent, any security feature of the Site; (xv) upload, e-mail or otherwise transmit to or through the Site or Service, any advertising, promotional, or other unauthorized communication, including, without limitation, "junk mail," "surveys," unsolicited e-mail, "spam," "chain letters," or "pyramid schemes;" or (xvi) incorporate data from any of our databases into any emails or other "white pages" products or services, whether browser-based, based on proprietary client-side applications, or web-based, without our prior, express and written consent.

By purchasing any of our products or services, Member agrees that Member's use of the product or service is limited by this Agreement as well.

Membership areas of the Site are password restricted to registered users. If Member has registered as an authorized user to gain access to these password protected areas, Member agrees that you are entirely responsible for maintaining the confidentiality of your password, and agree to notify us if the password is lost, stolen, disclosed to an unauthorized third party, or otherwise may have been compromised. Member agrees that you are entirely responsible for any and all activities that occur under your account, including any fees that may be incurred under Member password-protected account, whether or not Member is the individual who undertakes such activities. Member agrees to immediately notify us of any unauthorized use of Member account or any other breach of security in relation to Member password or the Site that is known to Member.

**COMPLIANCE WITH INTELLECTUAL PROPERTY LAWS**
When accessing the Site or using the Content or Service, Member agrees to obey the law and to respect the intellectual property rights of others. Members use of the Service, Content and Site is at all times governed by and subject to laws regarding intellectual property ownership. Member agrees not to upload, download, display, perform, transmit, or otherwise distribute any information or content in violation of any third party's copyrights, trademarks, or other intellectual property or proprietary rights. Member agrees to abide by laws regarding intellectual property ownership and use, and Member shall be solely responsible for any violations of any relevant laws and for any infringements of third party rights caused by any content Member provides or transmits, or that is provided or transmitted using Members user name. The burden of proving that any content does not violate any laws or third party rights rests solely with Member.
All trademarks, service marks, trade names and copyrights displayed on the Site or in the Content are proprietary to us or their respective owners. Member acquires no rights or licenses in or to any trademarks, service marks, trade names or copyrights displayed on the Site. Member may not reproduce, republish, distribute, assign, sublicense, retransmit, sell, or prepare derivative works of the Site or Content, or resell or make our Service available to others. All rights in and to the Site, Service and our Content not expressly granted in this Agreement remain in us or in our licensors.

**ALLEGED VIOLATIONS**
Company reserves the right to suspend or terminate your use of any Service,Content or Site. To ensure that Company provides a high quality experience for you and for other users of the Site, Content and

FTC-CID_LE_000010

5

Service, you agree that Company or its representatives may access your account and records on a case-by-case basis to investigate complaints or allegations of abuse, infringement of third party rights or other unauthorized uses of the Site, Content or Service. Company does not intend to disclose the existence or occurrence of such an investigation unless required by law, but Company reserves the right to suspend or terminate Member's account or access to the Site immediately, with or without prior notice to Member, and without liability to Member, if Company believes that Member has violated any of this Agreement, furnished Company with false or misleading information, or interfered with use of the Site, Content or the Service by others.

## PRODUCT & SERVICE WARRANTY DISCLAIMER

***Digital Altitude cannot provide Members with any personal tax or legal advice. Members should consult with their own tax accountant, tax attorney, or other tax professional.***

EXCEPT AS EXPRESSLY MADE BY THE COMPANY IN WRITING, THE COMPANY MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANSHIP, NON-INFRINGEMENT OR ANY OTHER WARRANTY ARISING BY LAW, STATUTE, USAGE OF TRADE OR COURSE OF DEALING CONCERNING ANY PRODUCT OR SERVICE PURCHASED FROM OR THROUGH THE COMPANY. WE MAKE NO REPRESENTATIONS ABOUT THE SUITABILITY, RELIABILITY, AVAILABILITY, TIMELINESS, AND ACCURACY OF THE SITE, THE SERVICE OR THE CONTENT CONTAINED ON THE SITE FOR ANY PURPOSE.TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL PRODUCTS AND SERVICES OF THE COMPANY ARE PROVIDED "AS IS," "WITH ALL FAULTS," AND "AS AVAILABLE." THE COMPANY DOES NOT WARRANT THAT ITS PRODUCTS OR SERVICES WILL BE COMPATIBLE WITH ANY HARDWARE OR SOFTWARE SYSTEMS OR THAT ONLINE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE. THE COMPANY DOES NOT WARRANT THAT ANY WEBSITE OPERATED, SPONSORED OR HOSTED BY THE COMPANY OR ANY OF ITS AFFILIATES WILL BE UNINTERRUPTED OR FREE FROM ERROR. THE COMPANY IS NOT RESPONSIBLE FOR INTERRUPTED, INACCESSIBLE OR UNAVAILABLE NETWORKS, SERVER, SATELLITES AND/OR SERVICE PROVIDERS; OR FOR MISCOMMUNICATIONS, FAILED, JUMBLED, SCRAMBLED, DELAYED OR MISDIRECTED COMPUTER, TELEPHONE OR CABLE TRANSMISSIONS; OR FOR ANY TECHNICAL MALFUNCTIONS, FAILURES OR DIFFICULTIES. MEMBERS USE OF THE SITE, SERVICE AND CONTENT IS AT YOUR SOLE RISK. ALTHOUGH OUR CONTENT MAY BE UPDATED FROM TIME TO TIME, IT MAY BE OUT OF DATE AND/OR MAY CONTAIN INACCURACIES OR TYPOGRAPHICAL ERRORS. WE ARE NOT RESPONSIBLE FOR YOUR INABILITY OR FAILURE (FOR ANY REASON) TO ACCESS THE SITE OR CONTENT OR OTHERWISE USE OR RECEIVE INFORMATION OR SERVICE FROM OR REGARDING THE SITE, CONTENT, OR YOUR PURCHASES FROM US. MEMBER ASSUMES THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM USE OF, OR INABILITY TO USE, THE SITE OR SERVICE.

WE ARE NOT RESPONSIBLE OR LIABLE FOR MAINTAINING ANY CONSUMER DATA OR FOR THE DELETION, CORRUPTION, DESTRUCTION, DAMAGE, LOSS OR FAILURE OF ANY CONSUMER DATA OR FOR ANY THIRD PARTY ACCESS TO ANY CONSUMER DATA.

## LIMITED LIABILITY

TO THE MAXIMUM EXTENT PERMITTED BY LAW, WE AND OUR AFFILIATED PARTIES SHALL HAVE NO LIABILITY WHATSOEVER FOR YOUR USE OF ANY CONTENT OR OTHER INFORMATION OR SERVICE RELATED TO THE SITE AND SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, OR LITIGATION), (I) ARISING FROM ANY DECISION MADE OR ACTION TAKEN BY MEMBER IN RELIANCE UPON THE CONTENT OR OUR PRODUCTS OR SERVICE, (II) ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OR PERFORMANCE OF THE SITE OR CONTENT, OR WITH THE DELAY OR INABILITY TO USE THE SITE, CONTENT, OR RELATED SERVICE, OR FROM THE USE OR MISUSE OF ANY INFORMATION,

SOFTWARE, PRODUCTS, SERVICES, RELATED GRAPHICS, AND CONTENT OBTAINED THROUGH THE SITE, (III) ANY INCORRECT OR MISSING INFORMATION OR DATA, OR (IV) OTHERWISE ARISING OUT OR RESULTING FROM LOSS OF YOUR DATA OR INFORMATION, WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. OUR MAXIMUM LIABILITY, IF ANY, FOR ANY LOSS OR DAMAGE RELATING TO OR ARISING OUT OF MEMBERS USE OF THE SITE OR ANY CONTENT WILL NOT EXCEED THE LESSER OR ACTUAL DAMAGES OR THE CHARGES PAID BY YOU TO US FOR THE SITE FOR A PERIOD OF TWO MONTHS.

THE ABOVE LIMITATIONS AND EXCLUSIONS SHALL APPLY TO MEMBER TO THE FULLEST EXTENT THAT APPLICABLE LAW PERMITS, IN ALL ACTIONS OF ANY KIND, WHETHER BASED ON CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE) OR ANY OTHER LEGAL OR EQUITABLE THEORY. ANY CLAUSE DECLARED INVALID SHALL BE DEEMED SEVERABLE AND NOT AFFECT THE VALIDITY OR ENFORCEABILITY OF THE REMAINDER OF THESE TERMS OF USE.

### INCOME DISCLAIMER

The income disclaimer posted on our website at http://www.digitalaltitude.co/disclaimer is incorporated herein by reference and Member hereby represents that Member has read and understand it. Company, its managers, or members may receive an affiliate commission when Member purchases some of the products or services that we recommend on our Site or Service. By entering into this Agreement, Member acknowledges that Member has been informed of such payments, consent to payments of affiliate commissions, and that such payments are fair and reasonable.

### RELATED SITES

Company has no control over, and no liability for any third party sites or materials ("Third Party Sites"). Company works with a number of partners and affiliates whose Internet sites may be linked with the Site. Because Company has no control over the content and performance of these Third Party Sites, Company makes no guarantees about the accuracy, currency, content, or quality of the information provided by such Third Party Sites, and Company assumes no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful content that may reside on those Third Party Sites. Similarly, from time to time in connection with your use of the Site, Member may have access to content items (including, but not limited to, websites) that are owned by third parties. Member acknowledges and agrees that Company makes no guarantees about, and assumes no responsibility for, the accuracy, currency, content, or quality of Third Party Sites, and that, unless expressly provided otherwise, this Agreement shall govern your use of any and all Third Party Sites.

Members linking to such Third Party Sites is at your own risk. We do not investigate, monitor, or check such Third Party Sites for accuracy or completeness. We are not responsible for the availability of these Third Party Sites, nor are we responsible for the aesthetics, appeal, suitability to taste or subjective quality of informational content, advertising, products or other materials made available on or through such Third Party Sites. We are providing these links to Member only as a convenience and may discontinue providing such links at any time in our sole discretion without notice to Member. No endorsement of any third party content, information, data, opinions, advice, statements, goods, services or products is expressed or implied by any information, material or content of any Third Party Site contained in, referred to, included on, or linked from or to, the Site. Under no circumstances shall we or any affiliated providers be held responsible or liable, directly or indirectly, for any loss, injury, or damage caused or alleged to have been caused to Member in connection with the use of, or reliance on, any content, information, data, opinions, advice, statements, goods, services, or products available on such Third Party Sites. Member should direct any concerns to the respective Third Party Site's administrator or webmaster. Any links to Third Party Sites

do not imply that we are legally authorized to use any trademark, trade name, logo or copyright symbol displayed in or accessible through such links, or that any linked Third Party Site is authorized to use any trademark, trade name, logo or copyright symbol of ours.

## NOTICES

All notices required or permitted to be given under this Agreement will be in writing and delivered to the other party by any of the following methods: (i) U.S. Mail, (ii) overnight courier, or (iii) electronic mail. If you give notice to us, you must use the following address: Digital Altitude, LLC., 16192 Coastal Hwy, Lewes, DE 19958. If Company provides notice to you, Company will use the contact information provide by you to us. All notices will be deemed received as follows: (A) if delivery by U.S. mail, seven business days after dispatch, (B) if by overnight courier, on the date receipt is confirmed by such courier service, or (C) if by electronic mail, 24 hours after the message was sent, if no "system error" or other notice of non-delivery is generated. If applicable law requires that a given communication be "in writing," you agree that email communication will satisfy this requirement.

## INDEMNITY

Member agrees to indemnify, defend, and hold Company, its managers, members, officers, directors, employees, consultants, agents, and representatives harmless from and against any and all actions, claims, demands, proceedings, liabilities, damages, judgments, settlements, fines, penalties, costs, and expenses, including attorney's fees and related costs, which (i) arise or in part from your act(s) or omission(s); (ii) arise from or are related to a breach Member has any express warranty contained herein; or (iii) failure to comply with this Agreement. We have no duty to reimburse, defend, indemnify, or hold Member harmless resulting from, relating to, or arising out of, this Agreement, the Site, or Members access to or use of the Site or Content.

If an action is brought against Company in respect to any allegation for which indemnity may be sought, Company will promptly notify Member of any such claim of which it becomes aware and will: (i) provide reasonable cooperation to Member at your expense in connection with the defense or settlement of any such claim; and (ii) be entitled to participate at its own expense in the defense of any such claim. Company agrees that you will have sole and exclusive control over the defense and settlement of any such third party claim. However, Member agrees not to acquiesce to any judgment or enter into any settlement that adversely affects Company's rights or interests without the prior written consent of Company.

## WAIVER

If, for whatever reason, a court of competent jurisdiction finds any term or condition in this Agreement to be unenforceable, all other terms and conditions will remain unaffected and in full force and effect. No waiver or any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party. The Company never gives up its right to insist on compliance with the Agreement and with the applicable laws governing the conduct of a business. No failure of Digital Altitude to exercise any right or power under the Agreement or to insist upon strict compliance by a Member with any obligation or provision of the Agreement, and no custom or practice of the parties at variance with the terms of the Agreement, shall constitute a waiver of Digital Altitude's right to demand exact compliance with the Agreement. The existence of any claim or cause of action of a Member against Digital Altitude shall not constitute a defense to Digital Altitude's enforcement of any term or provision of the Agreement.

## MODIFICATIONS

Company may, in its sole discretion and without prior notice, (i) revise this Agreement; (ii) modify the Site, Content or the Service, and (iii) discontinue the Site, Content or Service at any time for any revision. Company shall post any revision to this Agreement to the Site, and the revision shall be effective immediately upon such posting. In the event of substantive changes to this Agreement, you will be notified of the changes and required to consent to the new terms. If any modification is unacceptable to Member,

the only recourse is not to use the Site and Service and to request an immediate termination of the membership. Members express consent or continued use of the Site, Content or our Service following posting of a change notice or new Agreement on the Site will constitute binding acceptance of the changes.

**COMPLAINTS & GRIEVANCES**

When a Member has a grievance or complaint with another Member or Affiliate regarding any practice or conduct in relationship to their respective Digital Altitude businesses, the complaining Member should first report the problem to his or her Sponsor who should review the matter and try to resolve it with the other party's upline sponsor. If the matter involves interpretation or violation of Company policy, it must be reported in writing to the Compliance Department at the Company. The Compliance Department will review the facts and attempt to resolve it.

**MEDIATION & ARBITRATION**

Prior to instituting an arbitration as provided below, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation. One individual who is mutually acceptable to the parties shall be appointed as mediator. The mediation shall occur within 30 days from the date on which the mediator is appointed. The mediator's fees and costs, as well as the costs of holding and conducting the mediation, shall be divided equally between the parties. Each party shall pay its portion of the anticipated shared fees and costs at least 10 days in advance of the mediation. Each party shall pay its own attorney's fees, costs, and individual expenses associated with conducting and attending the mediation. Mediation shall be held in Tampa, Florida and shall last no more than one business day.

If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration except as otherwise set forth herein. The parties waive all rights to trial by jury or to any court.

NO CLASS ACTION, OR OTHER REPRESENTATIVE ACTION OR PRIVATE ATTORNEY GENERAL ACTION OR JOINDER OR CONSOLIDATION OF ANY CLAIM WITH A CLAIM OF ANOTHER PERSON OR CLASS OF CLAIMANTS IS ALLOWED.

Except as expressly set forth herein, all disputes, claims and controversies relating to or arising out of the Agreement shall be settled totally and finally by arbitration in Tampa, Florida and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (the "Rules") except as amended by these Policies and Procedures.

There shall be one arbitrator who shall be an attorney who shall have expertise in business law transactions, and preferably an attorney knowledgeable in the direct selling industry. Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees. If a Member files a claim or counterclaim against the Company, a Member shall do so on an individual basis and not with any other Member or as part of a class action. A party may appear at the arbitration by telephone, video conference, or similar technology if the total amount of the claim does not exceed $2,500. The presentations of parties in the arbitration proceeding shall be commenced and completed within sixty (60) days after the selection of the arbitrator, and the arbitrator shall render his or her decision in writing within thirty (30) days after the completion of such presentations. The decision of the arbitrator shall be final and binding on the parties and may, if need be, be reduced to a judgment in any court of competent jurisdiction. At the request of any party, the arbitrator shall make and provide to the parties written findings of fact and conclusions of law. This agreement to arbitrate shall survive any termination or expiration of the Agreement.

Notwithstanding the Rules, the following shall apply to all arbitration actions:

    ➢ The Federal Rules of Evidence shall apply in all cases;

FTC-CID_LE_000014

MDM

F01-AW-0010607

EX 22

768

- ➢ The parties shall be entitled to all discovery rights permitted by the Federal Rules of Civil Procedure;
- ➢ The parties shall be entitled to bring motions under Rules 12 and/or 56 of the Federal Rules of Civil Procedure;
- ➢ The parties shall be allotted equal time to present their respective cases, including cross-examinations.
- ➢ The parties and the arbitrator shall maintain the confidentiality of the entire arbitration process and shall not disclose, unless otherwise required by law, to any person not directly involved in the arbitration process:
- ➢ The substance of, or basis for, the controversy, dispute, or claim;
- ➢ The content of any testimony or other evidence presented at an arbitration hearing or obtained through discovery in arbitration;
- ➢ The terms or amount of any arbitration award; or
- ➢ The rulings of the arbitrator on the procedural and/or substantive issues involved in the case.

Notwithstanding the foregoing, the arbitrator shall have no jurisdiction over disputes relating to the ownership, validity, use or registration of any copyright, or other intellectual property or Confidential Information of the Company without the Company's prior written consent. The Company may seek any applicable remedy in any applicable forum with respect to these disputes. In addition to monetary damages, the Company may obtain injunctive relief against a Member for any violation of the Agreement or misuse of the Company's trademarks, copyrights or Confidential Information.

Nothing in this provision shall prevent a party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other injunctive or emergency relief available to safeguard and protect the party's interests prior to the filing of or during or following any arbitration or other proceeding or pending the handing down of a decision or award in connection with any arbitration or other proceeding.

Nothing contained herein shall be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to, or to subtract from any of the provisions of the Member Agreement, Compensation Plan or the Agreement. The arbitrator shall not have the power to rule upon or grant any extension, renewal or continuance of the Agreement. The arbitrator shall not have the power to award special, incidental, indirect, punitive or exemplary, or consequential damages of any kind or nature, however caused.

Any modification of this arbitration provision shall not apply retroactively to any dispute which arose or which the Company had notice of before the date of modification.

**GOVERNING LAW & JURISDICTION**

This Agreement shall be construed in accordance with and governed by the laws of the United States and the State of Delaware, without reference to their rules regarding conflicts of law. You hereby irrevocably consent to the exclusive jurisdiction of the state or federal courts in Sussex County, Delaware USA in all disputes arising out of or related to the use of the Site, Content or Service. Except as set forth in this Agreement, the Federal Arbitration Act shall govern all matters relating to arbitration. In the event of a dispute between a Member and Company arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through confidential, nonbinding mediation as more fully described in the Policies and Procedures. Company shall not be obligated to engage in mediation as a prerequisite to disciplinary action against a Member. If the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration as more fully described in the Policies and Procedures, which is incorporated herein by reference.

Notwithstanding the foregoing, either party may bring an action before the courts seeking a restraining order, temporary or permanent injunction, or other equitable relief to protect its intellectual property rights, including but not limited to customer and/or affiliate lists as well as other trade secrets, trademarks, trade names, patents, and copyrights. The parties may also seek judicial enforcement of an arbitration award. This Agreement does not limit any rights or remedies that we or our suppliers, licensors or other similar entities, may have under trade secret, copyright, patent, trademark or other laws.

Louisiana Residents: Notwithstanding the foregoing, and the mediation and arbitration provisions allow that residents of the State of Louisiana shall be entitled to bring an action against Digital Altitude in their home forum and pursuant to Louisiana law.

## DELAYS

Digital Altitude shall not be responsible for delays or failures in performance of its obligations when performance is made commercially impracticable due to circumstances beyond its reasonable control. This includes, without limitation, acts of terrorism, natural disasters, strikes, labor difficulties, riot, war, fire, death, curtailment of a party's source of supply, acts or omissions of third parties, disruption in communications systems or government decrees or orders.

## SEVERABILITY

If any provision of the Agreement, in its current form or as may be amended, is found to be invalid or unenforceable for any reason, only the invalid portion(s) of the provision shall be severed and the remaining terms and provisions shall remain in full force and effect. The severed provision, or portion thereof, shall be reformed to reflect the purpose of the provision as closely as possible.

## NOTICE

Any communication, notice or demand of any kind whatsoever, which either the Member or the Company may be required or may desire to give or to serve upon the other shall be in writing and delivered either (a) by electronic communication (whether by email or telecopy (if confirmed in writing sent by registered or certified mail, postage prepaid, return receipt requested or by personal service), (b) personally or by same day local courier services or overnight express delivery services; or (c) by registered or certified mail, postage prepaid, return receipt requested, or by personal service or overnight courier service. Notices delivered personally, by overnight express delivery service or by local courier service shall be deemed given as of actual receipt. Mailed notices shall be deemed given three Business Days after mailing. "Business Day" means any Monday through Friday other than any such day which, in the State of Delaware, is a legal holiday or a day on which banking institutions are authorized or required by law or regulation to close. Any such communication, notice or demand shall deemed to have been given or served on the date personally received by personal service or overnight courier service, on the date of confirmed dispatch if by electronic communication, or on the date shown on the return receipt or the other evidence if delivery is by mail. Any party may change its address for notice by giving written notice to the other in the manner provided in this Section.

## SURVIVAL

Any provision of the Agreement, which, by its terms, is intended to survive termination or expiration of the Member Agreement shall so survive, including, without limitation, the arbitration, non-competition, non-solicitation, trade secrets and confidential information covenants contained in the Agreement.

## BINDING EFFECT

This agreement (the "Agreement") applies to your use of the site at www.digitalaltitude.co (the "Site") or any information, materials, images, graphics, data, text, files, links, software, messages, communications, content, organization, design, compilation, magnetic translation, digital conversion, HTML, XML, Java code and other content related to the Site (collectively "Content"), services provided in connection with the Site (the "Service"), and any purchases Member make on the Site. Digital Altitude, LLC (the "Company") may amend them from time to time in its sole discretion. In the event of substantive changes to this Agreement, the new terms will be posted to the Site, you will be required to affirmatively assent to its terms, and

FTC-CID_LE_000016

MDM

F01-AW-0010607

Member may also be notified by email. If any modification is unacceptable to Member, the only recourse is not to use the Site, Services, and Content and to request an immediate termination of your subscription.

**E-SIGNATURE NOTICE - CONSENT TO ELECTRONIC RECORD**
E-Sign, the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7001, et seq.), requires that Member consents to entering into an electronic agreement with Digital Altitude before a Digital Altitude Member Purchase Agreement can be executed. Please read the following information carefully:

a) If you enter into an online Member Purchase Agreement with Digital Altitude, Member will not be required to submit a paper application. An electronic record will evidence the entire agreement between Member and Digital Altitude. However, Member must consent to the use of an electronic record and must read the Digital Altitude Terms of Use, Digital Altitude Policies and Procedures, and electronically acknowledge below that Member has read and agree to these documents.

b) To access these documents and submit your online Member Purchase Agreement, Member will need a personal computer/Mac with Internet access and operational Internet browser software.

This Agreement will be binding upon each party hereto and its successors and permitted assigns. This Agreement will not be assignable or transferable by Member without Company's prior written consent. This Agreement contains the entire understanding of the parties regarding use of the Site and Content, its subject and supersedes all prior and contemporaneous agreements and understandings between the parties regarding the same. Any rights not expressly granted herein are reserved. The provisions of this Agreement addressing disclaimers of representations and warranties, indemnity obligations, intellectual property and governing law shall survive the termination of this Agreement.
You consent to the use of electronic records evidencing your agreement to the Digital Altitude Terms of Use, Policies and Procedures, all of which can be found at www.DigitalAltitude.co

**I consent to the use of electronic records and have read, understand, and agree to the Digital Altitude Member Purchase Agreement.**

_Michael Mosch_                          08/29/2016
_____      _____
Signature                                          Date

Printed Name:   MICHAEL DAVID MOSCH
                          _____

Phone: [redacted] _____    Email: [redacted] ___

FTC-CID_LE_000017

**Payment Authorization:**

I am authorized to use this credit card and do hereby authorize a charge of $ ___4500___ to my

credit card below on ___08/29/2016___ for the purchase of my product:

X  **BASE**     X  **RISE**     X  **ASCEND**     X  **PEAK**     X  **APEX**

_____          08/29/2016
**Signature**                                    **Date**


**Paying by:**   X  **VISA**          **MC**          **DISCOVER**          **AMEX**


**Card# 1:** ███████████  _____

**Name on Card:** MICHAEL MOSCH _____

**Exp Date:** ████████  _____   3 digit CVV Code: _ ██ _____

**Billing address:**

█ ██████████████████  _____   MUSCATINE, IA, ████ ___
**Street**                                          **City, State, Zip**

*************************************************************************************************

I am authorized to use this credit card and do hereby authorize a charge of $ ___2500___ to my

credit card below on ___08/29/2016___ for the purchase of my product:

X  **BASE**     X  **RISE**     X  **ASCEND**     X  **PEAK**     X  **APEX**

_____          08/29/2016
**Signature**                                    **Date**


**Paying by:**   X  **VISA**          **MC**          **DISCOVER**          **AMEX**


**Card# 2:** _ ███████████  _____

FTC-CID_LE_000018

F01-AW-0010607

**Name on Card:** MICHAEL D MOSCH

**Exp Date:** ████ **3 digit CVV Code:** ██

**Billing address: (if different than card #1)**

**Street**                                          **City, State, Zip**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I am authorized to use this credit card and do hereby authorize a charge of $ 27500 to my

credit card below on 08/29/2016 for the purchase of my product:

X **BASE**    X **RISE**    X ~~......~~    X **PEAK**    X **APEX**

_Michael Mosch_

08/29/2016

**Signature**                                       **Date**

**Paying by:**    **VISA**        **MC**        **DISCOVER**    X **AMEX**

**Card# 3:** ██████████

**Name on Card:** MICHAEL D MOSCH

**Exp Date:** ████ **3 digit CVV Code:** ██

**Billing address: (if different than card #1)**

**Street**                                          **City, State, Zip**

**Notes:**

Last Updated 03.02.2016

# Signature Certificate

 Document Reference:  LTKU67J7VK425VCM4BI5E5


Easy Online Document Signing



**MICHAEL DAVID MOSCH**
Party ID: NWAIU2IKPIZZC22J5GP87Y
IP Address: ███████

VERIFIED EMAIL: ███████████████

Electronic Signature:



Multi-Factor
Digital Fingerprint Checksum    **1060f5d6762198d4c3245ffb3af15ea0792850b9**

| Timestamp | Audit |
|---|---|
| 2016-08-29 14:27:15 -0700 | All parties have signed document. Signed copies sent to: Mary Dee and MICHAEL DAVID MOSCH. |
| 2016-08-29 14:27:15 -0700 | Document signed by MICHAEL DAVID MOSCH ████████████████ with drawn signature. - ███████ |
| 2016-08-29 14:27:13 -0700 | MICHAEL DAVID MOSCH verified email address ███████████. - ███████ |
| 2016-08-29 14:26:30 -0700 | Generated Document from Online Form 3payMEMBERPURCHASEAGREEMENT (3payMEMBERPURCHAS-e2e5fa). - ███████ |
| 2016-08-29 14:05:12 -0700 | Online Form viewed by MICHAEL DAVID MOSCH ███████████. - ███████ |



This signature page provides a record of the online activity executing this contract.

**Page 1 of 1**

FTC-CID_LE_000020



## DIGITAL ALTITUDE MEMBER PURCHASE AGREEMENT

Member Purchase Agreement ("Agreement") is entered into between the Purchaser ("Member") and Digital Altitude, LLC. ("Company") located at 16192 Coastal Hwy, Lewes, DE 19958.

By entering into this Agreement, Member is purchasing or upgrading to a Digital Altitude Membership into any of the foregoing digitally delivered suites of online training: ASPIRE monthly memberships, BASE, RISE, ASCEND, PEAK & APEX core products, BUNDLES or TRAFFIC.

### FULL POWER AND AUTHORITY
Member represents and warrants that: (i) you have the full power and authority to enter into and perform under this Agreement; (ii) execution and performance of this Agreement does not constitute a breach of, or conflict with, any other agreement or arrangement by which you are bound; (iii) the terms of this Agreement are legal, valid, and binding obligation, enforceable against you; (iv) all content you create to promote Company, it's Site, the Content or Service was created without any contribution of any kind from Company including, without limitation, editorial control or approval, that any suggestions regarding content received from Company are made "as-is" and without any warranty; and that you have had all marketing materials created by you reviewed by competent legal counsel and solely assume all responsibility for it; (v) you are at least 18 years of age, (vi) your use of the Site and Content is legal in, and does not violate any laws or rules of, the jurisdictions in which you reside or from which you use or otherwise access the Site, (vii) all information (if any) provided by you to us is correct, (viii) your use of the Site, Content and Services shall be in accordance with this Agreement and your Affiliate Agreement and the Policies and Procedures of Company if you are an affiliate and (ix) you are capable of assuming, and do assume, any risks related to the use of the Site, Content and Services.

### MONTHLY ASPIRE SUBSCRIPTIONS
*Trial Subscriptions:* The Digital Altitude membership may start with a free/discounted trial period for ASPIRE WALKER, HIKER and/or CLIMBER. The trial period of the membership lasts for 14 days, or as otherwise specified during sign-up. For combinations with other offers, restrictions may apply. Trials are for new Members only. Digital Altitude reserves the right, in its absolute discretion, to determine Member's trial eligibility. The monthly regular retail recurring fee will be charged every 30 days, until canceled by Member. Company reserves the right to change the Membership fee at any time.

*Monthly Subscriptions:* Member has FOURTEEN (14) Days from the date of the original purchase to request a refund for the Digital Altitude ASPIRE monthly subscription. Any refund request after the FOURTEEN (14) DAY time limit will not be honored. Member may cancel at any time to discontinue billing and subscription.

*Annual Subscriptions:* For annual ASPIRE subscription purchases, Member has FOURTEEN (14) Days from the date of the original purchase to request a refund for the Digital Altitude yearly subscription. Any refund request made after 14 days will not be honored.

If Member purchases Digital Altitude products or services that are subscription based, Member agrees to pay, and authorizes automatic recurring billing of the subscription fees with the credit card, or other payment methods on file, until subsequently canceled by Member. The Member's account will be charged every 30 days. Member understands and agrees that each automatic recurring billings of the subscription

fees are non-refundable and will not be prorated as the service is deemed used when accessed. Member authorizes Company to initiate debit entries from the account provided for the subscription fee, as well as any other purchases made on the Site. Member may cancel at any time by contacting Customer Care at support@digitalaltitude.co.

Products that are subscription based for Members and charged monthly are: ASPIRE WALKER, ASPIRE HIKER & ASPIRE CLIMBER.

Products for purchase Individually or Bundled include:
BASE, RISE, RISE BUNDLE, ASCEND, ASCEND BUNDLE, PEAK, PEAK BUNDLE, APEX, APEX BUNDLE & TRAFFIC.

B. Live Events
The events, information, venue and speakers listed on our Sites are subject to change without notification. Member has 60 days prior to the event to request a ticket deferral to the next event if Member cannot attend your scheduled event. Any request after the SIXTY (60) DAY time limit will not be processed. Any unused tickets will be forfeited and are not transferable to another event.

TICKET HOLDERS MAY NOT SELL, OFFER FOR SALE, OFFER AT AUCTIONS, RESELL, DONATE, ACT AS COMMERCIAL AGENT FOR ANOTHER PARTY OR OTHERWISE TRANSFER THEIR TICKETS IN ANY WAY WITHOUT THE SPECIFIC PRIOR WRITTEN CONSENT OF DIGITAL ALTITUDE.

i.Ticket Transfers
Ticket transfers may be processed up to THIRTY (30) Days prior to the event. A $100 transfer fee will be applied to all ticket transfers.

ii. Process for Guest Tickets Transfers
Once a Ticket purchase is confirmed, the Ticket Purchaser may only change the assignment of the Guests accompanying him/her a maximum of 2 times. Requests can be submitted to events@digitalaltitude.co

C. TRAFFIC PACKAGES do NOT include event tickets. TRAFFIC will be delivered no less than 90 days after the official launch date and will be released incrementally based on traffic supply until the number of clicks purchased have been delivered (See Digital Altitude Compensation Plan Document for details).

**REFUND/CANCELLATION POLICY**
A. 72-Hour "No Hassles" Refund Policy on Product Bundles, TRAFFIC & Event inclusive products (RISE BUNDLE, ASCEND, ASCEND BUNDLE, PEAK, PEAK BUNDLE, APEX, APEX BUNDLE & any PRE LAUNCH SPECIALS or BETA Products).

Due to the nature of the digital products, the accessibility of our products immediately upon purchase, and the reservation of your traffic packages and any applicable all-inclusive lodging & meal ticket(s) to the live event(s), there is a strict 72-hour refund policy, which begins on the date of purchase. Member may cancel at any time through your back office or by contacting Customer Care via email at support@digitalaltitude.co

**INVOLUNTARY TERMINATION**
A Member's violation of any of the terms of the Agreement, including any amendments that may be made by Digital Altitude in its sole discretion, may result in any of the actions listed in Section 4.1, including the involuntary termination of his or her Member Agreement. Cancellation shall be effective on the date on which written notice is mailed, emailed, faxed, or delivered to the Member's last known address, email address, or fax number, or to his or her attorney, or when the Member receives actual notice of termination,

whichever occurs first. Where state laws on termination are inconsistent with this termination policy, the applicable state law shall apply.

Digital Altitude reserves the right to terminate all Membership Agreements upon thirty (30) days written notice in the event that it elects to: (a) cease business operations; (b) dissolve as a legal entity or (c) terminates the sale of its products and services via direct selling.

**VOLUNTARY CANCELLATION**
A Member has a right to cancel at any time, regardless of reason. Cancellation must be submitted in writing to the Company at its principal business address or via email to support@digitalaltitude.co. The written notice must include the Member's signature, printed name, address, and Member I.D. Number.

**NON-RENEWAL**
A Member may also voluntarily cancel his or her Member Agreement by failing to renew the Agreement on its anniversary date. The Company may also elect not to renew a Member Agreement upon his/her anniversary date.

**TERMINATION**
Membee agrees that, under certain circumstances, Company may suspend or terminate Member's use of the Site or Service, including without limitation, if Company believes, in our sole and absolute discretion, that Member has breached any term of this Agreement. Member acknowledges and agrees that all suspensions and terminations shall be made in Company's sole discretion and that Company shall not be liable to Member or any other party for said suspension and termination.

Upon termination, Member license to use the Site, Content or Service and everything accessible by or through the Site, Content or Service shall terminate and the remainder of this Agreement shall survive indefinitely unless and until we chose to terminate it.

Upon termination of any part of this Agreement for any reason, we shall make reasonable efforts to ensure that your User Content is inaccessible and cease use of it; however, Member acknowledges and agrees that: (i) caching of, copies of, or references to the User Content may not be immediately removed or possible to remove; (ii) such removed User Content may continue in backups (not available to others) for a relatively short period of time; and such removed User Content may continue to be available (and stored on our servers) through the accounts of other programs.

**PRIVACY POLICY**
Company respects Member privacy and permits Member to control the treatment of Member's personal information. A complete statement of Company's current privacy policy (the "Privacy Policy") can be found here http://www.digitalaltitude.co/privacy-policy. Company's Privacy Policy is expressly incorporated into this Agreement by this reference. When Member is required to submit information to use or access the Site, Content or Service, Member must complete the registration process by providing the information requested on the form. Member agrees to the terms in Company's Privacy Policy regarding the use of the information submitted.

**CHANGES TO THE AGREEMENT**
Digital Altitude reserves the right to amend this Agreement in its sole and absolute discretion. By entering into the Membership Agreement, Member agrees to abide by all amendments or modifications that Digital Altitude elects to make. Amendments shall be effective 30 days after publication of notice that the Agreement has been modified. Amendments shall not apply retroactively to conduct that occurred prior to the effective date of the amendment. Notification of amendments shall be published by one or more of the following methods: (a) posting on the Company's official web site; (b) electronic mail (e-mail); (c) posting in Membership site; (d) inclusion in Company periodicals; or (e) special mailings. In the event of substantive changes, Member will be required to affirmatively assent to the changes. For other changes, the

FTC-CID_LE_000023

3

continuation of a Member's Digital Altitude membership, the acceptance of any benefits under the
Agreement, constitutes acceptance of the amendments.

## LICENSE

Company owns and licenses all intellectual property and other rights, title, and interest in and to the Site,
Content and Service, and the materials accessible on the Site and Service, except as expressly provided
for in the Agreement. Without limitation, Company owns the trademarks, copyrights and certain technology
used in making the Site, its Content and Service available. Except as specifically allowed in this
Agreement, the copying, redistribution, use or publication by you of any Content or Service is strictly
prohibited. We grant Member a limited revocable license to access and use the Site, Content and our
Service for its intended purposes, subject to Member compliance with this Agreement, and Company
Policies and Procedures. The revocable license does not include the right to collect or use information
contained on the Site or through the Service for purposes that Company prohibits or to compete with
Company. No ownership or other interest or other license in or to any patent, copyright, trademark, trade
secret and other intellectual property right or to the Content is being granted, assigned or transferred in this
Agreement or by reason of your access to, and use of, the Site, Content or Service. If Member uses the
Site or our Service in a manner that exceeds the scope of this license or breaches any relevant agreement,
Member's license shall terminate immediately.

## CONFIDENTIALITY

For the purposes of this Agreement, "Confidential Information" shall be deemed to include all the
information and materials that: (i) if in written format is marked as confidential, or (ii) if disclosed verbally is
noted as confidential at time of disclosure or (iii) in the absence of either (i) or (ii) is information which a
reasonable party would deem to be non-public information and confidential, including, without limitation, all
information provided on or through the Site or Service, trade secrets, inventions, research methods and
projects, methods of compiling information, methods of creating database, data processing programs,
software, computer models, source and object codes, product formulations, strategies and plans for future
business, product and service development and ideas, potential acquisitions or divestitures, marketing
ideas, financial information including with respect to costs, commissions, fees, profits and sales, mailing
lists, information concerning our affiliates and customers, potential affiliates and customers and suppliers,
and employee information including their respective salaries, bonuses, benefits, qualifications, abilities and
contact information.

Member acknowledges and agrees that the nature of the Confidential Information to which Member has,
and will continue to have, access to derives value from the fact that it is not generally known and used by
others in the highly competitive, international industry in which Digital Altitude competes.

Member acknowledges that Member is receiving the Confidential Information in confidence and will not
publish, copy or disclose any Confidential Information without prior written consent from Company. Member
further agrees that Member shall not attempt to reverse engineer, de-compile or try to ascertain the source
code to our software or any other software supplied hereunder.

Member agrees that all originals and any copies of the Confidential Information remain the property of
Company. Member shall reproduce all copyright and other proprietary notices, if any, in the same form that
they appear on all the materials provided by us, on all permitted copies of the Confidential Information
made by Member. Member agrees to return all originals and copies of all Confidential Information in
possession or control to us upon request.

## USE OF THE SITE, CONTENT AND SERVICE

Member may only use the Site, Content and Service to log in to the Members area, as expressly permitted
in writing by us. Member may not cause harm to the Site or Service. Specifically, but not by way of
limitation, Member may not: (i) interfere with the Site, Content or Service by using viruses, programs, or
technology designed to disrupt or damage any software or hardware, or which attempts to assess the

MDM

F01-AW-0010607

vulnerability of, or actually violates, any security feature; (ii) access any content or data not intended for you, or log into an account or server that you are not authorized to access; (iii) modify, create derivative works, reverse engineer, decompile or disassemble any technology used to provide the Site or our Service; (iv) use a robot, spider or other device or process to monitor the activity on or copy pages from the Site or our Service, except in the operation or use of an Internet "search engine," hit counters, or similar technology; (v) collect electronic mail addresses or other information from third parties by using the Site or our Service; (vi) impersonate another person or entity; (vii) engage in any activity that interferes with another user's ability to use or enjoy the Site, or content or our Service; (viii) assist or encourage any third party in engaging in any activity prohibited by this Agreement; (ix) co-brand the Site, or content or our Service; (x) frame the Site or Service; (xi) hyperlink to the Site or Service, without the express prior written permission of an authorized representative of Company; (xii) use the Site, Content or Service, in whole or in part, for any purpose that is unlawful, immoral, or prohibited by this Agreement or any applicable local, state, or federal law, rule, or regulation; (xiii) use the Site, Content or Service in any manner that could damage, disable, overburden, or impair the Site or Service; (xiv) circumvent, or attempt to circumvent, any security feature of the Site; (xv) upload, e-mail or otherwise transmit to or through the Site or Service, any advertising, promotional, or other unauthorized communication, including, without limitation, "junk mail," "surveys," unsolicited e-mail, "spam," "chain letters," or "pyramid schemes;" or (xvi) incorporate data from any of our databases into any emails or other "white pages" products or services, whether browser-based, based on proprietary client-side applications, or web-based, without our prior, express and written consent.

By purchasing any of our products or services, Member agrees that Member's use of the product or service is limited by this Agreement as well.

Membership areas of the Site are password restricted to registered users. If Member has registered as an authorized user to gain access to these password protected areas, Member agrees that you are entirely responsible for maintaining the confidentiality of your password, and agree to notify us if the password is lost, stolen, disclosed to an unauthorized third party, or otherwise may have been compromised. Member agrees that you are entirely responsible for any and all activities that occur under your account, including any fees that may be incurred under Member password-protected account, whether or not Member is the individual who undertakes such activities. Member agrees to immediately notify us of any unauthorized use of Member account or any other breach of security in relation to Member password or the Site that is known to Member.

**COMPLIANCE WITH INTELLECTUAL PROPERTY LAWS**
When accessing the Site or using the Content or Service, Member agrees to obey the law and to respect the intellectual property rights of others. Members use of the Service, Content and Site is at all times governed by and subject to laws regarding intellectual property ownership. Member agrees not to upload, download, display, perform, transmit, or otherwise distribute any information or content in violation of any third party's copyrights, trademarks, or other intellectual property or proprietary rights. Member agrees to abide by laws regarding intellectual property ownership and use, and Member shall be solely responsible for any violations of any relevant laws and for any infringements of third party rights caused by any content Member provides or transmits, or that is provided or transmitted using Members user name. The burden of proving that any content does not violate any laws or third party rights rests solely with Member.
All trademarks, service marks, trade names and copyrights displayed on the Site or in the Content are proprietary to us or their respective owners. Member acquires no rights or licenses in or to any trademarks, service marks, trade names or copyrights displayed on the Site. Member may not reproduce, republish, distribute, assign, sublicense, retransmit, sell, or prepare derivative works of the Site or Content, or resell or make our Service available to others. All rights in and to the Site, Service and our Content not expressly granted in this Agreement remain in us or in our licensors.

**ALLEGED VIOLATIONS**
Company reserves the right to suspend or terminate your use of any Service,Content or Site. To ensure that Company provides a high quality experience for you and for other users of the Site, Content and

FTC-CID_LE_000025

MDM

F01-AW-0010607

EX 22
779

Service, you agree that Company or its representatives may access your account and records on a case-by-case basis to investigate complaints or allegations of abuse, infringement of third party rights or other unauthorized uses of the Site, Content or Service. Company does not intend to disclose the existence or occurrence of such an investigation unless required by law, but Company reserves the right to suspend or terminate Member's account or access to the Site immediately, with or without prior notice to Member, and without liability to Member, if Company believes that Member has violated any of this Agreement, furnished Company with false or misleading information, or interfered with use of the Site, Content or the Service by others.

## PRODUCT & SERVICE WARRANTY DISCLAIMER

***Digital Altitude cannot provide Members with any personal tax or legal advice. Members should consult with their own tax accountant, tax attorney, or other tax professional.***

EXCEPT AS EXPRESSLY MADE BY THE COMPANY IN WRITING, THE COMPANY MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANSHIP, NON-INFRINGEMENT OR ANY OTHER WARRANTY ARISING BY LAW, STATUTE, USAGE OF TRADE OR COURSE OF DEALING CONCERNING ANY PRODUCT OR SERVICE PURCHASED FROM OR THROUGH THE COMPANY. WE MAKE NO REPRESENTATIONS ABOUT THE SUITABILITY, RELIABILITY, AVAILABILITY, TIMELINESS, AND ACCURACY OF THE SITE, THE SERVICE OR THE CONTENT CONTAINED ON THE SITE FOR ANY PURPOSE.TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL PRODUCTS AND SERVICES OF THE COMPANY ARE PROVIDED "AS IS," "WITH ALL FAULTS," AND "AS AVAILABLE." THE COMPANY DOES NOT WARRANT THAT ITS PRODUCTS OR SERVICES WILL BE COMPATIBLE WITH ANY HARDWARE OR SOFTWARE SYSTEMS OR THAT ONLINE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE. THE COMPANY DOES NOT WARRANT THAT ANY WEBSITE OPERATED, SPONSORED OR HOSTED BY THE COMPANY OR ANY OF ITS AFFILIATES WILL BE UNINTERRUPTED OR FREE FROM ERROR. THE COMPANY IS NOT RESPONSIBLE FOR INTERRUPTED, INACCESSIBLE OR UNAVAILABLE NETWORKS, SERVER, SATELLITES AND/OR SERVICE PROVIDERS; OR FOR MISCOMMUNICATIONS, FAILED, JUMBLED, SCRAMBLED, DELAYED OR MISDIRECTED COMPUTER, TELEPHONE OR CABLE TRANSMISSIONS; OR FOR ANY TECHNICAL MALFUNCTIONS, FAILURES OR DIFFICULTIES. MEMBERS USE OF THE SITE, SERVICE AND CONTENT IS AT YOUR SOLE RISK. ALTHOUGH OUR CONTENT MAY BE UPDATED FROM TIME TO TIME, IT MAY BE OUT OF DATE AND/OR MAY CONTAIN INACCURACIES OR TYPOGRAPHICAL ERRORS. WE ARE NOT RESPONSIBLE FOR YOUR INABILITY OR FAILURE (FOR ANY REASON) TO ACCESS THE SITE OR CONTENT OR OTHERWISE USE OR RECEIVE INFORMATION OR SERVICE FROM OR REGARDING THE SITE, CONTENT, OR YOUR PURCHASES FROM US. MEMBER ASSUMES THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM USE OF, OR INABILITY TO USE, THE SITE OR SERVICE.

WE ARE NOT RESPONSIBLE OR LIABLE FOR MAINTAINING ANY CONSUMER DATA OR FOR THE DELETION, CORRUPTION, DESTRUCTION, DAMAGE, LOSS OR FAILURE OF ANY CONSUMER DATA OR FOR ANY THIRD PARTY ACCESS TO ANY CONSUMER DATA.

## LIMITED LIABILITY

TO THE MAXIMUM EXTENT PERMITTED BY LAW, WE AND OUR AFFILIATED PARTIES SHALL HAVE NO LIABILITY WHATSOEVER FOR YOUR USE OF ANY CONTENT OR OTHER INFORMATION OR SERVICE RELATED TO THE SITE AND SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, OR LITIGATION), (I) ARISING FROM ANY DECISION MADE OR ACTION TAKEN BY MEMBER IN RELIANCE UPON THE CONTENT OR OUR PRODUCTS OR SERVICE, (II) ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OR PERFORMANCE OF THE SITE OR CONTENT, OR WITH THE DELAY OR INABILITY TO USE THE SITE, CONTENT, OR RELATED SERVICE, OR FROM THE USE OR MISUSE OF ANY INFORMATION,

SOFTWARE, PRODUCTS, SERVICES, RELATED GRAPHICS, AND CONTENT OBTAINED THROUGH THE SITE, (III) ANY INCORRECT OR MISSING INFORMATION OR DATA, OR (IV) OTHERWISE ARISING OUT OR RESULTING FROM LOSS OF YOUR DATA OR INFORMATION, WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. OUR MAXIMUM LIABILITY, IF ANY, FOR ANY LOSS OR DAMAGE RELATING TO OR ARISING OUT OF MEMBERS USE OF THE SITE OR ANY CONTENT WILL NOT EXCEED THE LESSER OR ACTUAL DAMAGES OR THE CHARGES PAID BY YOU TO US FOR THE SITE FOR A PERIOD OF TWO MONTHS.

THE ABOVE LIMITATIONS AND EXCLUSIONS SHALL APPLY TO MEMBER TO THE FULLEST EXTENT THAT APPLICABLE LAW PERMITS, IN ALL ACTIONS OF ANY KIND, WHETHER BASED ON CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE) OR ANY OTHER LEGAL OR EQUITABLE THEORY. ANY CLAUSE DECLARED INVALID SHALL BE DEEMED SEVERABLE AND NOT AFFECT THE VALIDITY OR ENFORCEABILITY OF THE REMAINDER OF THESE TERMS OF USE.

### INCOME DISCLAIMER

The income disclaimer posted on our website at http://www.digitalaltitude.co/disclaimer is incorporated herein by reference and Member hereby represents that Member has read and understand it. Company, its managers, or members may receive an affiliate commission when Member purchases some of the products or services that we recommend on our Site or Service. By entering into this Agreement, Member acknowledges that Member has been informed of such payments, consent to payments of affiliate commissions, and that such payments are fair and reasonable.

### RELATED SITES

Company has no control over, and no liability for any third party sites or materials ("Third Party Sites"). Company works with a number of partners and affiliates whose Internet sites may be linked with the Site. Because Company has no control over the content and performance of these Third Party Sites, Company makes no guarantees about the accuracy, currency, content, or quality of the information provided by such Third Party Sites, and Company assumes no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful content that may reside on those Third Party Sites. Similarly, from time to time in connection with your use of the Site, Member may have access to content items (including, but not limited to, websites) that are owned by third parties. Member acknowledges and agrees that Company makes no guarantees about, and assumes no responsibility for, the accuracy, currency, content, or quality of Third Party Sites, and that, unless expressly provided otherwise, this Agreement shall govern your use of any and all Third Party Sites.

Members linking to such Third Party Sites is at your own risk. We do not investigate, monitor, or check such Third Party Sites for accuracy or completeness. We are not responsible for the availability of these Third Party Sites, nor are we responsible for the aesthetics, appeal, suitability to taste or subjective quality of informational content, advertising, products or other materials made available on or through such Third Party Sites. We are providing these links to Member only as a convenience and may discontinue providing such links at any time in our sole discretion without notice to Member. No endorsement of any third party content, information, data, opinions, advice, statements, goods, services or products is expressed or implied by any information, material or content of any Third Party Site contained in, referred to, included on, or linked from or to, the Site. Under no circumstances shall we or any affiliated providers be held responsible or liable, directly or indirectly, for any loss, injury, or damage caused or alleged to have been caused to Member in connection with the use of, or reliance on, any content, information, data, opinions, advice, statements, goods, services, or products available on such Third Party Sites. Member should direct any concerns to the respective Third Party Site's administrator or webmaster. Any links to Third Party Sites

FTC-CID_LE_000027

MDM

F01-AW-0010607

do not imply that we are legally authorized to use any trademark, trade name, logo or copyright symbol displayed in or accessible through such links, or that any linked Third Party Site is authorized to use any trademark, trade name, logo or copyright symbol of ours.

## NOTICES

All notices required or permitted to be given under this Agreement will be in writing and delivered to the other party by any of the following methods: (i) U.S. Mail, (ii) overnight courier, or (iii) electronic mail. If you give notice to us, you must use the following address: Digital Altitude, LLC., 16192 Coastal Hwy, Lewes, DE 19958. If Company provides notice to you, Company will use the contact information provide by you to us. All notices will be deemed received as follows: (A) if delivery by U.S. mail, seven business days after dispatch, (B) if by overnight courier, on the date receipt is confirmed by such courier service, or (C) if by electronic mail, 24 hours after the message was sent, if no "system error" or other notice of non-delivery is generated. If applicable law requires that a given communication be "in writing," you agree that email communication will satisfy this requirement.

## INDEMNITY

Member agrees to indemnify, defend, and hold Company, its managers, members, officers, directors, employees, consultants, agents, and representatives harmless from and against any and all actions, claims, demands, proceedings, liabilities, damages, judgments, settlements, fines, penalties, costs, and expenses, including attorney's fees and related costs, which (i) arise or in part from your act(s) or omission(s); (ii) arise from or are related to a breach Member has any express warranty contained herein; or (iii) failure to comply with this Agreement. We have no duty to reimburse, defend, indemnify, or hold Member harmless resulting from, relating to, or arising out of, this Agreement, the Site, or Members access to or use of the Site or Content.

If an action is brought against Company in respect to any allegation for which indemnity may be sought, Company will promptly notify Member of any such claim of which it becomes aware and will: (i) provide reasonable cooperation to Member at your expense in connection with the defense or settlement of any such claim; and (ii) be entitled to participate at its own expense in the defense of any such claim. Company agrees that you will have sole and exclusive control over the defense and settlement of any such third party claim. However, Member agrees not to acquiesce to any judgment or enter into any settlement that adversely affects Company's rights or interests without the prior written consent of Company.

## WAIVER

If, for whatever reason, a court of competent jurisdiction finds any term or condition in this Agreement to be unenforceable, all other terms and conditions will remain unaffected and in full force and effect. No waiver or any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party. The Company never gives up its right to insist on compliance with the Agreement and with the applicable laws governing the conduct of a business. No failure of Digital Altitude to exercise any right or power under the Agreement or to insist upon strict compliance by a Member with any obligation or provision of the Agreement, and no custom or practice of the parties at variance with the terms of the Agreement, shall constitute a waiver of Digital Altitude's right to demand exact compliance with the Agreement. The existence of any claim or cause of action of a Member against Digital Altitude shall not constitute a defense to Digital Altitude's enforcement of any term or provision of the Agreement.

## MODIFICATIONS

Company may, in its sole discretion and without prior notice, (i) revise this Agreement; (ii) modify the Site, Content or the Service, and (iii) discontinue the Site, Content or Service at any time for any revision. Company shall post any revision to this Agreement to the Site, and the revision shall be effective immediately upon such posting. In the event of substantive changes to this Agreement, you will be notified of the changes and required to consent to the new terms. If any modification is unacceptable to Member,

the only recourse is not to use the Site and Service and to request an immediate termination of the membership. Members express consent or continued use of the Site, Content or our Service following posting of a change notice or new Agreement on the Site will constitute binding acceptance of the changes.

**COMPLAINTS & GRIEVANCES**

When a Member has a grievance or complaint with another Member or Affiliate regarding any practice or conduct in relationship to their respective Digital Altitude businesses, the complaining Member should first report the problem to his or her Sponsor who should review the matter and try to resolve it with the other party's upline sponsor. If the matter involves interpretation or violation of Company policy, it must be reported in writing to the Compliance Department at the Company. The Compliance Department will review the facts and attempt to resolve it.

**MEDIATION & ARBITRATION**

Prior to instituting an arbitration as provided below, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation. One individual who is mutually acceptable to the parties shall be appointed as mediator. The mediation shall occur within 30 days from the date on which the mediator is appointed. The mediator's fees and costs, as well as the costs of holding and conducting the mediation, shall be divided equally between the parties. Each party shall pay its portion of the anticipated shared fees and costs at least 10 days in advance of the mediation. Each party shall pay its own attorney's fees, costs, and individual expenses associated with conducting and attending the mediation. Mediation shall be held in Tampa, Florida and shall last no more than one business day.

If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration except as otherwise set forth herein. The parties waive all rights to trial by jury or to any court.

NO CLASS ACTION, OR OTHER REPRESENTATIVE ACTION OR PRIVATE ATTORNEY GENERAL ACTION OR JOINDER OR CONSOLIDATION OF ANY CLAIM WITH A CLAIM OF ANOTHER PERSON OR CLASS OF CLAIMANTS IS ALLOWED.

Except as expressly set forth herein, all disputes, claims and controversies relating to or arising out of the Agreement shall be settled totally and finally by arbitration in Tampa, Florida and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (the "Rules") except as amended by these Policies and Procedures.

There shall be one arbitrator who shall be an attorney who shall have expertise in business law transactions, and preferably an attorney knowledgeable in the direct selling industry. Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees. If a Member files a claim or counterclaim against the Company, a Member shall do so on an individual basis and not with any other Member or as part of a class action. A party may appear at the arbitration by telephone, video conference, or similar technology if the total amount of the claim does not exceed $2,500. The presentations of parties in the arbitration proceeding shall be commenced and completed within sixty (60) days after the selection of the arbitrator, and the arbitrator shall render his or her decision in writing within thirty (30) days after the completion of such presentations. The decision of the arbitrator shall be final and binding on the parties and may, if need be, be reduced to a judgment in any court of competent jurisdiction. At the request of any party, the arbitrator shall make and provide to the parties written findings of fact and conclusions of law. This agreement to arbitrate shall survive any termination or expiration of the Agreement.

Notwithstanding the Rules, the following shall apply to all arbitration actions:

> ➢ The Federal Rules of Evidence shall apply in all cases;

- ➤ The parties shall be entitled to all discovery rights permitted by the Federal Rules of Civil Procedure;
- ➤ The parties shall be entitled to bring motions under Rules 12 and/or 56 of the Federal Rules of Civil Procedure;
- ➤ The parties shall be allotted equal time to present their respective cases, including cross-examinations.
- ➤ The parties and the arbitrator shall maintain the confidentiality of the entire arbitration process and shall not disclose, unless otherwise required by law, to any person not directly involved in the arbitration process:
- ➤ The substance of, or basis for, the controversy, dispute, or claim;
- ➤ The content of any testimony or other evidence presented at an arbitration hearing or obtained through discovery in arbitration;
- ➤ The terms or amount of any arbitration award; or
- ➤ The rulings of the arbitrator on the procedural and/or substantive issues involved in the case.

Notwithstanding the foregoing, the arbitrator shall have no jurisdiction over disputes relating to the ownership, validity, use or registration of any copyright, or other intellectual property or Confidential Information of the Company without the Company's prior written consent. The Company may seek any applicable remedy in any applicable forum with respect to these disputes. In addition to monetary damages, the Company may obtain injunctive relief against a Member for any violation of the Agreement or misuse of the Company's trademarks, copyrights or Confidential Information.

Nothing in this provision shall prevent a party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other injunctive or emergency relief available to safeguard and protect the party's interests prior to the filing of or during or following any arbitration or other proceeding or pending the handing down of a decision or award in connection with any arbitration or other proceeding.

Nothing contained herein shall be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to, or to subtract from any of the provisions of the Member Agreement, Compensation Plan or the Agreement. The arbitrator shall not have the power to rule upon or grant any extension, renewal or continuance of the Agreement. The arbitrator shall not have the power to award special, incidental, indirect, punitive or exemplary, or consequential damages of any kind or nature, however caused.

Any modification of this arbitration provision shall not apply retroactively to any dispute which arose or which the Company had notice of before the date of modification.

**GOVERNING LAW & JURISDICTION**

This Agreement shall be construed in accordance with and governed by the laws of the United States and the State of Delaware, without reference to their rules regarding conflicts of law. You hereby irrevocably consent to the exclusive jurisdiction of the state or federal courts in Sussex County, Delaware USA in all disputes arising out of or related to the use of the Site, Content or Service. Except as set forth in this Agreement, the Federal Arbitration Act shall govern all matters relating to arbitration. In the event of a dispute between a Member and Company arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through confidential, nonbinding mediation as more fully described in the Policies and Procedures. Company shall not be obligated to engage in mediation as a prerequisite to disciplinary action against a Member. If the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration as more fully described in the Policies and Procedures, which is incorporated herein by reference.

Notwithstanding the foregoing, either party may bring an action before the courts seeking a restraining order, temporary or permanent injunction, or other equitable relief to protect its intellectual property rights, including but not limited to customer and/or affiliate lists as well as other trade secrets, trademarks, trade names, patents, and copyrights. The parties may also seek judicial enforcement of an arbitration award. This Agreement does not limit any rights or remedies that we or our suppliers, licensors or other similar entities, may have under trade secret, copyright, patent, trademark or other laws.

Louisiana Residents: Notwithstanding the foregoing, and the mediation and arbitration provisions allow that residents of the State of Louisiana shall be entitled to bring an action against Digital Altitude in their home forum and pursuant to Louisiana law.

## DELAYS

Digital Altitude shall not be responsible for delays or failures in performance of its obligations when performance is made commercially impracticable due to circumstances beyond its reasonable control. This includes, without limitation, acts of terrorism, natural disasters, strikes, labor difficulties, riot, war, fire, death, curtailment of a party's source of supply, acts or omissions of third parties, disruption in communications systems or government decrees or orders.

## SEVERABILITY

If any provision of the Agreement, in its current form or as may be amended, is found to be invalid or unenforceable for any reason, only the invalid portion(s) of the provision shall be severed and the remaining terms and provisions shall remain in full force and effect. The severed provision, or portion thereof, shall be reformed to reflect the purpose of the provision as closely as possible.

## NOTICE

Any communication, notice or demand of any kind whatsoever, which either the Member or the Company may be required or may desire to give or to serve upon the other shall be in writing and delivered either (a) by electronic communication (whether by email or telecopy (if confirmed in writing sent by registered or certified mail, postage prepaid, return receipt requested or by personal service), (b) personally or by same day local courier services or overnight express delivery services; or (c) by registered or certified mail, postage prepaid, return receipt requested, or by personal service or overnight courier service. Notices delivered personally, by overnight express delivery service or by local courier service shall be deemed given as of actual receipt. Mailed notices shall be deemed given three Business Days after mailing. "Business Day" means any Monday through Friday other than any such day which, in the State of Delaware, is a legal holiday or a day on which banking institutions are authorized or required by law or regulation to close. Any such communication, notice or demand shall deemed to have been given or served on the date personally received by personal service or overnight courier service, on the date of confirmed dispatch if by electronic communication, or on the date shown on the return receipt or the other evidence if delivery is by mail. Any party may change its address for notice by giving written notice to the other in the manner provided in this Section.

## SURVIVAL

Any provision of the Agreement, which, by its terms, is intended to survive termination or expiration of the Member Agreement shall so survive, including, without limitation, the arbitration, non-competition, non-solicitation, trade secrets and confidential information covenants contained in the Agreement.

## BINDING EFFECT

This agreement (the "Agreement") applies to your use of the site at www.digitalaltitude.co (the "Site") or any information, materials, images, graphics, data, text, files, links, software, messages, communications, content, organization, design, compilation, magnetic translation, digital conversion, HTML, XML, Java code and other content related to the Site (collectively "Content"), services provided in connection with the Site (the "Service"), and any purchases Member make on the Site. Digital Altitude, LLC (the "Company") may amend them from time to time in its sole discretion. In the event of substantive changes to this Agreement, the new terms will be posted to the Site, you will be required to affirmatively assent to its terms, and

FTC-CID_LE_000031

11

Member may also be notified by email. If any modification is unacceptable to Member, the only recourse is not to use the Site, Services, and Content and to request an immediate termination of your subscription.

**E-SIGNATURE NOTICE - CONSENT TO ELECTRONIC RECORD**
E-Sign, the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7001, et seq.), requires that Member consents to entering into an electronic agreement with Digital Altitude before a Digital Altitude Member Purchase Agreement can be executed. Please read the following information carefully:

a) If you enter into an online Member Purchase Agreement with Digital Altitude, Member will not be required to submit a paper application. An electronic record will evidence the entire agreement between Member and Digital Altitude. However, Member must consent to the use of an electronic record and must read the Digital Altitude Terms of Use, Digital Altitude Policies and Procedures, and electronically acknowledge below that Member has read and agree to these documents.

b) To access these documents and submit your online Member Purchase Agreement, Member will need a personal computer/Mac with Internet access and operational Internet browser software.

This Agreement will be binding upon each party hereto and its successors and permitted assigns. This Agreement will not be assignable or transferable by Member without Company's prior written consent. This Agreement contains the entire understanding of the parties regarding use of the Site and Content, its subject and supersedes all prior and contemporaneous agreements and understandings between the parties regarding the same. Any rights not expressly granted herein are reserved. The provisions of this Agreement addressing disclaimers of representations and warranties, indemnity obligations, intellectual property and governing law shall survive the termination of this Agreement.
You consent to the use of electronic records evidencing your agreement to the Digital Altitude Terms of Use, Policies and Procedures, all of which can be found at www.DigitalAltitude.co

**I consent to the use of electronic records and have read, understand, and agree to the Digital Altitude Member Purchase Agreement.**

_Michael Mosch_                                    08/29/2016
_____                    _____
Signature                                            Date

Printed Name:  MICHAEL DAVID MOSCH
              _____

Phone: ▮▮▮▮▮▮▮▮▮▮ _____   Email: ▮▮▮▮▮▮▮▮▮▮▮▮▮ ___

FTC-CID_LE_000032

F01-AW-0010607

**Payment Authorization:**

I am authorized to use this credit card and do hereby authorize a charge of $ ____4500____ to my

credit card below on ___08/29/2016___ for the purchase of my product:

X  **BASE**   X  **RISE**   X  **ASCEND**   X  **PEAK**   X  **APEX**

_Michael Mosch_

_____    08/29/2016
**Signature**                           **Date**

**Paying by:**  X  **VISA**    **MC**    **DISCOVER**    **AMEX**

**Card# 1:** ▮▮▮▮  ▮▮▮▮  _____

**Name on Card:** MICHAEL MOSCH _____

**Exp Date:** ▮▮▮▮ _____ **3 digit CVV Code:** _ ▮▮ _____

**Billing address:**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮_____ MUSCATINE, IA, ▮▮▮▮ ___
**Street**                                    **City, State, Zip**

*********************************************************************************************************

I am authorized to use this credit card and do hereby authorize a charge of $ ___2500___ to my

credit card below on ___08/29/2016___ for the purchase of my product:

X  **BASE**   X  **RISE**   X  **ASCEND**   X  **PEAK**   X  **APEX**

_Michael Mosch_

_____    08/29/2016
**Signature**                           **Date**

**Paying by:**  X  **VISA**    **MC**    **DISCOVER**    **AMEX**

**Card# 2:** _ ▮▮▮▮  ▮▮▮▮  _____

**Name on Card:** MICHAEL D MOSCH

**Exp Date:** ▮▮▮▮    **3 digit CVV Code:** ▮▮

**Billing address: (if different than card #1)**

_____

**Street**                                          **City, State, Zip**

*************************************************************************************************************

I am authorized to use this credit card and do hereby authorize a charge of $ 27500 to my

credit card below on 08/29/2016 for the purchase of my product:

X **BASE**    X **RISE**    X _____    X **PEAK**    X **APEX**

Michael Mosch

_____            08/29/2016
**Signature**                                      **Date**

**Paying by:**    **VISA**        **MC**        **DISCOVER**    X **AMEX**

**Card# 3:** ▮▮▮▮  ▮▮▮▮   _____

**Name on Card:** MICHAEL D MOSCH

**Exp Date:** ▮▮▮    **3 digit CVV Code:** ▮▮

**Billing address: (if different than card #1)**

_____

**Street**                                          **City, State, Zip**

**Notes:**

Last Updated 03.02.2016

FTC-CID_LE_000034

14

EX 22

788

# Signature Certificate

 Document Reference:   LTKU67J7VK425VCM4BI5E5


Easy Online Document Signing



**MICHAEL DAVID MOSCH**
Party ID: NWAIU2IKPIZZC22J5GP87Y
IP Address: ███████
VERIFIED EMAIL: ████████████

Electronic Signature:

*Michael Mosch*

Multi-Factor
Digital Fingerprint Checksum    1060f5d6762198d4c3245ffb3af15ea0792850b9



| Timestamp | Audit |
|---|---|
| 2016-08-29 14:27:15 -0700 | All parties have signed document. Signed copies sent to: Mary Dee and MICHAEL DAVID MOSCH. |
| 2016-08-29 14:27:15 -0700 | Document signed by MICHAEL DAVID MOSCH ████████████ with drawn signature. - ██████ |
| 2016-08-29 14:27:13 -0700 | MICHAEL DAVID MOSCH verified email address ████████████ . - |
| 2016-08-29 14:26:30 -0700 | Generated Document from Online Form 3payMEMBERPURCHASEAGREEMENT (3payMEMBERPURCHAS-e2e5fa). - ██████ |
| 2016-08-29 14:05:12 -0700 | Online Form viewed by MICHAEL DAVID MOSCH ██████████ . - ██████ |



This signature page provides a record of the online activity executing this contract.

**Page 1 of 1**

FTC-CID_LE_000035

# Invoice

Living Exceptionally Inc
Fort Worth, TX
United States
1 (800) 820-7589

| Date | Invoice # | Due Date |
|---|---|---|
| October 18, 2016 | 363050 | 09/01/2016 |

TO:

Michael Mosch

████████████████
Muscatine, IA ████████
United States

SHIP TO:

Michael Mosch

| Qty | Description | Unit Price | Total |
|---|---|---|---|
| 1 ASCEND - $9,997.00 | | | $9,997.00 $9,997.00 |
| 1 3% Administration Fee - $299.91 | | | $299.91 $299.91 |
| **Total Purchases** | | | **$10,296.91** |

## Payments Made

| | | |
|---|---|---|
| 8/29/2016 Credit Card (Manual) - PAID | | $5,000.00 |
| 8/31/2016 Credit Card (Manual) - PAID | | $2,999.00 |
| 8/31/2016 Credit Card (Manual) - PAID | | $2,297.91 |
| **Total Payments & Adjustments** | | **$10,296.91** |

## Payments Due

| | | |
|---|---|---|
| 9/1/2016 Current | | $0.00 |
| **Outstanding Balance** | | **$0.00** |
| **Balance Due Now** | | **$0.00** |

If you have any question please contact support@digitalaltitude.co

Sincerely,

Billing Department

FTC-CID_LE_000036

F01-AW-0010607

EX 22

790

**SUCCESS: Progress Note Saved**

Return to Search - Quick Links ▽

## Michael Mosch (26188: Mike84364) INF Id: 72952

| | |
|---|---|
| **Joined:** | Jul 14, 2016 2:41 PM (Tag: Redirect) |
| **Email:** | ███████████████ |
| **Phone:** | 4488 🖊 |
| **Skype:** | Add Skype Id |
| **City/State:** | Muscatine, IA ██████ |
| **Country:** | United States |

☐  Unlock My Marketing Menu Update

---

### Send Member An Email

Left Msg - Busy - Unavail - Invalid - It's Late - Spoken - Financing   ← Link to Gmail - Customize

### Signed Agreements Watch *NEW* Video »

**No signed new autofilled agreements.**

Refresh Tags from Infusionsoft

---

### Progress Locks/Notes

| # | Date | Author | Status | Unlocked Step | Note | |
|---|------|--------|--------|---------------|------|--|
| 1 | Oct 18, 2016 | Morgan Johnson | Refunding | Scale Up: 15 | member submitted chargeback for 5k | |

FTC-CID_LE_000037

| | | | | | |
|---|---|---|---|---|---|
| 2 | Sep 26, 2016 | Sehrish Imran | Note | Scale Up: 15 | Chargeback filed by member for the walker fee charged in July-SI |
| 3 | Sep 5, 2016 | Roma Cangco | Paying (Check) | Scale Up: 15 | rec'd $28,000.00 |
| 4 | Sep 1, 2016 | Majesty Amazona | Paying (CC) | Scale Up: 15 | 9/1 Michael Mosch $10296.91/$702.09 ASCEND/PEAK APPROVED! - Majesty/Ryan/Morgan |
| 5 | Aug 22, 2016 | Beau Ryan | New S1 | Scale Up: 15 | Looking to go APEX but will go through business plan. |
| 6 | Aug 18, 2016 | Beau Ryan | New S1 | Scale Up: 14 | unlocked to step 14. hoping to generate $7k per month, but not limited to that. Step 9 was about 4500. |
| 7 | Aug 15, 2016 | Beau Ryan | New S1 | Set Up: 12 | Disabled, living on disability, Income-2500, 100k cash, CS- 758, Renting. |
| 8 | Aug 13, 2016 | Larry Crisp | Steps In Prog. | Set Up: 9 | Hasn't connected with Beau? |
| 9 | Aug 4, 2016 | Larry Crisp | Steps In Prog. | Set Up: 8 | Bought RISE full pay today |
| 10 | Aug 4, 2016 | Larry Crisp | Steps In Prog. | Set Up: 8 | Bought RISE full pay today |
| 11 | Aug 1, 2016 | Larry Crisp | Funding | Start Up: 6A | His brother and his wife are sales people (sells pools). Wants to buy a house, scale |

FTC-CID_LE_000038

F01-AW-0010607

| | | | | | |
|---|---|---|---|---|---|
| | | | | his business, help his niece. | |
| 1 2 | Jul 28, 2016 | **Larry Crisp** | **Steps In Prog.** | **Start Up: 6A** | **Advanced to checkpoint 6 emailed/ called.** |
| 1 3 | Jul 19, 2016 | **Larry Crisp** | **Scheduled** | **Start Up: 3** | **He is in an assisted living center with bi-polar. Motivated. Has a nephew that needs help with a daughter needing leukemia treatments.** |
| 1 4 | Jul 19, 2016 | **Larry Crisp** | **1st Attempt** | **Start Up: 3** | **left message, emailed, and sent skype contact request** |
| 1 5 | Jul 14, 2016 | **Nick Reedy** | **New S1** | **Start Up: 3** | **WELCOME EMAIL** |

**Last Step Completed:** 15 of 18

**Next Unlocked Step:** Scale Up: 15 <-Checkpoint

NEW: **Step 6 now has two checkpoints: Part A and Part B.**

**Coach Status:** Refunding

PA/Admin Status: Cancelled   NEW: *Welcome Coaches, Personal Assistants and Admin now track their own status separately.*

**Progress Note:**

**Hot Level:** None

Save Lock/ Note

FTC-CID_LE_000039

## Referring Sponsor & Sponsor Locks By Product

**Referring Sponsor: Michael Jinks (8199: cnet), Affiliate: Active, ASPIRE: Climber, Rank: APEX**

| # | Rank | Locked Sponsor Name | Spnr Username | Spnr Id |
|---|------|---------------------|---------------|---------|
| 1 | ASPIRE Walker | Michael Jinks | cnet | 8199 |
| 2 | ASPIRE Hiker | Michael Jinks | cnet | 8199 |
| 3 | ASPIRE Climber | Michael Jinks | cnet | 8199 |
| 4 | BASE | Michael Jinks | cnet | 8199 |
| 5 | RISE | Michael Jinks | cnet | 8199 |
| 6 | ASCEND | Michael Jinks | cnet | 8199 |
| 7 | PEAK | Michael Jinks | cnet | 8199 |
| 8 | APEX | Michael Jinks | cnet | 8199 |

**Refresh Subscriptions/Pay Plan Status**

## Product/Rank History

| # | Start Date | Product/Rank | | Status | End Date | Paid Thru Date | Notes | Adjusted |
|---|-----------|--------------|---|--------|----------|----------------|-------|----------|
| 1 | Aug 3, 2016 | ASPIRE Hiker | | ACTIVE | Aug 23, 2017 | Aug 3, 2017 | | - |
| 2 | Jul 28, 2016 | ASPIRE Walker | | PAID | Sep 17, 2016 | Aug 28, 2016 | | - |
| 3 | Jul 14, 2016 | ASPIRE Walker | | PAID | Aug 17, 2016 | Jul 28, 2016 | | - |
| 4 | Aug 3, 2016 | BASE | | ACTIVE | | | | - |
| 5 | Aug 3, 2016 | RISE | | ACTIVE | | | | - |
| 6 | Aug 31, 2016 | ASCEND | | ACTIVE | | | | - |
| 7 | Sep 5, 2016 | PEAK | | ACTIVE | | | | - |
| 8 | Aug 31, 2016 | PEAK | | ACTIVE | | | | - |
| 9 | Sep 5, 2016 | APEX | | ACTIVE | | | | - |

FTC-CID_LE_000040

## Login History - Last 5

| # | Date | IP | Browser |
|---|------|----|---------|
| 1 | Aug 19, 2016 | ███████ | |
| 2 | Aug 18, 2016 | ███████ | |
| 3 | Aug 18, 2016 | ███████ | |
| 4 | Aug 15, 2016 | ███████ | |
| 5 | Aug 15, 2016 | ███████ | |

## Change Log

| # | Date | Table | Record ID | Field | Old Value | New Value | Changed By | Location |
|---|------|-------|-----------|-------|-----------|-----------|------------|----------|
| 1 | Oct 18, 2016 | member_notes | 464387 | note | member submitted chargeback for 5k | - Deleted - | Morgan Johnson | member.php |
| 2 | Aug 5, 2016 | member_coaches | 26188 | coach_id_scale | 220 | 307 | Larry Crisp | member.php |
| 3 | Jul 28, 2016 | member_notes | 157856 | note | Advanced to checkpoint 6 emailed/called. | - Deleted - | Larry Crisp | member.php |
| 4 | Jul 17, 2016 | member_coaches | 26188 | coach_id_startup | 22727 | 220 | Mary Dee | member.php |

FTC-CID_LE_000041

8/30/2017                                        LIVING EXCEPTIONALLY, INC.

| IRF ID | Group | Type | Requested By | Status | Progress | Submitted | Completed | Reviewed | Reviewed By |
|--------|-------|------|--------------|--------|----------|-----------|-----------|----------|-------------|
|        |       |      |              |        |          |           |           |          |             |

**How do you use Square?**
consultant

**Facebook**
*See attachments*

**Legal business name**
Living Exceptionally, LLC

**Business website**
www.livingexceptionally.com

**LinkedIn URL**
Merchant has not responded.

**Yelp URL**
Merchant has not responded.

**Twitter handle**
Merchant has not responded.

**Advertisement**
Advertisement ⤷

use_square_cnp_remote  on

**Where do you conduct business?**
X

**Opened in?**
2011

**EIN (Employer ID Number)**
████6025

**Government-issued documents**
Government Documentation ⤷

**What are the primary goods or services that you provide using Square?**
Event planning and management.  plan and conduct events  or clients and am paid on a percentage o  revenue.  send the rest to the wholesaler who  ulfills on the product side and   ulfill their event.

**Documentation o  your transaction**
nvoice ⤷

**Most recent bank statement**
Bank Statement 1 ⤷

**Second most recent bank statement**
Bank Statement 2 ⤷

**Third most recent bank statement**
Bank Statement 3 ⤷

**Is there anything else you'd like us to know?**
Merchant has not responded.

| ATTACHMENTS |
|---|
| 1118351 Bank Statement 1 ⤷ |
| 1118352 Bank Statement 2 ⤷ |
| 1118353 Bank Statement 3 ⤷ |
| 1147905 Government D ⤷ |
| 1163026 Advertisement ⤷ |
| 1163027  nvoice ⤷ |
| Open All Attachments |

FTC-CID_LE_000042

F01-AW-0010607                                                      EX 22
                                                                    796



**CHASE** ⬭

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

January 01, 2016 through January 29, 2016

Account Number: ▇▇▇▇9261

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00095908 DRE 201 210 03016 NNNNNNNNNNN  1 000000000 61 0000

THERMOGRAPHY FOR LIFE LLC
DBA LIVING EXCEPTIONALLY INC
6340 LAKE WORTH BLVD # 103
FORT WORTH TX 76135-3602



WE ARE UPDATING OUR DEPOSIT ACCOUNT AGREEMENT

On March 14, 2016, we will publish an updated version of our Deposit Account Agreement so that it is easier to understand. The updated agreement will be available on chase.com, at a branch or by request when you call us.

Please read the entire document, paying special attention to these sections:

- Deposit Records and Receipts (page 3): If you deposit an amount that is higher or lower than what is on the deposit receipt, we are not required to adjust your account for discrepancies of $10 or less. See below for the full paragraph that has changed.
- Linked Accounts (page 13): If the checking account linked to your other accounts closes, it is your responsibility to request any remaining eligible accounts to be linked.
- Closing Your Account (page 13): We are not required to close your account if you have pending transactions, or if the account is overdrawn or subject to legal process.
- Research, Legal Process and Requests for Information (page 15): If a legal hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We may also remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed.
- Preauthorized (Recurring) Transfers and Stop Payment (page 22): We explain how to stop payment on a recurring transfer or payment.

This is the updated paragraph that you will find in the Deposits Records and Receipts section: If you make a deposit, we may provide a receipt, but the amount on your deposit receipt is based entirely on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors including any errors on your deposit slip. We are not required to adjust your account for discrepancies of $10 or less. We may not adjust your account unless you notify us of the discrepancy within one year of the date of your account statement that shows the deposit. If you do not notify us of the error during this notice period, the deposit amount will be considered final. This means that if the actual amount deposited was less than the amount declared on the deposit receipt, the difference will become your property and if the actual amount deposited was more than the amount declared on the deposit receipt, the difference will become our property.

Please call us at the number on this statement if you have any questions.

WE ARE CHANGING THE FEE ON OUTGOING WIRE TRANSFERS NOT REQUESTED ONLINE

Your relationship is important to us, and we are committed to keeping you informed about changes that may affect you.

Starting March 22, 2016:
For outgoing wire transfers NOT requested online (for example, in a branch) the fee will increase to:
- Domestic Wire Fee: $35 per transfer
- International Wire Fee: $50 per transfer

FTC-CID_LE_000043

F01-AW-0010607

EX 22
797



January 01, 2016 through January 29, 2016

Account Number: ▉▉▉▉9261

The fee for outgoing wires made via Chase Online(SM) and Chase Mobile(R) (only available for domestic wires) remains the same. Transfer limits apply. Savings accounts cannot be used to fund wire transfers initiated on Chase Online(SM) and Chase Mobile(R). Incoming wire transfer fees remain the same.

These fees are waived for the following products:
- Chase Client Funds Checking(SM)
- Trust accounts for lawyers and realtors (names vary by market)

All other terms and conditions of your Deposit Account Agreement still apply. If you have any questions, please call the number listed at the top of this statement.

## CHECKING SUMMARY
Chase BusinessSelect Checking

|  | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** |  | **$477.02** |
| Deposits and Additions | 2 | 4,275.00 |
| ATM & Debit Card Withdrawals | 2 | - 50.00 |
| Electronic Withdrawals | 3 | - 4,125.00 |
| **Ending Balance** | **7** | **$577.02** |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 01/04 | Digital Altitude Payment | PPD ID: S941687665 | $4,250.00 |
| 01/15 | Card Purchase Return | 01/14 Fb *Roy Sonobel Pay.Fb.Com CA Card 4392 | 25.00 |
| **Total Deposits and Additions** |  |  | **$4,275.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 01/08 | Card Purchase | 01/07 Fb *Roy Sonobel Pay.Fb.Com CA Card 4392 | $25.00 |
| 01/15 | Card Purchase | 01/14 Fb *Roy Sonobel Pay.Fb.Com CA Card 4392 | 25.00 |
| **Total ATM & Debit Card Withdrawals** |  |  | **$50.00** |

## ATM & DEBIT CARD SUMMARY

Mary Dee  Card 4392

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $50.00 |
| Total Card Deposits & Credits | $25.00 |

ATM & Debit Card Totals

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $50.00 |
| Total Card Deposits & Credits | $25.00 |



January 01, 2016 through January 29, 2016

Account Number: ██████████9261



## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/11 | 01/09 Online Transfer To Chk ...1039 Transaction#: 5121237157 | $3,500.00 |
| 01/19 | 01/19 Online Transfer To Chk ...1039 Transaction#: 5140375450 | 500.00 |
| 01/25 | Discover      E-Payment      PPD ID: 3510020270 | 125.00 |
| **Total Electronic Withdrawals** | | **$4,125.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 01/04 | $4,727.02 |
| 01/08 | 4,702.02 |
| 01/11 | 1,202.02 |
| 01/15 | 1,202.02 |
| 01/19 | 702.02 |
| 01/25 | 577.02 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **4** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.   We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation .

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.



**JPMorgan Chase Bank, N.A. Member FDIC**

---

F01-AW-0010607

EX 22

799



January 01, 2016 through January 29, 2016
Account Number: ███████ 9261

This Page Intentionally Left Blank

FTC-CID_LE_000046
Page 4 of 4
EX 22
800



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

July 01, 2016 through July 29, 2016
Account Number:                    9261

00099588 DRE 201 210 21216 NNNNNNNNNNN  1 000000000 61 0000

THERMOGRAPHY FOR LIFE LLC
DBA LIVING EXCEPTIONALLY INC
6340 LAKE WORTH BLVD # 103
FORT WORTH TX 76135-3602

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



## We will update your account agreement, including eliminating fees and changing Overdraft Protection

We're making some changes to the terms and conditions of your account and want to provide a summary of what you can expect.

You can get the latest Deposit Account Agreement on chase.com, at a branch or by request when you call us. The parts of the Deposit Account Agreement that are changing will be in the Change in Terms section.

- On July 29, we updated the contact information for Arbitration in the General Account Terms of the Deposit Account Agreement (Section I, Part 12, Arbitration).

- On August 20, our Overdraft Protection service will change and we have rewritten the General Account Terms of the Deposit Account Agreement (Section C, Part 4, Overdraft Protection agreement) to reflect that. The most significant changes are the three things we previously told you:
  - Only a Chase business savings account or business line of credit will be able to provide Overdraft Protection to a business checking account. A credit card cannot be used.
  - We will transfer the exact amount needed to cover the transaction instead of multiples of $50.
  - We will no longer charge the $10 Overdraft Protection Transfer fee.

- On August 22, we will eliminate Domestic and International Collection fees, which we charge for deposited items that require special processing for us to collect the money from the paying bank.

If you have questions, please call us at the number on this statement.

## CHECKING SUMMARY   Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$3,286.96** |
| Deposits and Additions | 10 | 28,374.52 |
| Electronic Withdrawals | 8 | - 29,286.46 |
| **Ending Balance** | **18** | **$2,375.02** |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

FTC-CID_LE_000047
Page 1 of 4

EX 22

801



July 01, 2016 through July 29, 2016

Account Number: ███████9261

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/05 | Bank of America  Trialcredt 291293228       PPD ID: 9088871070 | $0.01 |
| 07/06 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 2,982.94 |
| 07/06 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 1,160.33 |
| 07/07 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 1,000.00 |
| 07/08 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 6,250.00 |
| 07/19 | Digital Altitude Vendor Pmt 292915382       ID: S941687665 | 264.60 |
| 07/19 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 216.64 |
| 07/22 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 6,250.00 |
| 07/22 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 5,125.00 |
| 07/29 | Digital Altitude Vendor Pmt           PPD ID: S941687665 | 5,125.00 |
| **Total Deposits and Additions** | | **$28,374.52** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/08 | 07/08 Online Transfer To Chk ...1039 Transaction#: 5513217924 | $5,000.00 |
| 07/11 | 07/09 Online Transfer To Chk ...1039 Transaction#: 5517464331 | 5,000.00 |
| 07/21 | 07/21 Online Transfer To Chk ...1039 Transaction#: 5540368870 | 2,000.00 |
| 07/22 | 07/22 Online Transfer To Chk ...1039 Transaction#: 5544387146 | 2,974.46 |
| 07/25 | 07/25 Online Transfer To Chk ...1039 Transaction#: 5547931795 | 6,000.00 |
| 07/25 | American Express ACH Pmt    W4734       Web ID: 2005032111 | 2,495.00 |
| 07/25 | Discover      E-Payment          PPD ID: 3510020270 | 317.00 |
| 07/29 | 07/29 Online Transfer To Chk ...1039 Transaction#: 5559929042 | 5,500.00 |
| **Total Electronic Withdrawals** | | **$29,286.46** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 07/05 | $3,286.97 |
| 07/06 | 7,430.24 |
| 07/07 | 8,430.24 |
| 07/08 | 9,680.24 |
| 07/11 | 4,680.24 |
| 07/19 | 5,161.48 |
| 07/21 | 3,161.48 |
| 07/22 | 11,562.02 |
| 07/25 | 2,750.02 |
| 07/29 | 2,375.02 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|-------------------------------------------|------------------------|
| Checks Paid / Debits | 2 |
| Deposits / Credits | 10 |
| Deposited Items | 0 |
| **Transaction Total** | **12** |

| SERVICE FEE CALCULATION | AMOUNT |
|--------------------------|--------|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |





**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.   We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation .

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 **JPMorgan Chase Bank, N.A. Member FDIC**

F01-AW-0010607

EX 22

803

**CHASE** ◯

July 01, 2016 through July 29, 2016

Account Number: ▮▮▮▮▮▮▮**9261**

This Page Intentionally Left Blank

FTC-CID_LE_000050
Page 4 of 4

EX 22

804



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 -9754

April 30, 2016 through May 31, 2016
Account Number: ████████9261

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00102187 DRE 201 210 15316 NNNNNNNNNN  1 000000000 61 0000

THERMOGRAPHY FOR LIFE LLC
DBA LIVING EXCEPTIONALLY INC
6340 LAKE WORTH BLVD # 103
FORT WORTH TX 76135-3602



## CHECKING SUMMARY
Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $7,914.87 |
| Deposits and Additions | 5 | 29,470.00 |
| ATM & Debit Card Withdrawals | 2 | - 100.11 |
| Electronic Withdrawals | 9 | - 33,604.46 |
| **Ending Balance** | **16** | **$3,680.30** |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/06 | Digital Altitude Payment        PPD ID: S941687665 | $6,250.00 |
| 05/12 | Martin Merriment Sender   285418268        ID: S941687665 | 220.00 |
| 05/23 | Digital Altitude Payment        PPD ID: S941687665 | 4,250.00 |
| 05/27 | Digital Altitude Vendor Pmt        PPD ID: S941687665 | 6,250.00 |
| 05/31 | Digital Altitude Payment        PPD ID: S941687665 | 12,500.00 |
| **Total Deposits and Additions** | | **$29,470.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/09 | Card Purchase        05/05 G & M #7 Oceanside CA Card 9610 | $32.16 |
| 05/24 | Card Purchase With Pin  05/24 Usps 0525920028 Fallbrook CA Card 4392 | 67.95 |
| **Total ATM & Debit Card Withdrawals** | | **$100.11** |

## ATM & DEBIT CARD SUMMARY

Mary Dee  Card 4392

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $67.95 |
| Total Card Deposits & Credits | $0.00 |

Robert S Bell  Card 9610

F01-AW-0010607

EX 22

805



April 30, 2016 through May 31, 2016
Account Number: ████████9261

|  |  |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $32.16 |
| Total Card Deposits & Credits | $0.00 |

ATM & Debit Card Totals

|  |  |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $100.11 |
| Total Card Deposits & Credits | $0.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/02 | 05/02 Online Transfer To Chk ...1039 Transaction#: 5367700219 | $5,000.00 |
| 05/10 | American Express ACH Pmt    W8196      Web ID: 2005032111 | 240.11 |
| 05/13 | 05/13 Online Transfer To Chk ...1660 Transaction#: 5390986149 | 2,000.00 |
| 05/13 | 05/13 Online Transfer To Chk ...1039 Transaction#: 5390986982 | 4,500.00 |
| 05/19 | Discover       E-Payment  5332       Web ID: 2510020270 | 295.00 |
| 05/19 | American Express ACH Pmt    W4682      Web ID: 2005032111 | 69.35 |
| 05/27 | 05/27 Online Transfer To Chk ...1660 Transaction#: 5420506108 | 1,500.00 |
| 05/27 | 05/27 Online Transfer To Chk ...1039 Transaction#: 5420506295 | 10,000.00 |
| 05/31 | 05/31 Online Transfer To Chk ...1039 Transaction#: 5428644507 | 10,000.00 |
| **Total Electronic Withdrawals** | | **$33,604.46** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 05/02 | $2,914.87 | 05/12 | 9,112.60 | 05/24 | 6,430.30 |
| 05/06 | 9,164.87 | 05/13 | 2,612.60 | 05/27 | 1,180.30 |
| 05/09 | 9,132.71 | 05/19 | 2,248.25 | 05/31 | 3,680.30 |
| 05/10 | 8,892.60 | 05/23 | 6,498.25 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 5 |
| Deposits / Credits | 5 |
| Deposited Items | 0 |
| **Transaction Total** | **10** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |



April 30, 2016 through May 31, 2016

Account Number: ████████9261



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.    We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation .

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**  Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 **JPMorgan Chase Bank, N.A. Member FDIC**

FTC-CID_LE_000053
Page 3 of 4

EX 22
807



April 30, 2016 through May 31, 2016

Account Number: ████████9261

This Page Intentionally Left Blank

FTC-CID_LE_000054
Page 4 of 4

EX 22

808

| | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $300 | <br>**Certificate of Formation**<br>**Limited Liability Company** | **Filed in the Office of the**<br>**Secretary of State of Texas**<br>Filing #: ▮9528 06/15/2011<br>Document #: 372300580002<br>**Image Generated Electronically**<br>**for Web Filing** |

---

**Article 1 - Entity Name and Type**

The filing entity being formed is a limited liability company. The name of the entity is:

## THERMOGRAPHY FOR LIFE, LLC

**Article 2 – Registered Agent and Registered Office**

☑A. The initial registered agent is an organization (cannot be company named above) by the name of:

**Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company**

OR

☐B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**211 E. 7th Street**
**Suite 620  Austin  TX  78701**

**Consent of Registered Agent**

☑A. A copy of the consent of registered agent is attached. **THERMOGRAPHY FOR LIFE, LLC AGENT CONSENT.pdf**

OR

☐B. The consent of the registered agent is maintained by the entity.

**Article 3 - Governing Authority**

☑A. The limited liability company is to be managed by managers.

OR

☐B. The limited liability company will not have managers. Management of the company is reserved to the members. The names and addresses of the governing persons are set forth below:

| Manager 1: **MAUREEN   PRICHARD** | | Title: **Manager** |
|---|---|---|
| Address: | **AUSTIN  TX,** | |
| Manager 2: **MARY   DEE** | | Title: **Manager** |
| Address: | **AUSTIN  TX, USA** | |

**Article 4 - Purpose**

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

**Supplemental Provisions / Information**

FTC-CID_LE_000055



FTC-CID_LE_000056

# Invoice

Living Exceptionally, Inc

| Date | Invoice # | Due Date |
|---|---|---|
| August 30, 2016 | 307746 | 08/19/2016 |

TO:
Yoshihito Tamiya
███████████
Roslyn, NY
United States

SHIP TO:

Yoshihito Tamiya
?da=onlinesuccess&t=tribe

| Qty | Description | Unit Price | Total |
|---|---|---|---|
| 1 ASCEND - $9,997.00 | | | $9,997.00 $9,997.00 |
| 1 3% Administration Fee - $299.91 | | | $299.91 $299.91 |
| **Total Purchases** | | | **$10,296.91** |

**Payments Made**

8/19/2016
Credit Card (Manual) - PAID

$9,997.00

**Total Payments & Adjustments**

**$9,997.00**

**Payments Due**

8/19/2016
Past Due

$299.91

**Outstanding Balance**

**$299.91**

**Balance Due Now**

**$299.91**

If you have any question please contact support@digitalaltitude.co

Sincerely,

Billing Department

FTC-CID_LE_000057

F01-AW-0010607

| Account Name: Account Name | Subject | Description | Type | Case Owner: Full Name | Status | Date/Time Opened | Subject |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Your action is required | | US Compliance | US Compliance Queue | Closed | 8/29/2016 15:43 | Alert from Square, Inc: Your action is required |

F01-AW-0010606

EX 22

812

| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | Action required for a $5,000.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | We haven?t received a response for your $5,000.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | Information received for $5,000.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | We?ve reviewed your response for your $5,000.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | Please fill out a quick survey about your experience with Square |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Action required for a $5,000.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 10/14/2016 8:36 | $5,000.00 payment dispute update |
| LIVING EXCEPTIONALLY, INC. | Action required for a $2,999.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 11/10/2016 8:33 | Action required for a $2,999.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $2,999.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 11/10/2016 8:33 | We haven?t received a response for your $2,999.00 payment dispute |

EX 22
814

| | | | | | | |
|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Action required for a $2,999.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 11/10/2016 8:33 | Update: Action required for an updated $2,999.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $2,999.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 11/10/2016 8:33 | $2,999.00 payment dispute update |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Action required for a $2,999.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 11/10/2016 8:33 | Please Create a New Case with Square Support |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,946.26 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/19/2016 7:07 | Action required for a $1,946.26 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,946.26 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/19/2016 7:07 | We haven?t received a response for your $1,946.26 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,946.26 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/19/2016 7:07 | Update to your $1,946.26 payment dispute |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,946.26 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/19/2016 7:07 | $1,946.26 payment dispute update |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,400.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/26/2016 7:02 | Action required for a $1,400.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,400.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/26/2016 7:02 | We haven?t received a response for your $1,400.00 payment dispute |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,400.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/26/2016 7:02 | Update to your $1,400.00 payment dispute |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,400.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/26/2016 7:02 | $1,400.00 payment dispute update |
| LIVING EXCEPTIONALLY, INC. | Action required for a $1,400.00 payment dispute | | US Disputes | US Disputes Queue | Closed | 12/26/2016 7:02 | Please Create a New Case with Square Support |

F01-AW-0010606

EX 22

818

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Action Required | | US Risk | Brendan Knapp | Closed | 8/1/2016 18:57 | Alert from Square, Inc: Action Required |
| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Important Information About Your Account | | US Risk | Brendan Knapp | Closed | 9/6/2016 16:23 | Alert from Square, Inc: Important Information About Your Account |
| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Important Information About Your Account | | US Risk | Jessica Christjans | Closed | 12/5/2016 9:36 | Alert from Square, Inc: Important Information About Your Account |

F01-AW-0010606

EX 22
819

| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Important Information About Your Account | US Risk | Brendan Knapp | Closed | 1/3/2017 15:14 | Alert from Square, Inc: Important Information About Your Account |
| --- | --- | --- | --- | --- | --- | --- |
| LIVING EXCEPTIONALLY, INC. | Alert from Square, Inc: Important Information About Your Account | US Risk | Stacey Guzman | Closed | 3/6/2017 13:53 | Alert from Square, Inc: Important Information About Your Account |
| LIVING EXCEPTIONALLY, INC. | Square Dashboard - Account Settings | US Core Support | US Support Queue | Closed | 4/28/2014 19:12 | Re: Square Dashboard - Account Settings |

Counsel - Case Emails by Merchant

Copyright (c) 2000-2017 salesforce.com, inc. All rights reserved.
Confidential Information – Do Not Distribute
Generated By: Crystal Nagaya 9/1/2017 9:13 AM
Square Inc.

EX 22

820

| Text Body | Is Incoming | Status | Message Date | Case Record Type | Case Number |
|---|---|---|---|---|---|
| Hello Maureen, Congratulations on the success of your business! As a high-volume customer, your business is now defined under Visa and MasterCard rules as a Commercial Entity. As such, our Card Network partners request all qualified Square customers review and consent to the terms of the Commercial Entity Agreement. To view and accept the agreement, please do the following: Please log in to the Square Dashboard on a computer at https://squareup.com/login. Click "Sign Commercial Entity Agreement" next to the alert icon at the top of the page. Read the agreement. Complete all required fields and click "I Agree". You will need to be logged into your Square account in order to access the agreement page. If you are not currently logged in, you will be redirected to the sign-in page. This will not affect how your Square account operates. Please find below answers to some commonly asked questions regarding the Commercial Entity Agreement. If you have any additional questions, please don't hesitate to contact our support team. Thank you for your cooperation and your continued business! Sincerely, Square Compliance Team What is a Commercial Entity Agreement? A Commercial Entity Agreement is a compliance requirement set forth by our Card Network partners. It details credit card network (Visa, MasterCard) rules governing the authorization, conveyance and settlement of transactions using services provided by Square. In addition, it is an acknowledgement the payments you process using Square are associated to a commercial business. Is this required? What happens if I do not sign this agreement? Since this is a compliance requirement, consent to the agreement is mandatory. Square is obligated to obtain the consent from eligible users on behalf of our Card Network partners. In the event we do not receive a consent to the agreement from your business, we will be unable to accept payments for your business using services provided by Square. Why is my business considered a commercial entity? Visa and MasterCard collectively define users who have processed a high volume of payments as commercial entities. Our records indicate your business has approached $100,000 in credit card payments using Square and is therefore defined as a commercial entity. This message was sent from an unmonitored email address. If you have any further questions, please visit our Help Center at https://squareup.com/help or email us at compliance@help-messaging.squareup.com. © 2016 Square, Inc. ref._00DE0Y7ru._500E0eeL4W:ref | 1 | New | 8/29/2016 15:44 | Compliance | 17976458 |

| Message | | | | | |
|---|---|---|---|---|---|
| Hello LIVING EXCEPTIONALLY, INC., We've received notice of a $5,000.00 payment dispute on a payment you processed on August 29, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/form/1a7f4004b02 to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $5,000.00 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/R76HyxP94QwKIMTYze5vDtMF. Thanks, Square Dispute Resolutions Team | 1 | New | 10/14/2016 8:36 | Disputes | 18425136 |
| Hello LIVING EXCEPTIONALLY, INC., We haven?t received a response from you regarding the $5,000.00 payment dispute on a transaction that was processed on August 29, 2016. Please fill out this Information Request Form: https://squareup.com/form/1a7f4004b02 within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 10/17/2016 15:09 | Disputes | 18425136 |
| Hello LIVING EXCEPTIONALLY, INC., Thank you for providing the documentation and information for the $5,000.00 payment dispute associated with your account. We will review your documentation and reply back in 1 - 2 business days with the next steps in the dispute process. Dispute Reason: No knowledge of charge Disputed Amount: $5,000.00 Payment Amount: $5,000.00 Payment Date: August 29, 2016 05:39 CDT Payment Card: Visa - 9208 Receipt: https://squareup.com/receipt/preview/R76HyxP94QwKIMTYze5vDtMF Thanks, Square Dispute Resolutions Team | 1 | New | 10/18/2016 20:34 | Disputes | 18425136 |
| Hello LIVING EXCEPTIONALLY, INC., We have reviewed your response for the $5,000.00 payment dispute for the transaction you processed on August 29, 2016. Next steps: We will submit your response to your customer?s bank to challenge the dispute claim The bank will review the response and will notify us of their official resolution You can track the status of your dispute on your Dashboard: https://squareup.com/dashboard/sales/transactions/R76HyxP94QwKIMTYze5vDtMF. Please note that it may take up to 90 days for your payment dispute to be resolved. Thanks, Square Dispute Resolutions Team | 1 | New | 10/20/2016 15:17 | Disputes | 18425136 |
| Dear LIVING EXCEPTIONALLY, INC., If you have a minute, we'd like to hear your feedback about your recent chargeback experience. We're constantly looking for ways to improve your experience. Share feedback: https://squareup.com/form/6e3e78a814e Thank you in advance for your candid responses. Square Dispute Resolutions Team | 1 | New | 11/4/2016 9:02 | Disputes | 18425136 |

F01-AW-0010606

EX 22
822

| | | | | |
|---|---|---|---|---|
| Hello LIVING EXCEPTIONALLY, INC., Thank you for your patience during the resolution process. We challenged the $5,000.00 payment dispute on your behalf. Unfortunately, your customer?s bank has resolved the case below in your customer?s favor. Dispute Reason: Credit requested for charge Disputed Amount: $5,000.00 Payment Amount: $5,000.00 Payment Date: August 29, 2016 05:39 CDT Payment Card: Visa – 9208 Receipt: https://squareup.com/receipt/preview/R76HyxP94QwKIMTYze5vDtMF If funds have not yet been placed on hold for this dispute, please be aware that the amount of $5,000.00 will be withdrawn from your Square balance. If the funds are not available, your linked bank account will be debited. Because the customer?s bank makes the final decision in a payment dispute, Square has no further rights to pursue the collection of these funds via the dispute process. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/R76HyxP94QwKIMTYze5vDtMF. Thanks, Square Dispute Resolutions Team | 1 | New | 1/20/2017 10:08 | Disputes | 18425136 |
| Hello LIVING EXCEPTIONALLY, INC., We've received notice of a $2,999.00 payment dispute on a payment you processed on August 30, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/form/6e3ea70e9e4 to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $2,999.00 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/QZk6wcHomt0MAjP9AZDEzyMF. Thanks, Square Dispute Resolutions Team | 1 | New | 11/10/2016 8:33 | Disputes | 18657986 |
| Hello LIVING EXCEPTIONALLY, INC., We haven?t received a response from you regarding the $2,999.00 payment dispute on a transaction that was processed on August 30, 2016. Please fill out this Information Request Form: https://squareup.com/form/6e3ea70e9e4 within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 11/13/2016 14:06 | Disputes | 18657986 |

| | | | |
|---|---|---|---|
| Hello LIVING EXCEPTIONALLY, INC., Your customer?s bank has notified us that they need a secondary response from you in order to continue investigating this payment. Our team is here to help you respond to the updated claim, but we need your help. Please click here: https://squareup.com/dashboard/sales/transactions/BpLJYypdiZ0g4bJFOSsnKwseV/by-unit/26TYWvZGYPP4F/disputes/6b29d8fea54 for more information, and confirm that you would like to continue challenging this case. If you select yes, we will challenge the re-dispute with all the documentation and information you previously submitted. If you have any new information you would like to add to this case, please do so through our Information Request Form: https://squareup.com/dashboard/sales/transactions/BpLJYypdiZ0g4bJFOSsnKwseV/by-unit/26TYWvZGYPP4F/disputes/6b29d8fea54 If you would like to refund your customer instead, select 'No' on the Information Request Form: https://squareup.com/dashboard/sales/transactions/BpLJYypdiZ0g4bJFOSsnKwseV/by-unit/26TYWvZGYPP4F/disputes/6b29d8fea54 You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/QZk6wcHomt0MAJP9AZDEzyMF. Thanks, Square Dispute Resolutions Team | 1 | New | 1/2/2017 7:12 Disputes | 18657986 |
| Hello LIVING EXCEPTIONALLY, INC., Thank you for your patience during the resolution process. We challenged the $2,999.00 payment dispute on your behalf. Unfortunately, your customer?s bank has resolved the case below in your customer?s favor. Dispute Reason: No knowledge of charge Disputed Amount: $2,999.00 Payment Date: August 30, 2016 01:09 CDT Payment Amount: $2,999.00 Payment Card - 4556 Receipt: https://squareup.com/receipt/preview/QZk6wcHomt0MAJP9AZDEzyMF If funds have not yet been placed on hold for this dispute, please be aware that the amount of $2,999.00 will be withdrawn from your Square balance. If the funds are not available, your linked bank account will be debited. Because the customer?s bank makes the final decision in a payment dispute, Square has no further rights to pursue the collection of these funds via the dispute process. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/QZk6wcHomt0MAJP9AZDEzyMF. Thanks, Square Dispute Resolutions Team | 1 | New | 3/6/2017 10:12 Disputes | 18657986 |

| | | | | | |
|---|---|---|---|---|---|
| Hi MAUREEN, Thanks for your reply! It's been more than 2 weeks since we last heard from you, so we closed this case. If you have additional questions, please create a new case with our Support Team by visiting the Support Center [https://squareup.com/help?utm_campaign=case-closed-email&utm_medium=email&utm_source=support-email]. Additionally, feel free to visit Square's Seller Community [https://www.sellercommunity.com/?utm_source=email&utm_medium=email&utm_campaign=case-closed-email] to get ideas and help from other Square sellers. Thanks again, Square Support ------------------------ For your reference this is Case #: 18657986 Please keep in mind that Square will be able to use and share any idea you submit without any obligations or restrictions. For more details, please visit Square Legal Agreements, Notices, Licenses, and Policies: https://squareup.com/legal/ua ---------------------------- © 2017 Square, Inc. ref:_00DE0Y7ru._5000Lhxowp:ref | 1 | New | 3/6/2017 10:12 | Disputes | 18657986 |
| Hello LIVING EXCEPTIONALLY, INC., We've received notice of a $1,946.26 payment dispute on a payment you processed on September 06, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/form/8e0694fcd6d to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $1,946.26 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/AaMEqM70Y8JOdFfSDZu5rtMF. Thanks, Square Dispute Resolutions Team | 1 | New | 12/19/2016 7:07 | Disputes | 18895587 |
| Hello LIVING EXCEPTIONALLY, INC., We haven?t received a response from you regarding the $1,946.26 payment dispute on a transaction that was processed on September 06, 2016. Please fill out this Information Request Form: https://squareup.com/form/8e0694fcd6d within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 12/22/2016 14:03 | Disputes | 18895587 |
| Hello LIVING EXCEPTIONALLY, INC., We see that you have not submitted a response for the $1,946.26 payment dispute you processed on September 06, 2016. Since we did not receive a response from you, we will review the details of the case and process the dispute based on the information we have on file. You can track the status of your dispute on your Dashboard: https://squareup.com/dashboard/sales/transactions/AaMEqM70Y8JOdFfSDZu5rtMF. Please note that it may take up to 90 days for your payment dispute to be resolved. Thanks, Square Dispute Resolutions Team | 1 | New | 12/27/2016 14:05 | Disputes | 18895587 |

| Message | | | | | |
|---|---|---|---|---|---|
| Hello LIVING EXCEPTIONALLY, INC., Thank you for your patience during the resolution process. We challenged the $1,946.26 payment dispute on your behalf. Unfortunately, your customer?s bank has resolved the case below in your customer?s favor. Dispute Reason: Credit requested for charge Disputed Amount: $1,946.26 Payment Amount: $2,057.00 Payment Date: September 6, 2016 12:24 CDT Payment Card: Visa – 4005 Receipt: https://squareup.com/receipt/preview/AaMEqM70Y8jOdFfSDZu5rtMF If funds have not yet been placed on hold for this dispute, please be aware that the amount of $1,946.26 will be withdrawn from your Square balance. If the funds are not available, your linked bank account will be debited. Because the customer?s bank makes the final decision in a payment dispute, Square has no further rights to pursue the collection of these funds via the dispute process. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/AaMEqM70Y8jOdFfSDZu5rtMF. Thanks, Square Dispute Resolutions Team | 1 | New | 3/27/2017 10:13 | Disputes | 18995587 |
| Hello LIVING EXCEPTIONALLY, INC., We've received notice of a $1,400.00 payment dispute on a payment you processed on August 30, 2016. Our Dispute Resolutions team is here to guide you through the dispute process. Click here: https://squareup.com/dashboard/sales/transactions/NvFeVeQXUAOw24VusVI17heV/by-unit/26TYWVZGYP4F/disputes/672f6d691c7 to send in supporting documentation for this dispute and help us advocate on your behalf. Please be aware that your linked bank account will be immediately debited for the amount of $1,400.00 if these funds are not available in your Square balance. The disputed amount will remain on hold in your Square account until we receive an official resolution from your customer's bank. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/3u6DI2dcoprIOghrIv6IAxMF. Thanks, Square Dispute Resolutions Team | 1 | New | 12/26/2016 7:02 | Disputes | 19052253 |
| Hello LIVING EXCEPTIONALLY, INC., We haven?t received a response from you regarding the $1,400.00 payment dispute on a transaction that was processed on August 30, 2016. Please fill out this Information Request Form: https://squareup.com/dashboard/sales/transactions/NvFeVeQXUAOw24VusVI17heV/by-unit/26TYWVZGYP4F/disputes/672f6d691c7 within 3 days from the date of this notification to let us know whether you would like to challenge or accept the chargeback. Thanks, Square Dispute Resolutions Team | 1 | New | 12/29/2016 14:02 | Disputes | 19052253 |

F01-AW-0010606

| | | | | | |
|---|---|---|---|---|---|
| Hello LIVING EXCEPTIONALLY, INC., We see that you have not submitted a response for the $1,400.00 payment dispute you processed on August 30, 2016. Since we did not receive a response from you, we will review the details of the case and process the dispute based on the information we have on file. You can track the status of your dispute on your Dashboard: https://squareup.com/dashboard/sales/transactions/3u6DI2dcoprIOghrIv6IAxMF. Please note that it may take up to 90 days for your payment dispute to be resolved. Thanks, Square Dispute Resolutions Team | 1 | New | 1/3/2017 14:01 | Disputes | 19052253 |
| Hello LIVING EXCEPTIONALLY, INC., Thank you for your patience during the resolution process. We challenged the $1,400.00 payment dispute on your behalf. Unfortunately, your customer?s bank has resolved the case below in your customer?s favor. Dispute Reason: No knowledge of charge Disputed Amount: $1,400.00 Payment Amount: $1,400.00 Payment Date: August 30, 2016 03:06 CDT Payment Card: American Express - 2497 Receipt: https://squareup.com/receipt/preview/3u6DI2dcoprIOghrIv6IAxMF If funds have not yet been placed on hold for this dispute, please be aware that the amount of $1,400.00 will be withdrawn from your Square balance. If the funds are not available, your linked bank account will be debited. Because the customer?s bank makes the final decision in a payment dispute, Square has no further rights to pursue the collection of these funds via the dispute process. You can visit your Dashboard for more information about the disputed payment, including the dispute claim and a copy of the transaction receipt: https://squareup.com/dashboard/sales/transactions/3u6DI2dcoprIOghrIv6IAxMF. Thanks, Square Dispute Resolutions Team | 1 | New | 4/20/2017 10:06 | Disputes | 19052253 |
| Hi MAUREEN, Thanks for your reply! It's been more than 2 weeks since we last heard from you, so we closed this case. If you have additional questions, please create a new case with our Support Team by visiting the Support Center [https://squareup.com/help?utm_campaign=case-closed-email&utm_medium=email&utm_source=support-email]. Additionally, feel free to visit Square's Seller Community [https://www.sellercommunity.com/?utm_source=email&utm_medium=email&utm_campaign=case-closed-email] to get ideas and help from other Square sellers. Thanks again, Square Support ------------------- For your reference this is Case #: 19052253 Please keep in mind that Square will be able to use and share any idea you submit without any obligations or restrictions. For more details, please visit Square Legal Agreements, Notices, Licenses, and Policies: https://squareup.com/legal/ua ----------------------------------- © 2017 Square, Inc. ref:_00DE0Y7ru._5000Lj2Byk:ref | 1 | New | 4/20/2017 10:06 | Disputes | 19052253 |

F01-AW-0010606

EX 22
827

| Message | | | | | |
|---|---|---|---|---|---|
| Hello Maureen, To ensure the financial security of both you and your customers, we need to verify some information about your account. Unfortunately, we cannot deposit funds to your bank account until we verify this information, although you will still be able to accept payments using Square during this period. Our goal is to resume deposits to your bank account as quickly as possible. We?re sorry for any inconvenience this may cause. If you?re unsure why you received this email, please see this article. To verify your account, please do the following: Log in to the Square Dashboard. Click "Begin verification" next to the alert icon at the top of the page. Please answer the verification form with as much detail as possible. You can upload documents directly through the questionnaire or fax them to us. Click "Submit." Once you've completed the form, you'll receive an email confirmation and should expect to hear back from us within one to two business days. If you have questions regarding the form, or are unsure of what documentation to send, please read our list of frequently asked questions. If you still have questions, please call +1-855-700-5000 and have your customer code ready: 2837-3282-6763. We're available Monday through Friday from 9 a.m. to 5 p.m. Pacific Time. We apologize for the inconvenience this may cause. We hope to make this process as easy as possible so you can get back to business. Thanks in advance for your cooperation. Square Account Services © 2016 Square, Inc. ref:_00DE0Y7ru._500E0d6tmK:ref | 1 | New | 8/1/2016 18:57 | Risk | 17705752 |
| Hello Maureen, We?re sorry to inform you that we are deactivating your account. Our Account Services team reviewed your account and found a pattern of transactions associated with high-risk activity. For further information about our policies, you can review section 36 of the Square Payment Terms. We regret that, starting today, you will no longer be able to process transactions using Square. Any funds currently in your account will be held for 90 days before being released to your linked bank account. If you?d prefer to receive funds more quickly, you should consider refunding the payments back to the original cards and seeking alternate forms of payment. (Please note that we will refund all the fees, too.) Refunds are available within 60 days of the original payment. To process a refund, log in to the Square dashboard. Use the date selector tool to locate the specific payment. Click the payment you'd like to refund, then click "Issue Refund". Select the reason you're refunding the payment, and click "Issue Refund." Unfortunately, our decision to deactivate your account is final. Due to security reasons and the obligations of our agreements with card networks and other financial institutions, we cannot reverse this decision and are unable to provide additional details. Again, we apologize for any inconvenience this may have caused. Sincerely, Square Account Services © 2016 Square, Inc. ref:_00DE0Y7ru._500E0f7TI:ref | 1 | New | 9/6/2016 16:23 | Risk | 18062120 |
| Hello Maureen, Due to the recent chargebacks on your account, any funds currently in your Square account will be held for an additional 30 days. Thank you for understanding. Sincerely, Square Account Services © 2016 Square, Inc. ref:_00DE0Y7ru._5000LimDfh:ref | 1 | New | 12/5/2016 9:36 | Risk | 18860583 |

| Message | | | | |
|---|---|---|---|---|
| Hello Maureen, Due to the recent chargebacks on your account, any funds currently in your Square account will be held for an additional 60 days. Thank you for understanding. Sincerely, Square Account Services © 2017 Square, Inc. ref:_00DE0Y7ru._5000LjcEhB:ref | 1 | New | 1/3/2017 15:14 Risk | 19116219 |
| Hello Maureen, We wanted to let you know that the hold on your Square account has expired, and your funds are scheduled to be deposited to your linked bank account within one to two business days. Please note that your account status remains unchanged. We appreciate your patience and apologize again for any inconvenience this may have caused. Sincerely, Square Account Services © 2017 Square, Inc. ref:_00DE0Y7ru._5000LjYSTd:ref | 1 | New | 3/6/2017 13:53 Risk | 19691975 |
| | 0 | Sent | 4/30/2014 13:13 Support | 08618683 |

EX 22
829



October 16, 2017

**VIA FTP Transfer**

Laura Basford
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8528
Washington, DC 20580

**Re: File No. 1723060**

Dear Ms. Basford,

I am writing on behalf of Square Inc. ("Square") in response to the FTC Civil Investigative Demand ("CID") dated August 21, 2017 in the above-referenced file.  This letter is an amendment to the response submitted on 9/8/2017.

**PRELIMINARY STATEMENT**

Square makes this response to this CID solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, materiality, proprietary, admissibility, privilege, privacy, the bank examination privilege, proprietary information, trade secrets and the like, and any and all other objections on grounds that would require the exclusion of any response herein if such were offered in court, all of which objections and grounds are reserved and may be interposed in the future.

Square's responses are based upon information known to it as of September 1, 2017.  Square reserves the right to correct, supplement, or clarify these responses based upon information that comes to its attention after the date of these responses.

**STATEMENT REGARDING SQUARE'S SEARCH AND PRODUCTION OF DOCUMENTS**

Pursuant to your request, Square personnel conducted a search of Square's systems to produce information relating to the "Subject Account" identified in "Specifications" section of the CID.

EX 22
830



There was one subject account that corresponds to the entities or individuals listed in the "Specifications" section of the CID. That account is: (1) LIVING EXCEPTIONALLY, INC., Square User Token 26TYWVZGYPP4F.

Enclosed please find records bates stamped FTC-CID_LE_000001-FTC-CID_LE_000059. Insofar as Square maintains the data requested, these documents reflect the responsive materials. "Dossier ReadMe" is included to assist you in reading the provided documents.

Also enclosed are the Form Certificate of Compliance and Certification of Records of Regularly Conducted Business Activities requested as part of the CID.

Pursuant to agreed upon general modifications, wherein a document is responsive to an interrogatory, Square has produced a copy of that document in lieu of a written response. Square has included, where appropriate, a written response describing how particular documents are responsive to an interrogatory.

Square provides the following response to the document requests in the "Specifications" Section of the CID:

**III B.   DOCUMENTARY MATERIALS**:

<strong>GENERAL OBJECTIONS</strong>

Square incorporates the following general objections by this reference into each of the specific responses and objections to the individual categories of documents or information sought in the CID:

1.     Square objects to each category of documents or information sought in the CID to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the bank examination privilege or any other rule of privilege or confidentiality provided by law.  Square will not provide such documents.  Any disclosure of any such privileged or protected material in response to any category of documents or information sought in the CID is inadvertent and not intended to waive those privileges and protections.

2.     Square objects to each category of documents or information sought in the CID to the extent it seeks documents or information containing and/or reflecting trade secret, confidential information and/or other proprietary information of Square.



3.      To the extent any definition or instruction in the CID may be construed as requiring Square to characterize documents or their contents or to speculate as to what documents may or may not show, Square objects to such definitions or instructions as vague, ambiguous and calling for legal conclusions and speculation.

**CID Requests:** Produce any and all documents relating to each Corporate Account, including but not limited to the following:

1.      All documents relating to the underwriting of the Subject Account, even if such documents were created prior to the Applicable Time Period.

**SQUARE RESPONSE: Square objects to this Request to the extent it is overly broad and unduly burdensome as it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Square does not maintain underwriting materials in the manner requested, however the "subscriber information" as obtained during account creation is listed in the produced documents.  To the extent that it exists in Square's systems, the data and materials responsive to request (1) above are produced at FTC-CID_LE_000001.**

2.      All documents the Company received or reviewed in connection with opening of the Subject Account (even if such documents were created prior to the Applicable Time Period), such as: merchant applications and supporting documentation; financial statements; contracts and agreements between the merchant and the Company or banks; due diligence materials; Dun & Bradstreet reports; background inquiries; Member Alert to Control High-Risk ("MATCH") or Terminated Merchant File ("TMF") inquiry results; past Chargeback rates; estimates of future Chargeback rates; descriptions of goods or services marketed; sales or customer service scripts; and all materials the merchant provided to the Company.

**SQUARE RESPONSE:  Square objects to this Request to the extent it is overly broad and unduly burdensome as it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to**



**this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Square does not maintain application materials in the manner requested, however the "subscriber information" as obtained during account creation is listed in the produced documents.  To the extent that it exists in Square's systems, the data and materials responsive to request (1) above are produced at FTC-CID_LE_000001.**

3.      All correspondence relating to the Subject Account, including all correspondence between the Company and the merchant, any banks, card networks (e.g., Visa or MasterCard), or any entity involved in Payment Processing;

**SQUARE RESPONSE:  Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Correspondence relating to each account can be found at: FTC-CID_LE_000002-FTC-CID_LE_000059.**

4.      All documents relating to complaints or inquiries that the Company received referring or relating to the Subject Account, including complaints or inquiries received from consumers, financial institutions, Better Business Bureaus, federal or state government entities (including law enforcement agencies and regulatory agencies), or any other persons or entities. Documents responsive to this request include written complaints or inquiries, notes of telephone conversations relating to any complaints or inquiries, and any replies or responses to the complaints or inquiries.

**SQUARE RESPONSE:  Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**



**Square is not aware of any complaints or inquiries as described above relating to the corporate or individual accounts at issue in the CID.**

5.      All documents referring or relating to any audit or monitoring of the Subject Account, including any Chargeback, compliance, or anti-fraud monitoring programs such as MasterCard's Excessive Chargeback Program ("ECP") or the Visa Chargeback Monitoring Program ("VCMP").

**SQUARE RESPONSE:  Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period and asks Square to produce documents potentially in the possession of third parties not within Square's control.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Any documents referring monitoring of Subject Account is reflected in the correspondence and documents bates stamped FTC-CID_LE_000002-FTC-CID_LE_000059.  The "Subject Account" identified in the "Specifications" section of the CID did not have sufficient chargebacks to trigger either ECP or VCMP monitoring.**

6.      All documents referring or relating to any occasions on which the Company or any third party (Such as banks, card networks, financial institutions, or any entity involved in payment processing) suspended or terminated the Subject Account.

**SQUARE RESPONSE: Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period and asks Square to produce documents potentially in the possession of third parties not within Square's control.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Information related to the suspension or termination of any subject accounts or payment processing services of any of the relevant subject accounts is reflected in the correspondence and documents bates stamped FTC-CID_LE_000002-**



**FTC-CID_LE_000059.**

7.      All documents that relate to or reference the Subject Account and were generated or obtained from either the MATCH or TMF database.

**SQUARE RESPONSE: Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Information related to the suspension or termination of any subject accounts or payment processing services of any of the relevant subject accounts is reflected in the correspondence and documents bates stamped, a MATCH didn't trigger the deactivation.**

8.      Documents sufficient to show all transactions processed through the Subject Account; including but not limited to date, consumer name, last four digits of credit card, type of credit card (e.g., Visa, MC, etc.), amount, and type of transaction (e.g., sale, chargeback, refund, etc.).

**SQUARE RESPONSE: Square objects to this Request to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Request the extent it seeks information that is protected by the attorney-client privilege or the work product doctrine.  Square further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Transaction details to the extent that it exists in Square's systems, can be found at: FTC-CID_LE_000001.**

III C.   **WRITTEN INTERROGATORIES**: For each Corporate Account, provide the following information:

Square provides the following responses to the interrogatories in the "Specifications" Section of the CID:



## GENERAL OBJECTIONS

Square incorporates the following general objections by this reference into each of the specific responses and objections to the interrogatories propounded in the CID:

1.      Square objects to each interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the bank examination privilege or any other rule of privilege or confidentiality provided by law.

2.      Square objects to each interrogatory to the extent it seeks information containing and/or reflecting trade secret, confidential information and/or other proprietary information of Square.

3.      To the extent any definition or instruction in the CID may be construed as requiring Square to characterize documents or their contents or to speculate as to what documents may or may not show, Square objects to such definitions or instructions as vague, ambiguous and calling for legal conclusions and speculation.

### Square's Amended Responses to the CID's Interrogatories

1.      Identify the merchant associated with the Subject Account.

**SQUARE RESPONSE: The merchant associated with the Subject Account is Maureen Prichard d/b/a Living Exceptionally, Inc.**

2.      The date the Subject Account was opened.

**SQUARE RESPONSE: The subject account was opened on 9/16/2011.**

3.      For any Subject Account that was closed, the date and reason the account was closed.

**SQUARE RESPONSE: The subject account was deactivated on 9/6/2016; Reason: Declines and Chargebacks.**

4.      The amount or percent of each transaction the Company holds in reserve, if any, and the current balance of any such reserve fund or account.



**SQUARE RESPONSE: The subject account has a balance of $0**

5.      Identify all banks or other financial institutions associated with the Subject Account, including such bank's or financial institution's Bank Identification Number ("BIN") and the time period of that bank's or financial institution's association with the Subject Account.

**SQUARE RESPONSE:  Square objects to this Interrogatory to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Interrogatory to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Square does not maintain account information in the manner requested, however the Card Brand and Card Number can be found in FTC-CID_LE_000001.**

6.      Identify all banks, financial institutions, payment processors, ISOs, or other third parties to or from which the Company transmitted, forwarded, or received funds relating to the Subject Account, and provide the bank routing and account numbers to or from which funds were transmitted, forwarded, or sent.

**SQUARE RESPONSE:  Square objects to this Interrogatory to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Interrogatory to the extent it seeks confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Square does not maintain account information in the manner requested, however all linked bank accounts along with account and routing number can be found in FTC-CID_LE_000001.**

7.      State whether the Subject Account was used to transmit payments other than credit or debit card transactions, including Automated Clearinghouse ("ACH") payments, Remotely Created Checks ("RCCs"), or Remotely Created Payment Orders ("RCPOs") and, if so, provide details and an explanation of the services the Company provided.

**SQUARE RESPONSE:  Square objects to this Interrogatory to the extent it is overly broad and unduly burdensome to the extent it is not cabined by the Applicable Time Period.  Square further objects to this Interrogatory to the extent it seeks**



**confidential, proprietary, and/or trade secret information.  Notwithstanding and subject to these objections, Square responds as follows:**

**Per Square's records, the ACH Credit/Debit information associated with the responsive accounts can be found in FTC-CID_LE_000001.**

**I verify under oath that the answers to these interrogatories and true to the best of my ability.**

**Sincerely,**


**/s/ Martin White**
_____

**Martin White**
**Counsel, Square Inc.**



**CONFIDENTIALITY REQUEST**

**The Company requests that this letter be protected from disclosure under the Freedom of Information Act ("FOIA") (5 U.S.C. § 552).  Among other reasons, the Company requests confidential treatment because the information contained herein constitutes confidential investigative information, as well as trade secrets and commercial or financial information that is privileged or confidential, disclosure of which would be detrimental to the Company.  The Company also requests that it receive notification and an opportunity to contest disclosure of this letter or any enclosed information if either becomes the subject of a FOIA request.  The address and email for any such notification are:**

**Attention: Legal Department/Martin White**
**Square, Inc.**
**1455 Market Street, Suite 600**
**San Francisco, CA 94103, USA**
**martinwhite@squareup.com**

 Square

October 19, 2017

**VIA FTP Transfer**

Laura Basford
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8528
Washington, DC 20580

**Re: File No. 9923259**

Dear Ms. Basford,

I am writing on behalf of Square Inc. in response to the FTC Civil Investigative Demand ("CID") dated March 31, 2017 in the above-referenced file.  This letter is an amendment to the response submitted on April 26, 2017 providing the interrogatories under oath.

Pursuant to your request and as discussed in our April 5, 2017, telephonic meet and confer, Square personnel conducted an extensive search of Square's systems to identify any Square accounts that match or appear to be related to the entities and individuals listed in Specification Section III A of the CID.

We were able to identify seven (7) accounts that correspond to or are associated with either the entities or individuals listed in the CID. Those accounts are: (1) Digital Altitude LLC, Square User Token 96YE3T02XH5M1, EIN: ████7054; (2) Saucey Sliderz, Square User Token 420PETNS4BRH7; (3) RISE Systems & Enterprise, Square User Token 5T92P97334JW8, EIN ███6655; (4) Aspire Processing LLC, Square User Token FBD5ZSZD399JT, EIN███6025; (5) Martin Merriment Companies Inc., Square User Token 9V0CB65ZB1TNB; (6) Relativity Marketing, LLC (Michael Force), Square User Token C7SZW0SCH820A and B02YZT7P4JK6F; and (7) Seven Courses Catering (Morgan Johnson), Square User Token 8B5ZDAW05SXDT.

Enclosed please find records bates stamped FTC-CID_000001-FTC-CID_000155.  Insofar as Square maintains the data requested, these documents reflect the responsive materials. "Dossier ReadMe" is included to assist you in reading the provided documents.

squareup.com

1455 Market Street, Suite 600, San Francisco, CA 94103



Also enclosed are the Form Certificate of Compliance and Certification of Records of Regularly Conducted Business Activities requested as part of the CID.

Square's responses are based upon information known to it as of April 26, 2017. Square reserves the right to correct, supplement, or clarify these responses based upon information that comes to its attention after the date of these responses.

Pursuant to agreed upon general modifications, wherein a document is responsive to an interrogatory, Square has produced a copy of that document in lieu of a written response. Square has included, where appropriate, a written response describing how particular documents are responsive to an interrogatory.

Square provides the following response to the document requests in Specifications Section III B of the CID:

**III B.   DOCUMENTARY MATERIALS**: Produce any and all documents relating to each Corporate Account, including but not limited to the following:

1.      All Documents relating to the underwriting file for each Corporate Account, including, but not limited to, any Documents received or reviewed by the Company in connection with the merchant's application for Payment Processing services such as merchant applications and supporting documentation, financial statements, contracts and agreements between the merchant and the Company or banks, due diligence materials provided to the Company by third parties (such as Dunn & Bradstreet reports, background inquiries, or Member Alert to Control High-Risk ("MATCH") and Terminated Merchant File ("TMF") inquiry results), past Chargeback rates, estimated future Chargeback rates, descriptions of goods or services marketed, sales or customer service scripts, and all materials provided by the merchant to the Company;

**SQUARE RESPONSE:  Square does not maintain underwriting and application materials in the manner requested, however the "subscriber information" as obtained during account creation is listed in the produced documents.  To the extent that it exists in Square's systems, the data and materials responsive to request (1) above are produced at FTC-CID_000001.**

2.      All correspondence relating to each Corporate Account, including, but not limited to, all correspondence between the Company and any banks, VISA, MasterCard, or any other entity involved in Payment Processing for any·Corporate Account;



**SQUARE RESPONSE:  If correspondence exists relating to each account, they can be found at: FTC-CID_000002, FTC-CID_000021, FTC-CID_000135, FTC-CID_000136 and FTC-CID_000152.**

3.      All Documents relating to complaints or inquiries referring or relating to the Corporate Account received by the Company from consumers, financial institutions, government agencies (law enforcement agencies, regulatory agencies, or other), Better Business Bureaus, or other third parties including, but not limited to, (a) written complaints, (b) notes of telephone conversations between the Company and the consumer or other third party, and (c) any reply or response;

**SQUARE RESPONSE:  Square is not aware of any complaints or inquiries as described above relating to the corporate or individual accounts at issue in the CID.**

4.      All Documents relating to any occasions in which the Company suspended or terminated any of the Corporate Account(s), or suspended or terminated any Payment Processing service(s) to any of the Corporate Accounts.

**SQUARE RESPONSE: Information related to the suspension or termination of any corporate accounts or payment processing services of any of the relevant corporate accounts is reflected in the correspondence and documents bates stamped FTC-CID_000002, FTC-CID_000021, FTC-CID_000135, FTC-CID_000136 and FTC-CID_000152.**

Square provides the following responses to the interrogatory requests in Specification Section III C of the CID:

III C.   **WRITTEN INTERROGATORIES**: For each Corporate Account, provide the following information:

1.      The date the account was opened and, for any account that was closed, the date and reason the account was closed;

**SQUARE RESPONSE:**
- **Digital Altitude LLC, Square User Token 96YE3T02XH5M1 - Opened: 12/18/2015; Closed:7/25/2016; Reason: Credit risk.**
- **Saucey Sliderz, Square User Token 420PETNS4BRH7 - Opened: 2/2/2015; Closed: 10/19/2016; Reason: Adverse declines and chargebacks.**
- **RISE Systems & Enterprise, Square User Token 5T92P97334JW8, EIN ████6655 - Opened: 8/2/2016; Closed: 9/1/2016; Reason: Credit risk and**



linked to frozen user.

- **Aspire Processing LLC, Square User Token FBD5ZSZD399JT, EIN ███6025 - Opened: 9/6/2016; Closed: 9/13/2016; Reason: linked to frozen user.**
- **Martin Merriment Companies Inc., Square User Token 9V0CB65ZB1TNB - Opened: 1/17/2017; Closed: N/A; Still active, however no payments have been processed.**
- **Relativity Marketing, LLC (Michael Force), Square User Token C7SZW0SCH820A and B02YZT7P4JK6F - Opened: 11/29/2011 and 5/2/2012; Closed: N/A; Still active, however no payments have been processed.**
- **Seven Courses Catering (Morgan Johnson), Square User Token 8B5ZDAW05SXDT - Opened: 11/29/2012; Closed: N/A; Still active, however no payments have been processed.**

2.     The amount or percent of each transaction held by the Company in reserve, if any, and the current balance of any such reserve fund or account;

**SQUARE RESPONSE:**
**As of April 26, 2017:**

- **Digital Altitude LLC, Square User Token 96YE3T02XH5M1- $0.**
- **Saucey Sliderz, Square User Token 420PETNS4BRH7 - $0.**
- **RISE Systems & Enterprise, Square User Token 5T92P97334JW8, EIN ███6655 - $0**
- **Aspire Processing LLC, Square User Token FBD5ZSZD399JT, EIN ███6025 - $0.**
- **Martin Merriment Companies Inc., Square User Token 9V0CB65ZB1TNB - $0.**
- **Relativity Marketing, LLC (Michael Force), Square User Token C7SZW0SCH820A and B02YZT7P4JK6F - $0.**
- **Seven Courses Catering (Morgan Johnson), Square User Token 8B5ZDAW05SXDT - $0.**

3.     For each month, the total number and dollar amount of all transactions the Company processed through the account, including any transactions indirectly processed through another third party service provider;

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested.  The raw data comprised of individual transactions can be found in FTC-CID_000001.**



4.      For each month, the total number and dollar amount of Refunds, and the percentage of Refunds (compared against total transactions);

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested.  The raw data comprised of individual transactions, including refunds, can be found in FTC-CID_000001.**

5.      For each month, the total number and dollar amount of Chargebacks, and percentage of Chargebacks (compared against total transactions);

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested. The raw data comprised of individual transactions, including chargebacks, can be found in FTC-CID_000001.**

6.      For each month, the total number of Chargebacks organized by Chargeback Reason (include the Chargeback Reason Code);

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested. The raw data comprised of individual transactions, including chargebacks, can be found in FTC-CID_000001.**

7.      For each month, the total number and dollar amount of Declined Transactions, and the percentage of Declined Transactions (compared against total attempted transactions);

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested. The raw data comprised of individual transactions, including declines, can be found in FTC-CID_000001.**

8.      For each month, the total number of Declined Transactions organized by the Declined Transaction Reason (include the Declined Transaction Reason Code);

**SQUARE RESPONSE:**
**Square does not maintain and routinely report its data in the manner requested. The raw data comprised of individual transactions, including declines, can be found in FTC-CID_000001.**

9.      The bank routing and account numbers, as well as the name, address, telephone

 Square

number, and contact person at each financial institution, ISO, or other third party to or from which the Company transmitted, forwarded, or received funds or information about the Corporate Account;

**SQUARE RESPONSE:**
**Per Square's records, the bank routing and account numbers associated with the responsive accounts can be found in FTC-CID_000001.**

10.     Whether the Company has provided Payment Processing, authorization, clearing, settlement, or transmission of payments other than credit or debit card transactions, including but not limited to Automated Clearinghouse ("ACH") payments, Remotely Created Checks ("RCCs"), or Remotely Created Payment Orders ("RCPOs").

**SQUARE RESPONSE:**
**Per Square's records, the ACH Credit/Debit information associated with the responsive accounts can be found in FTC-CID_000001.**

I verify under oath that the answers to these interrogatories are true according to the best of my knowledge, information, and belief.


/s/ Martin White
**Martin White**
**Counsel, Square Inc.**