## *Statement of Capital (Share Capital)*

| | | | |
|---|---|---|---|
| *Class of Shares:* | **ORDINARY** | *Number allotted* | **1** |
| *Currency:* | **GBP** | *Aggregate nominal value:* | **1** |
| *Prescribed particulars* | | | |

**ORDINARY SHARES HAVE FULL RIGHTS IN THE COMPANY WITH RESPECT TO VOTING, DIVIDENDS AND DISTRIBUTIONS.**

### Statement of Capital (Totals)

| | | | |
|---|---|---|---|
| *Currency:* | **GBP** | *Total number of shares:* | **1** |
| | | *Total aggregate nominal value:* | **1** |
| | | *Total aggregate unpaid:* | **0** |

**Electronically filed document for Company Number:**          **10626018**

Attachment VV

EX 41
2688

## *Initial Shareholdings*

| | | | |
|---|---|---|---|
| *Name:* | **MOHAMMED ABDUL ALIM** | | |
| *Address* | **20-22 WENLOCK ROAD** | *Class of Shares:* | **ORDINARY** |
| | **LONDON** | | |
| | **ENGLAND** | *Number of shares:* | **1** |
| | **N1 7GU** | *Currency:* | **GBP** |
| | | *Nominal value of each share:* | **1** |
| | | *Amount unpaid:* | **0** |
| | | *Amount paid:* | **1** |

**Electronically filed document for Company Number:**          **10626018**

## *Persons with Significant Control (PSC)*

**Statement of initial significant control**

**On incorporation, there will be someone who will count as a Person with Significant Control (either a registerable person or relevant legal entity (RLE)) in relation to the company**

**Electronically filed document for Company Number:**      **10626018**

## *Individual Person with Significant Control details*

*Names:*  **MR MOHAMMED ABDUL ALIM**

*Country/State Usually Resident:*  **UNITED KINGDOM**

*Date of Birth:* ▮▮▮▮  *Nationality:*  **BRITISH**

*Service Address:*  **20-22 WENLOCK ROAD**
**LONDON**
**ENGLAND**
**N1 7GU**

*The subscribers confirm that each person named as an individual PSC in this application knows that their particulars are being supplied as part of this application.*

---

**Electronically filed document for Company Number:**    **10626018**

Attachment VV

EX 41
2691

*Nature of control*   The person holds, directly or indirectly, 75% or more of the shares in the company.

Attachment VV

EX 41
2692

## Statement of Compliance

*I confirm the requirements of the Companies Act 2006 as to registration have been complied with.*

*memorandum delivered by an agent for the subscriber(s):*     **YES**

*Agent's Name:*        **COMPANIES MADE SIMPLE LTD**

*Agent's Address:*      **20-22 WENLOCK ROAD**
**LONDON**
**ENGLAND**
**N1 7GU**

## Authorisation

*Authoriser Designation:*  **agent**                    *Authenticated*  **YES**

*Agent's Name:*        **COMPANIES MADE SIMPLE LTD**

*Agent's Address:*      **20-22 WENLOCK ROAD**
**LONDON**
**ENGLAND**
**N1 7GU**

**Electronically filed document for Company Number:**        **10626018**

Attachment VV                                    EX 41
2693

# Companies Act 2006

## SCHEDULE 1
### COMPANY HAVING A SHARE CAPITAL
### Memorandum of Association of
### ASPIRE VENTURES LTD

Each subscriber to this memorandum of association wishes to form a company under the Companies Act 2006 and agrees to become a member of the company and to take at least one share each.

Subscriber:

Mohammed Abdul Alim

Authentication: Authenticated Electronically

Dated: 16 Feb 2017



**Companies House**

# AD01 (ef)

## Change of Registered Office Address

Company Name: **ASPIRE VENTURES LTD**
Company Number: **10626018**

Received for filing in Electronic Format on the:**02/08/2017**

X6BY9UHN

## New Address Details

New Address:
**Address 2**
**LONDON**
**UNITED KINGDOM**

Please Note:
The change in the Registered Office does not take effect until the Registrar has registered this form. For 14 days, beginning with the date that a change of Registered Office is registered, a person may validly serve any documentation on the company at its previous Registered Office.

## Authorisation

Authenticated

This form was authorised by one of the following:

Director, Secretary, Person Authorised, Liquidator, Administrator, Administrative Receiver, Receiver, Receiver Manager, Charity Commission Receiver and Manager, CIC Manager, Judicial Factor.

---

Attachment VV

EX 41
2695

# FILE COPY



# CERTIFICATE OF INCORPORATION
# OF A
# PRIVATE LIMITED COMPANY

Company Number **10345609**

The Registrar of Companies for England and Wales, hereby certifies that

**DIGITAL ALTITUDE LIMITED**

is this day incorporated under the Companies Act 2006 as a private company, that the company is limited by shares, and the situation of its registered office is in England and Wales

Given at Companies House, Cardiff, on **25th August 2016**



\* N10345609F \*



Companies House



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

The above information was communicated by electronic means and authenticated
by the Registrar of Companies under section 1115 of the Companies Act 2006

Attachment WW

EX 41
2696



# Companies House

# IN01 (ef)

## Application to register a company



X5DZMYQA

*Received for filing in Electronic Format on the:* **23/08/2016**

| | |
|---|---|
| *Company Name in full:* | **DIGITAL ALTITUDE LIMITED** |
| *Company Type:* | **Private company limited by shares** |
| *Situation of Registered Office:* | **England and Wales** |
| *Proposed Registered Office Address:* | **THIRD FLOOR 207 REGENT STREET LONDON UNITED KINGDOM W1B 3HH** |
| *Sic Codes:* | **85600** |

*I wish to partially adopt the following model articles:>*　　　　**Private (Ltd by Shares)**

---

**Electronically filed document for Company Number:**　　　**10345609**

## *Proposed Officers*

*Company Director*     *1*

| | |
|---|---|
| *Type:* | **Person** |
| *Full Forename(s):* | **MRS MARY** |
| *Surname:* | **DEE** |
| *Service Address:* | **6340 LAKE WORTH BLVD**<br>**NO 103**<br>**FORT WORTH**<br>**TARRANT**<br>**USA 76135** |
| *Country/State Usually Resident:* | **USA** |

*Date of Birth:* ▮▮▮▮▮     *Nationality:*   **AMERICAN**

*Occupation:*   **ENTREPRENEUR**

*The subscribers confirm that the person named has consented to act as a director.*

Attachment WW

EX 41
2698

## *Statement of Capital (Share Capital)*

| | | | | |
|---|---|---|---|---|
| *Class of Shares:* | **ORDINARY** | | *Number allotted* | **1** |
| | **£1** | | *Aggregate nominal value:* | **1** |
| *Currency:* | **GBP** | | | |
| *Prescribed particulars* | | | | |

**1 SHARE = 1 VOTE, EACH HAVING RIGHTS TO DIVIDENDS**

### Statement of Capital (Totals)

| | | | | |
|---|---|---|---|---|
| *Currency:* | **GBP** | | *Total number of shares:* | **1** |
| | | | *Total aggregate nominal value:* | **1** |
| | | | *Total aggregate unpaid:* | **0** |

**Electronically filed document for Company Number:**          **10345609**

## *Initial Shareholdings*

| | | | |
|---|---|---|---|
| *Name:* | **MICHAEL FORCE** | | |
| *Address* | **THIRD FLOOR 207 REGENT STREET** | *Class of Shares:* | **ORDINARY £1** |
| | **LONDON** | *Number of shares:* | **1** |
| | **UNITED KINGDOM** | *Currency:* | **GBP** |
| | **W1B 3HH** | *Nominal value of each share:* | **1** |
| | | *Amount unpaid:* | **0** |
| | | *Amount paid:* | **1** |

**Electronically filed document for Company Number:**          **10345609**

## *Persons with Significant Control (PSC)*

**Statement of initial significant control**

**On incorporation, there will be someone who will count as a Person with Significant Control (either a registerable person or relevant legal entity (RLE)) in relation to the company**

**Electronically filed document for Company Number:**          10345609

## *Individual Person with Significant Control details*

| | |
|---|---|
| *Names:* | **MRS MARY DEE** |
| *Country/State Usually Resident:* | **USA** |
| *Date of Birth:* | ▮▮▮▮ *Nationality:* **AMERICAN** |
| *Service Address:* | **6340 LAKE WORTH BLVD**<br>**NO 103**<br>**FORT WORTH**<br>**TARRANT**<br>**USA**<br>**76135** |

*The subscribers confirm that each person named as an individual PSC in this application knows that their particulars are being supplied as part of this application.*

---

**Electronically filed document for Company Number:**          **10345609**

*Nature of control*      The person has the right, directly or indirectly, to appoint or remove a majority of the board of directors of the company.

*Nature of control*      The person has the right to exercise, or actually exercises, significant influence or control over the company.

---

**Electronically filed document for Company Number:**        **10345609**

## *Statement of Compliance*

*I confirm the requirements of the Companies Act 2006 as to registration have been complied with.*

*Name:*      **MICHAEL FORCE**
*Authenticated*      **YES**

## **Authorisation**

*Authoriser Designation:*    **subscriber**            *Authenticated*    **YES**

**Electronically filed document for Company Number:**      **10345609**

**THE COMPANIES ACT 2006**

**PRIVATE COMPANY HAVING A SHARE CAPITAL**

**MEMORANDUM OF ASSOCIATION**

of

**Digital Altitude Limited**

Each subscriber to this memorandum of association wishes to form a company under the Companies Act 2006 and agrees to become a member of the company and to take at least one share.

Michael Force

Dated this 23rd day of August 2016

Page 1

EX 41
2705

THE COMPANIES ACT 2006

PRIVATE COMPANY HAVING A SHARE CAPITAL

ARTICLES OF ASSOCIATION

of

Digital Altitude Limited

## 1   Defined terms

1.1   In these articles, unless the context requires otherwise:

**Allocation Notice** has the meaning given to that term in Article 37.12;

**appointor** has the meaning given to that term in Article 16.1;

**articles** means the company's articles of association for the time being in force;

**Articles** means the articles of association set out in this document which, together with the Model Articles (as modified or excluded by this document) forming part of the articles, and **Article** shall be construed accordingly;

**Buyer** has the meaning given to that term in Article 37.12;

**call** has the meaning given to that term in Article 25.1;

**call notice** has the meaning given to that term in Article 25.1;

**call payment date** has the meaning given to that term in Article 28.2.1;

**company's lien** has the meaning given to that term in Article 23;

**Clear Days** means (in relation to the period of a notice) that period excluding the day when the notice is given or deemed to be given and the day for which it is given or on which it is to take effect;

**Conflict** has the meaning given to that term in Article 11.2;

**conflicted director** means a director who has, or could have, a Conflict in a situation involving the company and consequently whose vote is not to be counted in any vote to authorise such Conflict and who is not to be counted as participating in the quorum for the meeting (or part of the meeting) at which such matter is to be voted upon;

**corporate representative** has the meaning given to that term in Article 54;

**Excess Securities** has the meaning given to that term in Article 21.3.2;

**Excess Shares** has the meaning given to that term in Article 37.11.1;

**holder** in relation to shares means the person whose name is entered in the register of members as the holder of the shares or, in the case of a share in respect of which a share warrant has been issued (and not cancelled), the person in possession of that warrant;

**lien enforcement notice** has the meaning given to that term in Article 24;

**Market Value** has the meaning given to that term in Article 37.4.1;

**Model Articles** means the model articles for private companies limited by shares contained in Schedule 1 of the Companies (Model Articles) Regulations 2008 (SI 2009/3229) as amended prior to the date of adoption of these articles;

**non-conflicted director** means any director who is not a conflicted director;

**Offer Notice** has the meaning given to that term in Article 37.10;

**partly-paid** in relation to a share means that part of that share's nominal value or any premium at which it was issued has not been paid to the company;

**Proposed Sale Price** has the meaning given to that term in Article 37.2.3;

**proxy notification address** has the meaning given to that term in Article 53.1;

**relevant officer** has the meaning given to that term in Articles 58.3.2 or 59.2.1, as the case may be;

**relevant loss** has the meaning given to that term in Article 59.2.2;

**relevant rate** has the meaning given to that term in Article 28.2.2;

**Sale Price** has the meaning given to that term in Article 37.4;

**Sale Shares** has the meaning given to that term in Article 37.2.1 and **Sale Share** shall be construed accordingly;

**Seller** has the meaning given to that term in Article 37.1;

**Total Transfer Condition** has the meaning given to that term in Article 37.2.5;

**transfer** or **transferring** has the meaning given to those terms respectively in Article 36.1;

**Transfer Notice** has the meaning given to that term in Article 37.1;

**United Kingdom** means Great Britain and Northern Ireland;

1.1   Save as otherwise specifically provided in these Articles, words and expressions which have particular meanings in the Model Articles shall have the same meanings in these Articles, subject to which and unless the context

Page 2

EX 41
2706

otherwise requires, words and expressions which have particular meanings in the Companies Act 2006 as in force on the date when these Articles become binding on the company shall have the same meanings in these Articles.

1.2 Headings in these Articles are used for convenience only and shall not affect the construction or interpretation of these Articles.

1.3 Unless expressly provided otherwise, a reference to a statute, statutory provision or subordinate legislation is a reference to it as it is in force from time to time and shall include any orders, regulations or subordinate legislation from time to time made under it and any amendment or re-enactment of it or any such orders, regulations or subordinate legislation for the time being in force.

1.4 Any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms.

1.5 The Model Articles shall apply to the company, except in so far as they are modified or excluded by these Articles.

1.6 Articles 7, 8, 11(2) and (3), 13, 14(1) to (4) inclusive, 17(2), 19(5), 21, 26(5), 44(4), 45(1), 46(3), 52 and 53 of the Model Articles shall not apply to the company.

## 2 Directors' general authority

Article 3 of the Model Articles shall be amended by the insertion of the words "and to the applicable provisions for the time being of the Companies Acts", after the phrase "subject to the articles".

## 3 Change of Company name

Without prejudice to the generality of Article 2, the directors may resolve in accordance with Article 5 to change the Company's name.

## 4 Committees

Where a provision of the articles refers to the exercise of a power, authority or discretion by the directors and that power, authority or discretion has been delegated by the directors to a committee, the provision shall be construed as permitting the exercise of power, authority or discretion by the committee.

## 5 Directors to take decisions collectively

5.1 The general rule about decision-making by directors is that any decision of the directors must be taken as a majority decision at a meeting or as a directors' written resolution in accordance with Article 8 (Directors' written resolutions) or otherwise as a unanimous decision taken in accordance with Article 7 (Unanimous decisions).

5.2 If:

5.2.1 the company only has one director for the time being, and

5.2.1 no provision of the articles requires it to have more than one director,

the general rule does not apply, and the director may (for so long as he remains the sole director) take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

5.3 Subject to the articles, each director participating in a directors' meeting has one vote.

## 6 Directors' written resolutions

6.1 Any director may propose a directors' written resolution by giving notice in writing of the proposed resolution to each of the other directors (including alternate directors).

6.2 If the company has appointed a company secretary, the company secretary must propose a directors' written resolution if a director so requests by giving notice in writing to each of the other directors (including alternate directors).

6.3 Notice of a proposed directors' written resolution must indicate:

6.3.1 the proposed resolution; and

6.3.2 the time by which it is proposed that the directors should adopt it.

6.4 A proposed directors' written resolution is adopted when a majority of the non-conflicted directors (or their alternates) have signed one or more copies of it, provided that those directors (or their alternates) would have formed a quorum at a directors' meeting were the resolution to have been proposed at such meeting.

6.5 Once a directors' written resolution has been adopted, it must be treated as if it had been a decision taken at a directors' meeting in accordance with the articles.

## 7 Unanimous decisions

7.1 A decision of the directors is taken in accordance with this Article 7 when all non-conflicted directors indicate to each other by any means that they share a common view on a matter.

7.2 A decision may not be taken in accordance with this Article 6 if the non-conflicted directors would not have formed a quorum at a directors' meeting had the matter been proposed as a resolution at such a meeting.

7.3 Once a directors' unanimous decision is taken in accordance with this this Article 7 it must be treated as if it had been a decision taken at a directors' meeting in accordance with the Articles.

## 8 Calling a directors' meeting

8.1 Article 9 of the Model Articles shall be amended by:

8.1.1 inserting the words "each of" before the words "the directors";

Page 3

    8.1.2    by inserting the phrase "(including alternate directors) ,whether or not he is absent from the UK," after the words "the directors";

    8.1.3    by inserting the words "subject to article 9.4" at the beginning of article 9(3) of the Model Articles; and

    8.1.4    by inserting the words "prior to or up to and including" before the words "not more than seven days" in article 9(4) of the Model Articles.

## 9   Chairman's casting vote at directors' meetings

9.1    Article 13(1) of the Model Articles shall be amended by the insertion of the words "at a meeting of directors" after the word "proposal".

9.2    Article 13(1) of the Model Articles (as amended by Article 8.1) does not apply in respect of a particular meeting (or part of a meeting) if, in accordance with the articles, the chairman or other director chairing the meeting is a conflicted director for the purposes of that meeting (or that part of that meeting at which the proposal is voted upon).

## 10   Quorum for directors' meetings

10.1    Subject to Article 10.2, the quorum for the transaction of business at a meeting of directors may be fixed from time to time by a decision of the directors but it must never be less than two directors, and unless otherwise fixed it is two. A person who holds office only as an alternate director shall, if his appointor is not present, be counted in the quorum. If and so long as there is a sole director, he may exercise all the powers and authorities vested in the directors by these articles and accordingly the quorum for the transaction of business in these circumstances shall be one.

10.2    For the purposes of any meeting (or part of a meeting) held pursuant to Article 11 (Directors' conflicts of interests) to authorise a director's Conflict, if there is only one non-conflicted director in office in addition to the conflicted director(s), the quorum for such meeting (or part of a meeting) shall be one non-conflicted director.

## 11   Directors' conflicts of interests

11.1    For the purposes of this Article 11, a **conflict of interest** includes a conflict of interest and duty and a conflict of duties, and interest includes both direct and indirect interests.

11.2    The directors may, in accordance with the requirements set out in this Article 11, authorise any matter proposed to them by any director which would, if not authorised, involve a director breaching his duty under section 175 of the Companies Act 2006 to avoid conflicts of interest ( such matter being hereinafter referred to as a **Conflict**).

11.3    A director seeking authorisation in respect of a Conflict shall declare to the other directors the nature and extent of his interest in a Conflict as soon as is reasonably practicable. The director shall provide the other directors with such details of the relevant matter as are necessary for the other directors to decide how to address the Conflict, together with such other information as may be requested by the other directors.

11.4    Any authorisation under this Article 11 will be effective only if:

    11.4.1    the matter in question shall have been proposed by any director for consideration at a meeting of directors in the same way that any other matter may be proposed to the directors under the provisions of these articles or in such other manner as the directors may determine;

    11.4.2    any requirement as to the quorum at the meeting of the directors at which the matter is considered is met without counting the director in question and any other conflicted director(s); and

    11.4.3    the matter was agreed to without the director and any other conflicted director(s) voting or would have been agreed to if their votes had not been counted.

11.5    Any authorisation of a Conflict under this Article 11 may (whether at the time of giving the authorisation or subsequently):

    11.5.1    extend to any actual or potential conflict of interest which may reasonably be expected to arise out of the Conflict so authorised;

    11.5.2    be subject to such terms and for such duration, or impose such limits or conditions as the directors may determine; or

    11.5.3    be terminated or varied by the directors at any time.

    This will not affect anything done by the director prior to such termination or variation in accordance with the terms of the authorisation.

11.6    In authorising a Conflict the directors may decide (whether at the time of giving the authorisation or subsequently) that if a director has obtained any information through his involvement in the Conflict otherwise than as a director of the company and in respect of which he owes a duty of confidentiality to another person the director is under no obligation to:

    11.6.1    disclose such information to the directors or to any director or other officer or employee of the company; or

    11.6.2    use or apply any such information in performing his duties as a director,

    where to do so would amount to a breach of that confidence.

11.7    Where the directors authorise a Conflict they may provide, without limitation (whether at the time of giving the authorisation or subsequently) that the director:

    11.7.1    is excluded from discussions (whether at meetings of directors or otherwise) related to the Conflict;

    11.7.2    is not given any documents or other information relating to the Conflict;

    11.7.3    may or may not vote (or may or may not be counted in the quorum) at any future meeting of directors in relation to any resolution relating to the Conflict.

11.8    Where the directors authorise a Conflict:

11.8.1   the director will be obliged to conduct himself in accordance with any terms, limits and/or conditions imposed by the directors in relation to the Conflict;

11.8.2   the director will not infringe any duty he owes to the company by virtue of sections 171 to 177 of the Companies Act 2006 provided he acts in accordance with such terms, limits and/or conditions (if any) as the directors impose in respect of its authorisation.

11.9   A director is not required, by reason of being a director (or because of the fiduciary relationship established by reason of being a director), to account to the company for any remuneration, profit or other benefit which he receives as director or other officer or employee of the Company's subsidiaries or of any other body corporate in which the Company is interested or which he derives from or in connection with a relationship involving a Conflict which has been authorised by the directors or by the company in general meeting (subject in each case to any terms, limits or conditions attaching to that authorisation) and no contract shall be liable to be avoided on such grounds nor shall the receipt of any such remuneration or other benefit constitute a breach of his duty under section 176 of the Companies Act 2006.

11.10   Subject to the applicable provisions for the time being of the Companies Acts and to any terms, limits and/or conditions imposed by the directors in accordance with Article 11.5.2, and provided that he has disclosed to the directors the nature and extent of any interest of his in accordance with the Companies Acts, a director notwithstanding his office:

11.10.1   may be a party to, or otherwise interested in, any contract, transaction or arrangement with the company or in which the company is otherwise interested;

11.10.2   shall be counted as participating for voting and quorum purposes in any decision in connection with any proposed or existing transaction or arrangement with the company, in which he is in any way directly or indirectly interested;

11.10.3   may act by himself or his firm in a professional capacity for the company (otherwise than as auditor) and he or his firm shall be entitled to remuneration for professional services as if he were not a director;

11.10.4   may be a director or other officer of, or employed by, or a party to any contract, transaction or arrangement with, or otherwise interested in, any body corporate promoted by the company or in which the company is otherwise interested; and

11.10.5   shall not, by reason of his office, be accountable to the company for any benefit which he (or anyone connected with him (as defined in section 252 of the Companies Act 2006) derives from any such office or employment or from any such contract, transaction or arrangement or from any interest in any such body corporate and no such contract, transaction or arrangement shall be liable to be avoided on the ground of any such interest or benefit, nor shall the receipt of any such remuneration or benefit constitute a breach of his duty under section 176 of the Companies Act 2006.

## 12   Records of decisions to be kept

Where decisions of the directors are taken by electronic means, such decisions shall be recorded by the directors in permanent form, so that they may be read with the naked eye.

## 13   Number of directors

Unless otherwise determined by ordinary resolution, the number of directors (other than alternate directors) shall not be subject to any maximum but shall not be less than one.

## 14   Methods of appointing directors

14.1   In any case where, as a result of death or bankruptcy, the company has no shareholders and no directors, the transmittee(s) of the last shareholder to have died or to have a bankruptcy order made against him (as the case may be) shall have the right, by notice in writing, to appoint a person (including a transmittee who is a natural person), who is willing to act and is permitted to do so, to be a director.

14.2   For the purposes of Article 14.1, where two or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

## 15   Directors' expenses

Article 20 of the Model Articles shall be amended by the insertion of the words "(including alternate directors) and the secretary (if any)" before the words "properly incur".

## 16   Appointment and removal of alternate directors

16.1   Any director (**appointor**) may appoint as an alternate any other director, or any other person approved by resolution of the directors, to:

16.1.1   exercise that director's powers; and

16.1.2   carry out that director's responsibilities,

16.1.3   in relation to the taking of decisions by the directors in the absence of the alternate's appointor

16.2   Any appointment or removal of an alternate must be effected by notice in writing to the company signed by the appointor, or in any other manner approved by the directors.

16.3   The notice must:

16.3.1   identify the proposed alternate; and

16.3.2   in the case of a notice of appointment, contain a statement signed by the proposed alternate that the proposed alternate is willing to act as the alternate of the director giving the notice.

## 17   Rights and responsibilities of alternate directors

17.1   An alternate director may act as alternate director to more than one director and has the same rights in relation to any decision of the directors as the alternate's appointor.

17.2   Except as the articles specify otherwise, alternate directors:

    17.2.1   are deemed for all purposes to be directors;

    17.2.2   are liable for their own acts and omissions;

    17.2.3   are subject to the same restrictions as their appointors (including those set out in sections 172 to 177 CA 2006 inclusive and Article 11); and

    17.2.4   are not deemed to be agents of or for their appointors,

  and , in particular (without limitation), each alternate director shall be entitled to receive notice of all meetings of directors and of all meetings of committees of directors of which his appointor is a shareholder.

17.3   A person who is an alternate director but not a director:

    17.3.1   may be counted as participating for the purposes of determining whether a quorum is present (but only if that person's appointor is not participating and provided that no alternate may be counted as more than one director for these purposes);

    17.3.2   may participate in a unanimous decision of the directors (but only if his appointor does not participate); and

    17.3.3   may sign a written resolution (but only if it is not signed or to be signed by that person's appointor).

17.4   A director who is also an alternate director is entitled, in the absence of any of his appointors, to a separate vote on behalf of that appointor, in addition to his own vote on any decision of the directors but he shall count as only one for the purpose of determining whether a quorum is present.

17.5   An alternate director is not entitled to receive any remuneration from the company for serving as an alternate director except such part of the alternate's appointor's remuneration as the appointor may direct by notice in writing made to the company.

## 18   Termination of alternate directorship

An alternate director's appointment as an alternate for any appointor terminates:

18.1   when that appointor revokes the appointment by notice to the company in writing specifying when it is to terminate;

18.2   when notification is received by the Company from the alternate that the alternate is resigning as alternate for that appointor and such resignation has taken effect in accordance with its terms;

18.3   on the occurrence, in relation to the alternate, of any event which, if it occurred in relation to that appointor, would result in the termination of that appointor's appointment as a director;

18.4   on the death of that appointor; or

18.5   when the alternate's appointor's appointment as a director terminates.

## 19   Appointment and removal of secretary

The directors may appoint any person who is willing to act as the secretary for such term, at such remuneration, and upon such conditions as they may think fit and from time to time remove such person and, if the directors so decide, appoint a replacement, in each case by a decision of the directors.

## 20   Further issues of shares: authority

20.1   The following paragraphs of this Article 20 shall not apply to a private company with only one class of shares.

20.2   Subject to Article 20.1 and save to the extent authorised by these articles, or authorised from time to time by an ordinary resolution of the shareholders, the directors shall not exercise any power to allot shares or to grant rights to subscribe for, or to convert any security into, any shares in the company.

20.3   Subject to the remaining provisions of this Article 20 and to Article 21 (Further issues of shares: pre-emption rights) and to any directions which may be given by the company in general meeting, the directors are generally and unconditionally authorised, for the purpose of section 551 of the Companies Act 2006 to exercise any power of the company to:

    20.3.1   offer or allot;

    20.3.2   grant rights to subscribe for or to convert any security into;

    20.3.3   otherwise create, deal in, or dispose of,

  any shares in the company to any person, at any time and subject to any terms and conditions as the directors think proper.

20.4   The authority referred to in Article 20.3:

    20.4.1   shall be limited to a maximum nominal amount of £1,000[1];

    20.4.2   shall only apply insofar as the company has not renewed, waived or revoked it by ordinary resolution; and

    20.4.3   may only be exercised for a period of five years commencing on the date on which the company is incorporated or these articles are adopted whichever is the later, save that the directors may make an offer or agreement which would, or might, require shares to be allotted after the expiry of such authority (and the directors may allot shares in pursuance of an offer or agreement as if such authority had not expired).

---

[1]  If you have more than one class of shares and particularly where they have different nominal values, you may wish to break the maximum amount down and allocate a particular amount to each class of shares.

21   **Further issues of shares: pre-emption rights**

21.1   In accordance with section 567(1) of the Companies Act 2006, sections 561 and 562 of the Companies Act 2006 shall not apply to an allotment of equity securities (as defined in section 560(1) of the Companies Act 2006) made by the company.

21.2   Unless otherwise agreed by special resolution, if the company proposes to allot any equity securities, those equity securities shall not be allotted to any person unless the company has first offered them to all shareholders on the date of the offer on the same terms, and at the same price, as those equity securities are being offered to such other person on a pari passu basis and pro rata to the nominal value of shares held by those shareholders (as nearly as possible without involving fractions).

21.3   The offer:

21.3.1   shall be in writing, shall be open for acceptance for  a period of fifteen working days from the date of the offer and shall give details of the number and subscription price of the relevant equity securities; and

21.3.2   may stipulate that any shareholder who wishes to subscribe for a number of equity securities in excess of the proportion to which he is entitled shall, in his acceptance, state the number of excess equity securities (**Excess Securities**) for which he wishes to subscribe.

21.4   Any equity securities not accepted by shareholders pursuant to the offer made to them in accordance with Articles 21.1 and 21.2 shall be used for satisfying any requests for Excess Securities made pursuant to Article 21.3.2.  If there are insufficient Excess Securities to satisfy such requests, the Excess Securities shall be allotted to the applicants as nearly as practicable in the proportion that the number of Excess Securities each shareholder indicated he would accept bears to the total number of Excess Securities applied for (as nearly as possible without involving fractions or increasing the number of Excess Securities allotted to any shareholder beyond that applied for by him).  After that allotment, any Excess Securities remaining shall be offered to any other person as the directors may determine, at the same price and on the same terms as the offer to the shareholders.

22   **Variation of class rights**

22.1   Whenever the capital of the company is divided into different classes of shares, the special rights attached to any class may only be varied or abrogated, either whilst the company is a going concern or during or in contemplation of a winding up, with the consent of the holders of the issued shares of that class given in accordance with Article 22.2.

22.2   The consent of the holders of a class of shares may be given by:

22.2.1   a special resolution passed at a separate general meeting of the holders of the issued shares of that class; or

22.2.2   a written resolution in any form signed by or on behalf of the holders of three-quarters in nominal value of the issued shares of that class,

but not otherwise.  To every such meeting, all the provisions of these articles and the Companies Act 2006 relating to general meetings of the company shall apply (with such amendments as may be necessary to give such provisions efficacy) but so that the necessary quorum shall be two holders of shares of the relevant class present in person or by proxy and holding or representing not less than one third in nominal value of the issued shares of the relevant class; that every holder of shares of the class shall be entitled on a poll to one vote for every such share held by him; and that any holder of shares of the class, present in person or by proxy or (being a corporation) by a duly authorised representative, may demand a poll.  If at any adjourned meeting of such holders such a quorum as aforesaid is not present, not less than one holder who is present in person or by proxy or (being a corporation) by a duly authorised representative shall be a quorum.

23   **Company's lien over shares**

The company has a lien (**company's lien**) over every share, whether or not fully paid, which is registered in the name of any person indebted or under any liability to the company, whether he is the sole registered holder of the share or one of several joint holders, for all monies payable by him (either alone or jointly with any other person) to the company, whether payable immediately or at some time in the future and whether or not a call notice has been sent in respect of it.

23.1   The company's lien over a share:

23.1.1   takes priority over any third party's interest in that share, and

23.1.2   extends to any dividend or other money payable by the company in respect of that share and (if the lien is enforced and the share is sold by the company) the proceeds of sale of that share.

23.2   The directors may at any time decide that a share which is or would otherwise be subject to the company's lien shall not be subject to it, either wholly or in part.

24   **Enforcement of the company's lien**

24.1   Subject to the provisions of this Article 24, if:

24.1.1   a lien enforcement notice has been given in respect of a share, and

24.1.2   the person to whom the notice was given has failed to comply with it,

the company may sell that share in accordance with Article 32.5.

24.2   A lien enforcement notice:

24.2.1   may only be given in respect of a share which is subject to the company's lien, in respect of which a sum is payable and the due date for payment of that sum has passed;

24.2.2   must specify the share concerned;

24.2.3   must be in writing and require payment of the sum payable within fourteen days of the notice;

Page 7

EX 41
2711

24.2.4   must be addressed either to the holder of the share or to a transmittee of that holder; and

24.2.5   must state the company's intention to sell the share if the notice is not complied with.

24.3   Where shares are sold under this Article 24:

24.3.1   the directors may authorise any person to execute an instrument of transfer of the shares to the purchaser or a person nominated by the purchaser, and

24.3.2   the transferee is not bound to see to the application of the consideration, and the transferee's title is not affected by any irregularity in or invalidity of the process leading to the sale.

24.4   The net proceeds of any such sale (after payment of the costs of sale and any other costs of enforcing the lien) must be applied:

24.4.1   first, in payment of so much of the sum for which the lien exists as was payable at the date of the lien enforcement notice,

24.4.2   second, to the person entitled to the shares at the date of the sale, but only after the certificate for the shares sold has been surrendered to the company for cancellation or an indemnity in a form reasonably satisfactory to the directors has been given for any lost certificates, and subject to a lien equivalent to the company's lien for any money payable (whether payable immediately or at some time in the future) as existed over the shares before the sale in respect of all shares registered in the name of such person (whether as the sole registered holder or as one of several joint holders) after the date of the lien enforcement notice.

24.5   A statutory declaration by a director or the company secretary (if any) that the declarant is a director or the company secretary (as the case may be) and that a share has been sold to satisfy the company's lien on a specified date:

24.5.1   is conclusive evidence of the facts stated in it as against all persons claiming to be entitled to the share, and

24.5.2   subject to compliance with any other formalities of transfer required by the articles or by law, constitutes a good title to the share.

## 25   Call notices

25.1   Subject to the articles and the terms on which shares are allotted, the directors may send a notice (**call notice**) to a shareholder requiring the shareholder to pay the company a specified sum of money (**call**) which is payable by that member to the Company at the date when the directors decide to send the call notice.

25.2   A call notice:

25.2.1   must be in writing;

25.2.2   may not require a shareholder to pay a call which exceeds the total amount of his indebtedness or liability to the company;

25.2.3   must state when and how any call to which it relates it is to be paid; and

25.2.4   may permit or require the call to be paid by instalments.

25.3   A shareholder must comply with the requirements of a call notice, but no shareholder is obliged to pay any call before fourteen days have passed since the notice was sent.

25.4   Before the company has received any call due under a call notice the directors may:

25.4.1   revoke it wholly or in part, or

25.4.2   specify a later time for payment than is specified in the notice,

by a further notice in writing to the shareholder in respect of whose shares the call is made.

## 26   Liability to pay calls

26.1   Liability to pay a call is not extinguished or transferred by transferring the shares in respect of which it is required to be paid.

26.2   Joint holders of a share are jointly and severally liable to pay all calls in respect of that share.

26.3   Subject to the terms on which shares are allotted, the directors may, when issuing shares, provide that call notices sent to the holders of those shares may require them:

26.3.1   to pay calls which are not the same, or

26.3.2   to pay calls at different times.

## 27   When call notice need not be issued

27.1   A call notice need not be issued in respect of sums which are specified, in the terms on which a share is issued, as being payable to the company in respect of that share:

27.1.1   on allotment;

27.1.2   on the occurrence of a particular event; or

27.1.3   on a date fixed by or in accordance with the terms of issue.

27.2   But if the due date for payment of such a sum has passed and it has not been paid, the holder of the share concerned is treated in all respects as having failed to comply with a call notice in respect of that sum, and is liable to the same consequences as regards the payment of interest and forfeiture.

## 28   Failure to comply with call notice: automatic consequences

28.1   If a person is liable to pay a call and fails to do so by the call payment date:

28.1.1   the directors may issue a notice of intended forfeiture to that person, and

28.1.2   until the call is paid, that person must pay the company interest on the call from the call payment date at the relevant rate.

Attachment WW

28.2    For the purposes of this Article 28:

    28.2.1    the **call payment date** is the time when the call notice states that a call is payable, unless the directors give a notice in writing specifying a later date, in which case the **call payment date** is that later date;

    28.2.2    the relevant rate is:

        28.2.2.1    the rate fixed by the terms on which the share in respect of which the call is due was allotted;

        28.2.2.2    such other rate as was fixed in the call notice which required payment of the call, or has otherwise been determined by the directors; or

        28.2.2.3    if no rate is fixed in either of these ways, five per cent. (5%) per annum.

28.3    The relevant rate must not exceed by more than five percentage points the base lending rate most recently set by the Monetary Policy Committee of the Bank of England in connection with its responsibilities under Part 2 of the Bank of England Act 1998.

28.4    The directors may waive any obligation to pay interest on a call wholly or in part.

## 29    Notice of intended forfeiture

29.1    A notice of intended forfeiture:

    29.1.1    must be in writing;

    29.1.2    may be sent in respect of any share in respect of which a call has not been paid as required by a call notice;

    29.1.3    must be sent to the holder of that share (or, in the case of joint holders of a share in accordance with Article 56.3) or to a transmittee of that holder in accordance with Article 56.4;

    29.1.4    must require payment of the call and any accrued interest and all expenses that may have been incurred by the company by reason of such non-payment by a date which is not less than fourteen days after the date of the notice;

    29.1.5    must state how the payment is to be made; and

    29.1.6    must state that if the notice is not complied with, the shares in respect of which the call is payable will be liable to be forfeited.

## 30    Directors' power to forfeit shares

If a notice of intended forfeiture is not complied with before the date by which payment of the call is required in the notice of intended forfeiture, the directors may decide that any share in respect of which it was given is forfeited, and the forfeiture is to include all dividends or other moneys payable in respect of the forfeited shares and not paid before the forfeiture.

## 31    Effect of forfeiture

31.1    Subject to the articles, the forfeiture of a share extinguishes:

    31.1.1    all interests in that share, and all claims and demands against the company in respect of it, and

    31.1.2    all other rights and liabilities incidental to the share as between the person whose share it was prior to the forfeiture and the company.

31.2    Any share which is forfeited in accordance with the articles:

    31.2.1    is deemed to have been forfeited when the directors decide that it is forfeited;

    31.2.2    is deemed to be the property of the company; and

    31.2.3    may be sold, re-allotted or otherwise disposed of as the directors think fit in accordance with Article 32.5.

31.3    If a person's shares have been forfeited:

    31.3.1    the company must send that person  written notice that forfeiture has occurred and record it in the register of members;

    31.3.2    that person ceases to be a shareholder in respect of those shares;

    31.3.3    that person must surrender the certificate for the shares forfeited to the company for cancellation;

    31.3.4    that person remains liable to the company for all sums payable by that person under the articles at the date of forfeiture in respect of those shares, including any interest (whether accrued before or after the date of forfeiture); and

    31.3.5    the directors may waive payment of such sums wholly or in part or enforce payment without any allowance for the value of the shares at the time of forfeiture or for any consideration received on their disposal.

31.4    At any time before the company disposes of a forfeited share, the directors may decide to cancel the forfeiture on payment of all calls and interest due in respect of it and on such other terms as they think fit.

## 32    Procedure following forfeiture

32.1    If a forfeited share is to be disposed of by being transferred, the company may receive the consideration for the transfer and the directors may authorise any person to execute the instrument of transfer.

32.2    A statutory declaration by a director or the company secretary (if any) that the declarant is a director or the company secretary (as the case may be) and that a share has been forfeited on a specified date:

    32.2.1    is conclusive evidence of the facts stated in it as against all persons claiming to be entitled to the share, and

    32.2.2    subject to compliance with any other formalities of transfer required by the articles or by law, constitutes a good title to the share.

32.3    A person to whom a forfeited share is transferred is not bound to see to the application of the consideration (if any) nor is that person's title to the share affected by any irregularity in or invalidity of the process leading to the forfeiture or transfer of the share.

32.4   If the company sells a forfeited share, the person who held it prior to its forfeiture is entitled to receive from the company the proceeds of such sale, net of any commission, and excluding any amount which:

      32.4.1   was, or would have become, payable, and

      32.4.2   had not, when that share was forfeited, been paid by that person in respect of that share,

      but no interest is payable to such a person in respect of such proceeds and the company is not required to account for any money earned on them.

32.5   All shares to be sold in the enforcement of the company's lien or rights of forfeiture shall be offered in accordance with Article 37 (Voluntary Transfers) as if they were Sale Shares in respect of which a Transfer Notice had been given and treating as the Seller the holder of those shares save that the Sale Price be the Market Value of those shares and the Transfer Notice shall be deemed not to contain a Total Transfer Condition.

## 33   Surrender of shares

33.1   A shareholder may surrender any share:

      33.1.1   in respect of which the directors may issue a notice of intended forfeiture;

      33.1.2   which the directors may forfeit; or

      33.1.3   which has been forfeited.

33.2   The directors may accept the surrender of any such share.

33.3   The effect of surrender on a share is the same as the effect of forfeiture on that share.

33.4   A share which has been surrendered may be dealt with in the same way as a share which has been forfeited.

## 34   Payment of commission on subscription for shares

34.1   The company may pay any person a commission in consideration for that person:

      34.1.1   subscribing, or agreeing to subscribe, for shares; or

      34.1.2   procuring, or agreeing to procure, subscriptions for shares.

34.2   Any such commission may be paid:

      34.2.1   in cash, or in fully paid or partly paid shares or other securities or partly in one way and partly in the other; and

      34.2.2   in respect of a conditional or an absolute subscription.

## 35   Share certificates

35.1   Article 24(2)(c) of the Model Articles shall be amended by:

      35.1.1   the deletion of the word "fully" and the insertion of the words "extent to which" before the word "shares"; and

      35.1.2   the word "up" at the end of this Article 24(2)(c).

## 36   Transfer of shares- general

36.1   In these articles, a reference to the **transfer** of or **transferring** shares shall include any transfer, assignment, disposition or proposed or purported transfer, assignment or disposition:

      36.1.1   of any share or shares of the company; or

      36.1.2   of any interest of any kind in any share or shares of the company; or

      36.1.3   of any right to receive or subscribe for any share or shares of the company.

36.2   The directors shall not register the transfer of any share or any interest in any share unless the transfer is made in accordance with Article 37 (Voluntary Transfers), and, in any such case, is not prohibited under Article 38 (Prohibited Transfers).

36.3   If the directors refuse to register a transfer of a share they shall, as soon as practicable and in any event within two months after the date on which the transfer was lodged with the company, send to the transferee notice of, and the reasons for, the refusal.

36.4   An obligation to transfer a share under these articles shall be deemed to be an obligation to transfer the entire legal and beneficial interest in such share free from any lien, charge or other encumbrance.

36.5   Article 26(1) of the Model Articles shall be amended by the insertion of the words "and (if any of the shares is partly paid) the transferee" at the end of that article.

## 37   Voluntary Transfers

37.1   Any shareholder who wishes to transfer any share (**Seller**) shall before transferring or agreeing to transfer such share or any interest in it, serve notice in writing (**Transfer Notice**) on the company of his wish to make that transfer.

37.2   In the Transfer Notice the Seller shall specify:

      37.2.1   the number and class of shares (**Sale Shares** and each one a **Sale Share**) which he wishes to transfer;

      37.2.2   the identity of the person (if any) to whom the Seller wishes to transfer the Sale Shares;

      37.2.3   the price per share at which the Seller wishes to transfer the Sale Shares (**Proposed Sale Price**);

      37.2.4   any other terms relating to the transfer of the Sale Shares; and

      37.2.5   whether the Transfer Notice is conditional upon all (and not part only) of the Sale Shares being sold pursuant to the following provisions of this Article 37 (**Total Transfer Condition**).

37.3   Each Transfer Notice shall:

      37.3.1   relate to one class of shares only;

37.3.2   constitute the company as the agent of the Seller for the sale of the Sale Shares on the terms of this Article 37; and

37.3.3   save as provided in Article 37.8, be irrevocable.

37.4   The Sale Shares shall  be offered for purchase in accordance with this Article 37 at a price per Sale Share (**Sale Price**) agreed between the Seller and the directors or, in default of such agreement by the end of the 15th working day after the date of service of the Transfer Notice:

37.4.1   if the directors so elect within that fifteen working day period after the date of service of the Transfer Notice, the Sale Price shall be the price per Sale Share reported on by the Valuers as their written opinion of the open market value of each Sale Share (**Market Value**) as at the date of service of the Transfer Notice (in which case for the purposes of these Articles the Sale Price shall be deemed to have been determined on the date of the receipt by the company of the Valuer's report); and

37.4.2   otherwise the Sale Price shall be the Proposed Sale Price, in which case for the purpose of these Articles the Sale Price shall be deemed to have been agreed at the end of that 15th working day.

37.5   If instructed to report on their opinion of Market Value under Article 37.4 the Valuers shall:

37.5.1   act as expert and not as arbitrator and their written determination shall be final and binding on the shareholders; and

37.5.2   proceed on the basis that:

37.5.2.1   the open market value of each Sale Share shall be the sum which a willing buyer would agree with a willing seller to be the purchase price for all the class of shares of which the Sale Shares form part, divided by the number of issued shares then comprised in that class;

37.5.2.2   there shall be no addition of any premium or subtraction of any discount by reference to the size of the holding the subject of the Transfer Notice or in relation to any restrictions on the transferability of the Sale Shares; and

37.5.2.3   any difficulty in applying either of the foregoing bases shall be resolved by the Valuers as they think fit in their absolute discretion.

37.6   The company will use its reasonable endeavours to procure that the Valuers deliver their written opinion of the Market Value to the directors and to the Seller within twenty-eight days of being requested to do so.

37.7   The Valuers' fees for reporting on their opinion of the Market Value shall be borne as the Valuers shall specify in their valuation having regard to the conduct of the parties and the merit of their agreements in respect of the matters in dispute or otherwise (in the absence of any such specification by the Valuers) as to one half by the Seller and as to the other half by the company unless the Seller revokes the Transfer Notice pursuant to Article 37.8, in which case the Seller shall pay all the Valuers' fees.

37.8   If the Market Value is reported on by the Valuers under Article 37.4 to be less than the Proposed Sale Price, the Seller may revoke any Transfer Notice which was not stated to be, or is not deemed by these Articles to be, irrevocable by written notice given to the directors within the period of five working days after the date the directors serve on the Seller the Valuers' written opinion of the Market Value.

37.9   The directors shall at least ten working days after and no more than twenty working days after the Sale Price has been agreed or determined give an Offer Notice to all shareholders to whom the Sale Shares are to be offered in accordance with these Articles.

37.10  An Offer Notice shall:

37.10.1  specify the Sale Price;

37.10.2  contain the other details included in the Transfer Notice; and

37.10.3  invite each of the shareholders (other than the Seller) to respond in writing, before expiry of the Offer Notice, to purchase the numbers of Sale Shares specified by them in their application,

and shall expire twenty working days after its service.

37.11  After the expiry date of the Offer Notice, the directors shall allocate the Sale Shares in accordance with the applications received save that:

37.11.1  if there are applications from shareholders for more than the number of Sale Shares available, they shall be allocated to those applicants in proportion (as nearly as possible but without allocating to any shareholder more Sale Shares than the maximum number applied for by him) to the number of shares then held by them respectively; however, in his application for Sale Shares a shareholder may, if he so desires, indicate that he would be willing to purchase a particular proportionate entitlement (**Excess Shares**), in which case, applications for Excess Shares shall be allocated in accordance with such application, or in the event of competition among those shareholders applying for Excess Shares in such proportions as equal (as nearly as may be) the proportions of all the shares held by such shareholders;

37.11.2  if it is not possible to allocate any of the Sale Shares without involving fractions, they shall be allocated amongst them in such manner as the Board shall think fit; and

37.11.3  if the Transfer Notice contained a valid Total Transfer Condition, no allocation of Sale Shares shall be made unless all the Sale Shares are allocated.

37.12  The directors shall, within five working days of the expiry date of the Offer Notice, give notice in writing (**Allocation Notice**) to the Seller and to each person to whom Sale Shares have been allocated (each a **Buyer**) specifying the name and address of each Buyer, the number and class of Sale Shares agreed to be purchased by him and the aggregate price payable for them.

37.13  Completion of a sale and purchase of Sale Shares pursuant to an Allocation Notice shall take place at the registered office of the company at the time specified in the Allocation Notice when the Seller shall, upon payment to him by a

EX 41
2715

Buyer of the Sale Price in respect of the Sale Shares allocated to that Buyer, transfer those Sale Shares and deliver the relative share certificate(s) to that Buyer.

37.14   The Seller may, during the period of thirty working days immediately following the expiry date of the Offer Notice, sell all or any of these Sale Shares, for which an Allocation Notice has not been given, by way of bona fide sale to the proposed transferee (if any) named in the Transfer Notice or, if none was so named, to any transferee, in either case at any price per Sale Share which is not less than the Sale Price, without any deduction, rebate or allowance to the proposed transferee, provided that:

37.14.1   the Seller may not transfer such share and the directors shall not register any transfer to a transferee who is not at that date a shareholder unless such transferee is first approved in writing by the directors; and

37.14.2   if the Transfer Notice contained a Total Transfer Condition, the Seller shall not be entitled, save with the written consent of the directors, to sell only some of the Sale Shares under this Article 37.14.

37.15   If a Seller fails for any reason (including death) to transfer any Sale Shares when required pursuant to this Article 37, the directors may authorise any director of the company (who shall be deemed to be irrevocably appointed as the attorney of the Seller for the purpose) to execute each necessary transfer of such Sale Shares and deliver it on the Seller's behalf.  The company may receive the purchase money for such Sale Shares from the Buyer and shall upon receipt (subject, if necessary, to the transfer being duly stamped) register the Buyer as the holder of such Sale Shares.  The company shall hold such purchase money in a separate bank account on trust for the Seller but shall not be bound to earn or pay interest on any money so held.  The company's receipt for such purchase money shall be a good discharge to the Buyer who shall not be bound to see to the application of it, and after the name of the Buyer has been entered in the register of members in purported exercise of the power conferred by this Article 37.15 the validity of the proceedings shall not be questioned by any person.

## 38   Prohibited Transfers

Notwithstanding any other provision of these articles, no transfer of any Share shall be registered if it is to any minor, undischarged bankrupt, trustee in bankruptcy or person of unsound mind.

## 39   Transmission of shares

39.1   Nothing in these articles releases the estate of a deceased shareholder from any liability in respect of a share solely or jointly held by that shareholder.

39.2   Article 27(3) of the Model Articles shall be amended by the insertion of the words "subject to the provisions of Article 14.1", after the initial word "But".

## 40   Transmittees bound by prior notices

Article 29 of the Model Articles shall be amended by the insertion of the words "or the name of any person nominated under article 27(2)" after the words "transmittee's name".

## 41   Procedure for disposing of fractions of shares

41.1   This Article applies where:

41.1.1   there has been a consolidation or division of shares; and

41.1.2   as a result, shareholders are entitled to fractions of shares.

41.2   The directors may:

41.2.1   sell the shares representing the fractions to any person including the company for the best price reasonably obtainable;

41.2.2   authorise any person to execute an instrument of transfer of the shares to the purchaser or a person nominated by the purchaser; and

41.2.3   distribute the net proceeds of sale in due proportion among the holders of the shares.

41.3   The person to whom the shares are transferred is not obliged to ensure that any purchase money is received by the person entitled to the relevant fractions.

41.4   The transferee's title to the shares is not affected by any irregularity in or invalidity of the process leading to their sale.

## 42   Calculation of dividends

42.1   Except as otherwise provided by the articles or the rights attached to shares, all dividends must be:

42.1.1   declared and paid according to the amounts paid up on the shares on which the dividend is paid; and

42.1.2   apportioned and paid proportionately to the amounts paid up on the shares during any portion or portions of the period in respect of which the dividend is paid.

42.2   If any share is issued on terms providing that it ranks for dividend as from a particular date, that share ranks for dividend accordingly.

## 43   Deductions from distributions in respect of sums owed to the company

43.1   If:

43.1.1   a share is subject to the company's lien; and

43.1.2   the directors are entitled to issue a lien enforcement notice in respect of it,

they may, instead of issuing a lien enforcement notice, deduct from any dividend or other sum payable in respect of the share any sum of money which is payable to the company in respect of that share to the extent that they are entitled to require payment under a lien enforcement notice.

43.2    Money so deducted must be used to pay any of the sums payable in respect of that share.

43.3    The company must notify the distribution recipient in writing of:

43.3.1    the fact and amount of any such deduction;

43.3.2    any non-payment of a dividend or other sum payable in respect of a share resulting from any such deduction; and

43.3.3    how the money deducted has been applied.

## 44    Authority to capitalise and appropriation of capitalised sums

Article 36(4) of the Model Articles shall be amended by inserting the phrase "in or towards paying up any amounts unpaid on existing shares held by the persons entitled, or" after the words "may be applied".

## 45    Convening general meetings

The directors may call general meetings and, on the requisition of shareholders pursuant to the provisions of the Companies Act 2006, shall forthwith proceed to convene a general meeting in accordance with the Companies Act 2006. If there are not within the United Kingdom sufficient directors to call a general meeting, any director or the shareholders requisitioning the meeting (or any of them representing more than one half of the total voting rights of them all) may call a general meeting. If the company has only a single shareholder, such shareholder shall be entitled at any time to call a general meeting.

## 46    Notice of general meetings

46.1    General meetings (other than an adjourned meeting) shall be called by at least fourteen Clear Days' notice but a general meeting may be called by shorter notice if it is so agreed by a majority in number of the shareholders having a right to attend and vote, being a majority together holding not less than ninety per cent (90%) in nominal value of the shares at the meeting, giving that right.

46.2    The notice shall specify the time, date and place of the meeting, the general nature of the business to be transacted and the terms of any resolution to be proposed at it.

46.3    Subject to the provisions of these articles and to any restrictions imposed on any shares, the notice shall be given to all shareholders, to all persons entitled to a share in consequence of the death or bankruptcy of a shareholder (if the company has been notified of their entitlement) and to the directors, alternate directors and the auditors for the time being of the company.

46.4    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting.

## 47    Resolutions requiring special notice

47.1    If the Companies Act 2006 requires special notice to be given of a resolution, then the resolution will not be effective unless notice of the intention to propose it has been given to the company at least twenty-eight Clear Days before the general meeting at which it is to be proposed.

47.2    Where practicable, the company must give the shareholders notice of the resolution in the same manner and at the same time as it gives notice of the general meeting at which it is to be proposed.  Where that is not practicable, the company must give the shareholders at least fourteen Clear Days' before the relevant general meeting by advertisement in a newspaper with an appropriate circulation.

47.3    If, after notice to propose such a resolution has been given to the company, a meeting is called for a date twenty-eight days or less after the notice has been given, the notice shall be deemed to have been properly given, even though it was not given within the time required by Article 47.1.

## 48    Quorum for general meetings

No business shall be transacted at any meeting unless a quorum is present. Subject to section 318(2) of the Companies Act 2006, two qualifying persons (as defined in section 318(3) of the Companies Act 2006) entitled to vote upon the business to be transacted shall be a quorum, provided that if the company has only a single shareholder, the quorum shall be one such qualifying person.

## 49    Adjournment

Article 41(1) of the Model Articles shall be amended by inserting the following sentence at the end of the first sentence of that article: "If, at the adjourned meeting, a quorum is not present within half an hour from the time appointed for the meeting, the meeting shall be dissolved".

## 50    Voting: general

50.1    Subject to any rights or restrictions attached to any shares, on a show of hands, every shareholder who (being an individual) is present in person or (being a corporation) is present by a duly authorised representative (unless the representative is himself a shareholder, in which case he shall have more than one vote) shall have one vote.  A proxy shall not be entitled to vote on a show of hands.

50.2   No shareholder shall vote at any general meeting or at any separate meeting of the holder of any class of shares, either in person or by proxy, in respect of any share held by him unless all monies presently payable by him in respect of that share have been paid.

50.3   In the case of joint holders the vote of the senior who tenders a vote shall be accepted to the exclusion of the votes of the other joint holders; and seniority shall be determined by the order in which the names of the holders stand in the register of members.

50.4   Unless a poll is duly demanded, a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost, or not carried by a particular majority and an entry to that effect in the minutes of the meeting shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

## 51   Poll votes

51.1   On a poll every shareholder who (being an individual is present in person or by proxy or (being a corporation) is present by a duly authorised representative or by proxy shall have one vote for every share of which he is the holder.  On a poll, a shareholder entitled to more than one vote need not use all his votes or cast all the votes he uses in the same way.

51.2   Article 44(2) of the Model Articles shall be amended by the insertion of the following sub-paragraph as article 44(2)(e):

"a person or persons holding shares conferring a right to vote on the resolution on which not less than one tenth of the total sum paid up on all the shares conferring that right."

51.3   Article 44(3) of the Model Articles shall be amended by inserting the following sentence at the end of the Article:

"A demand so withdrawn shall not invalidate the result of a show of hands declared before the demand was made".

51.4   The result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

51.5   A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken either forthwith or at such time and place as the chairman directs not being more than thirty days after the poll is demanded.  The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll was demanded.  If a poll is demanded before the declaration of the result of a show of hands and the demand is duly withdrawn, the meeting shall continue as if the demand had not been made.

51.6   No notice need be given of a poll not taken forthwith if the time and place at which it is to be taken are announced at the meeting at which it is demanded. In any other case at least seven Clear Days' notice shall be given specifying the time and place at which the poll is to be taken.

## 52   Content of proxy notices

52.1   Subject to the provisions of these articles, a shareholder is entitled to appoint another person as his proxy to exercise all or any of his rights to attend and to speak and vote at a general meeting.  A shareholder may appoint more than one proxy in relation to a meeting, provided that each proxy is appointed to exercise the rights attached to a different share or shares held by that shareholder.

52.2   Proxies may only validly be appointed by a notice in writing (**proxy notice**) which:

52.2.1   states the name and address of the shareholder appointing the proxy;

52.2.2   identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;

52.2.3   is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and

52.2.4   is delivered to the company in accordance with the articles and in accordance with any instructions contained in the notice of the general meeting (or adjourned meeting) to which they relate and received by the company:

52.2.4.1   subject to articles 52.2.4.2 and 52.2.4.3, in the case of a general meeting or adjourned meeting, not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which the right to vote is to be exercised;

52.2.4.2   in the case of a poll taken more than forty-eight hours after it is demanded, after the poll has been demanded and not less than twenty-four hours before the time appointed for the taking of the poll; or

52.2.4.3   where the poll is not taken forthwith but is taken not more than forty-eight hours after it was demanded, at the time at which the poll was demanded or twenty-four hours before the time appointed for the taking of the poll, whichever is the later,

and a proxy notice which is not delivered and received in such manner shall be invalid.

52.3   Article 45(3) of the Model Articles shall be amended by the addition of the following at the end of the article:

" and the proxy is obliged to vote or abstain from voting in accordance with the specified instructions. However, the Company is not obliged to check whether a proxy votes or abstains from voting as he has been instructed and shall incur no liability for failing to do so. Failure by a proxy to vote or abstain from voting as instructed at a meeting shall not invalidate proceedings at that meeting."

53 **Delivery of proxy notices**

53.1   Any notice of a general meeting must specify the address or addresses (**proxy notification address**) at which the company or its agents will receive proxy notices relating to that meeting, or any adjournment of it, delivered in hard copy or electronic form.

53.2   Article 46(1) of the Model Articles shall be amended by inserting the words: "to a proxy notification address" at the end of that Article.

53.3   A notice revoking a proxy appointment only takes effect if it is received by the company:

53.3.1   Subject to articles 53.3.2 and 53.3.3, in the case of a general or adjourned meeting, not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which the right to vote is to be exercised;

53.3.2   in the case of a poll taken more than forty-eight hours after it was demanded, not less than twenty-four hours before the time appointed for the taking of the poll; or

53.3.3   in the case of a poll not taken forthwith but not more than forty-eight hours after it was demanded, at the time at which it was demanded or twenty-four hours before the time appointed for the taking of the poll, whichever is later,

and a notice which is not delivered and received in such manner shall be invalid.

53.4   In calculating the periods referred to in Article 52 (Content of proxy notices) and this Article 53, no account shall be taken of any part of a day that is not a working day.

54 **Representation of corporations at meetings**

Subject to the Companies Act 2006, a company which is a shareholder may, by resolution of its directors or other governing body, authorise one or more persons to act as its representative or representatives at a meeting of the company or at a separate meeting of the holders of a class of shares of the company (**corporate representative**). A director, secretary or other person authorised for the purpose by the directors may require a corporate representative to produce a certified copy of the resolution of authorisation before permitting him to exercise his powers.

55 **A resolution of the shareholders (or a class of shareholders) may be passed as a written resolution in accordance with chapter 2 of part 13 of the Companies Act 2006.**

56 **Means of communication to be used**

56.1   Any notice, document or other information shall be deemed served on or delivered to the intended recipient:

56.1.1   If properly addressed and sent by prepaid United Kingdom first class post to an address in the United Kingdom, forty-eight hours after it was posted;

56.1.2   If properly addressed and delivered by hand, when it was given or left at the appropriate address;

56.1.3   If properly addressed and send or supplied by electronic means forty-eight hours after the document or information was sent or supplied; and

56.1.4   If sent or supplied by means of a website, when the material is first made available on the website or (if later) when the recipient receives (or is deemed to have received) notice of the fact that the material is available on the website.

For the purposes of this Article 56.1, no account shall be taken of any part of a day that is not a working day.

56.2   In proving that any notice, document or other information was properly addressed, it shall be sufficient to show that the notice, document or other information was delivered to an address permitted for the purpose by the Companies Act 2006.

56.3   In the case of joint holders of a share, all notices or documents shall be given to the joint holder whose name stands first in the register in respect of the joint holding. Notice so given shall be sufficient notice to all of the joint holders. Where there are joint holders of a share, anything which needs to be agreed or specified in relation to any notice, document or other information to be sent or supplied to them can be agreed or specified by any one of the joint holders. The agreement or specification of the joint holder whose name stands first in the register will be accepted to the exclusion of the agreement or specification of any other joint holder (s) whose name(s) stand later in the register.

56.4   The Company may give notice to the transmittee of a member, by sending or delivering it in any manner authorised by these Articles for the giving of notice to a member, addressed to that person by name, or by the title, of representative of the deceased or trustee of the bankrupt or representative by operation of law or by any like description, at the address (if any) within the United Kingdom supplied for the purpose by the person claiming to be so entitled. Until such an address has been so supplied, a notice may be given in any manner in which it might have been given if the death or bankruptcy or operation of law had not occurred.

57 **Company seals**

Article 49(3) of the Model Articles shall be amended by the insertion of the words "by either at least two authorised persons or" after the word "signed".

58 **Indemnity**

58.1   Subject to Article 58.2, but without prejudice to any indemnity to which a relevant officer is otherwise entitled:

58.1.1   each relevant officer shall be indemnified out of the company's assets against all costs, charges, losses, expenses and liabilities incurred by him as a relevant officer:

Page 15

58.1.1.1   in the actual or purported execution and/or discharge of his duties, or in relation to them; and

58.1.1.2   in relation to the company's (or any associated company's) activities as trustee of an occupational pension scheme (as defined in section 235(6) of the Companies Act 2006),

including (in each case) any liability incurred by him in defending any civil or criminal proceedings in which judgment is given in his favour or in which he is acquitted or the proceedings are otherwise disposed of without any finding or admission of any material breach of duty on his part or in connection with any application in which the court grants him, in his capacity as a relevant officer, relief from liability for negligence, default, breach of duty or breach of trust in relation to the company's (or any associated company's ) affairs; and

58.1.2   the company may provide any relevant officer with funds to meet expenditure incurred or to be incurred by him in connection with any proceedings or application referred to in Article 58.1.1 and otherwise may take any action to enable any such relevant officer to avoid incurring such expenditure.

58.2   This Article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Companies Acts or by any other provision of law.

58.3   In this Article 58:

58.3.1   companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate, and

58.3.2   a **relevant officer** means any director or alternate director or other officer or former director or other officer  of the company or an associated company (including any company which is a trustee of an occupational pension scheme (as defined by section 235(6) of the Companies Act 2006) and may, if the shareholders so decide, include any person engaged by the company (or any associated company) as auditor (whether or not he is also a director or other officer), to the extent he acts in his capacity as auditor).

## 59   Insurance

59.1   The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant officer in respect of any relevant loss.

59.2   In this Article:

59.2.1   a **relevant officer** means any director or alternate director or other officer or former director or other officer of the company or an associated company (including any company which is a trustee of an occupational pension scheme (as defined by section 235(6) of the Companies Act 2006;

59.2.2   a **relevant loss** means any loss or liability which has been or may be incurred by a relevant officer in connection with that officer's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated  company; and

59.2.3   companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.

© The Association of Company Registration Agents Limited 2009. All rights reserved.

Attachment WW

EX 41
2720



# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "DIGITAL ALTITUDE LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE TENTH DAY OF MARCH, A.D. 2015, AT 10:35 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "DIGITAL ALTITUDE LLC".

Jeffrey W. Bullock, Secretary of State

5706751  8100H
SR# 20174893199

Authentication: 202848004
Date: 07-08-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

Attachment XX

EX 41
2721

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:43 AM 03/10/2015
FILED 10:35 AM 03/10/2015
SRV 150334340 - 5706751 FILE

# CERTIFICATE OF FORMATION

## OF

## Digital Altitude LLC

(A Delaware Limited Liability Company)

**First:** The name of the limited liability company is: Digital Altitude LLC

**Second:** Its registered office in the State of Delaware is located at 16192 Coastal Highway, Lewes, Delaware 19958, County of Sussex. The registered agent in charge thereof is Harvard Business Services, Inc.

IN WITNESS WHEREOF, the undersigned, being fully authorized to execute and file this document have signed below and executed this Certificate of Formation on this 10th day of March, 2015.

*Richard H. Bell*

Harvard Business Services, Inc., Authorized Person
By: Richard H. Bell, President

Attachment XX

EX 41
2722

# STATE OF NEVADA



**BARBARA K. CEGAVSKE**
*Secretary of State*

**KIMBERLEY PERONDI**
*Deputy Secretary*
*for Commercial Recordings*

**Commercial Recordings Division**
*202 N. Carson Street*
*Carson City, NV 89701-4201*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

OFFICE OF THE
## SECRETARY OF STATE

---

### Certified Copy

June 21, 2017

**Job Number:**          C20170621-0159
**Reference Number:**    00010670173-95
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| 20160252782-35 | Articles of Incorporation | 1 Pages/1 Copies |

Respectfully,

Barbara K. Cegavske
Secretary of State

Certified By: Christine Rakow
Certificate Number: C20170621-0159
You may verify this certificate
online at http://www.nvsos.gov/

Commercial Recording Division
202 N. Carson Street
Carson City, Nevada 89701-4201
Telephone (775) 684-5708
Fax (775) 684-7138

Attachment YY

EX 41
2723



*040105*



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

## Articles of Incorporation
(PURSUANT TO NRS CHAPTER 78)

| Filed in the office of | Document Number |
|---|---|
| *Barbara K Cegavske* | **20160252782-35** |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | **06/03/2016 12:51 PM** |
| State of Nevada | Entity Number |
| | ████016-4 |

(This document was filed electronically.)

USE BLACK INK ONLY - DO NOT HIGHLIGHT

ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| **1. Name of Corporation:** | DISC ENTERPRISES INC. |
| **2. Registered Agent for Service of Process:** (check only one box) | ☐ Commercial Registered Agent: _____ Name<br>☒ Noncommercial Registered Agent **OR** ☐ Office or Position with Entity<br>(name and address below)      (name and address below)<br><br>CTI NEVADA I LLC C/O MANAGER<br>Name of Noncommercial Registered Agent **OR** Name of Title of Office or Other Position with Entity<br><br>████████   LAS VEGAS   Nevada ████<br>Street Address   City   Zip Code<br><br>_____   ____   Nevada ____<br>Mailing Address (if different from street address)   City   Zip Code |
| **3. Authorized Stock:** (number of shares corporation is authorized to issue) | Number of shares *with* par value: _____ Par value per share: $ _____   Number of shares *without* par value: 10000 |
| **4. Names and Addresses of the Board of Directors/Trustees:** (each Director/Trustee must be a natural person at least 18 years of age; attach additional page if more than two directors/trustees) | 1) JASHIN HOWELL<br>Name<br>████████   LAS VEGAS   NV   ████<br>Street Address   City   State   Zip Code<br>2)<br>Name<br>_____   ____   ____   ____<br>Street Address   City   State   Zip Code |
| **5. Purpose:** (optional; required only if Benefit Corporation status selected) | *The purpose of the corporation shall be:*<br>ANY LEGAL PURPOSE |
| **6. Benefit Corporation:** (see instructions) | ☐ Yes |
| **7. Name, Address and Signature of Incorporator:** (attach additional page if more than one incorporator) | I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.<br><br>JASHIN HOWELL   X JASHIN HOWELL<br>Name   Incorporator Signature<br>████████   LAS VEGAS   NV   ████<br>Address   City   State   Zip Code |
| **8. Certificate of Acceptance of Appointment of Registered Agent:** | *I hereby accept appointment as Registered Agent for the above named Entity.*<br><br>X CTI NEVADA I LLC C/O MANAGER   6/3/2016<br>Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity   Date |

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 78 Articles
Revised: 1-5-15

Attachment YY

EX 41
2724

**STATE OF NEVADA**



**BARBARA K. CEGAVSKE**
*Secretary of State*

**KIMBERLEY PERONDI**
*Deputy Secretary
for Commercial Recordings*

**Commercial Recordings Division**
*202 N. Carson Street
Carson City, NV 89701-4201
Telephone (775) 684-5708
Fax (775) 684-7138*

**OFFICE OF THE
SECRETARY OF STATE**

## Certified Copy

June 21, 2017

**Job Number:**       C20170621-0159
**Reference Number:**  00010670173-95
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact
copies of all requested statements and related subsequent documentation filed with the
Secretary of State's Office, Commercial Recordings Division listed on the attached
report.

**Document Number(s)**    **Description**              **Number of Pages**
20160343660-91            Articles of Organization      1 Pages/1 Copies

Respectfully,

Barbara K. Cegavske
Secretary of State

Certified By: Christine Rakow
Certificate Number: C20170621-0159
You may verify this certificate
online at **http://www.nvsos.gov/**

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4201
Telephone (775) 684-5708
Fax (775) 684-7138

Attachment ZZ

EX 41
2725



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov



*050106*

# Articles of Organization
# Limited-Liability Company
(PURSUANT TO NRS CHAPTER 86)



| Filed in the office of | Document Number |
|---|---|
| *Barbara K Cegavske* | **20160343660-91** |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | **08/02/2016 9:28 AM** |
| State of Nevada | Entity Number |
| | 016-4 |

(This document was filed electronically.)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                    ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| **1. Name of Limited-Liability Company:** (must contain approved limited-liability company wording; see instructions) | RISE SYSTEMS & ENTERPRISE LLC     Check box if a Series Limited-Liability Company ☐     Check box if a Restricted Limited-Liability Company ☐ |
| **2. Registered Agent for Service of Process:** (check only one box) | ☒ Commercial Registered Agent: NATIONAL REGISTERED AGENTS, INC. OF NV <br>                                                         Name <br> ☐ Noncommercial Registered Agent   **OR**   ☐ Office or Position with Entity <br>    (name and address below)                 (name and address below) <br><br> Name of Noncommercial Registered Agent **OR** Name of Title of Office or Other Position with Entity <br><br> Street Address _____ City _____ Nevada   Zip Code <br> Mailing Address (if different from street address)   City   Nevada   Zip Code |
| **3. Dissolution Date:** (optional) | Latest date upon which the company is to dissolve (if existence is not perpetual): |
| **4. Management:** (required) | Company shall be managed by: ☒ Manager(s)  **OR**  ☐ Member(s) <br> (check only one box) |
| **5. Name and Address of each Manager or Managing Member:** (attach additional page if more than 3) | 1) MORGAN JOHNSON <br>    Name <br> 701 S CARSON ST STE 200   CARSON CITY   NV   89701 <br> Street Address   City   State   Zip Code <br><br> 2) MARY DEE <br>    Name <br> 701 S CARSON ST STE 200   CARSON CITY   NV   89701 <br> Street Address   City   State   Zip Code <br><br> 3) _____ <br>    Name <br> Street Address   City   State   Zip Code |
| **6. Name, Address and Signature of Organizer:** (attach additional page if more than 1 organizer) | I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State. <br> MARY DEE                    X MARY DEE <br> Name                         Organizer Signature <br> 701 S CARSON ST STE 200   CARSON CITY   NV   89701 <br> Address   City   State   Zip Code |
| **7. Certificate of Acceptance of Appointment of Registered Agent:** | I hereby accept appointment as Registered Agent for the above named Entity. <br> X NATIONAL REGISTERED AGENTS, INC. OF NV                    8/2/2016 <br> Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity   Date |

This form must be accompanied by appropriate fees.          Nevada Secretary of State NRS 86 DLLC Articles
                                                             Revised: 10-1-15

Attachment ZZ

EX 41
2726



**Utah Department of Commerce**
**Division of Corporations & Commercial Code**
160 East 300 South, 2nd Floor, S.M. Box 146705
Salt Lake City, UT 84114-6705
Phone: (801) 530-4849
Toll Free: (877)526-3994 Utah Residents
Fax: (801) 530-6438
Web Site: http://www.commerce.utah.gov

Registration Number: 9893778-0160                                    June 22, 2017
Business Name   RISE SYSTEMS & ENTERPRISE LLC
Registered Date:    4 AUGUST 2016

# CERTIFIED COPY OF
# ENTIRE FILE

THE UTAH DIVISION OF CORPORATIONS AND COMMERCIAL CODE ("DIVISION") HEREBY
CERTIFIES THAT THE ATTACHED IS TRUE, CORRECT, AND COMPLETE COPY OF THE ENTIRE
FILE OF

RISE SYSTEMS & ENTERPRISE LLC

AS APPEARS OF RECORD IN THE OFFICE OF THE DIVISION.

Kathy Berg
Director
Division of Corporations and Commercial Code

| Dept. of Professional Licensing | Real Estate | Public Utilities | Securities | Consumer Protection |
|---|---|---|---|---|
| (801)530-6628 | (801)530-6747 | (801)530-6651 | (801)530-6600 | (801)530-6601 |

Attachment AAA                                                      EX 41
                                                                   2727

File Number: 9893778

## LLC

### Certificate of Organization
### OF
### RISE Systems & Enterprise LLC

The undersigned person(s) do hereby adopt the following Certificate of Organization for the purpose of forming a Utah Limited Liability Company.

### Article I
The name of the limited liability company is to be RISE Systems & Enterprise LLC

### Article II
The purpose or purposes for which the company is organized is to engage in: Training courses.

The Company shall further have unlimited power to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.

### Article III
The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:

*(Registered Agent Name & Address)*
Sean Brown Brown


State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and approved on 4, August 2016 in the office of the Division and hereby issues this Certification thereof.

*Kathy Berg*

KATHY BERG
Division Director

### Article IV

Attachment AAA

*Name, Street address & Signature of all members/managers*

Manager #1
Sean Brown Brown
Address 3

Sean Brown Brown
Signature

**DATED** 4  August, 2016.

## Article V

Management statement
This limited liability company will be managed by its Managers

## Article VI

**Records required to be kept at the principal office include, but are not limited to the following:**

### Article VI.1

A current list in alphabetical order of the full name
and address of each member and each manager.

### Article VI.2

A copy of the stamped certificate of Organization
and all  *certificates of amendments thereto.*

### Article VI.3

Copies of all tax returns and financial statements
of the company for the three most recent years.

### Article VI.4

A copy of the company's operating agreement and minutes of each meeting of members.

## Article VII

**The street address of the principal place of business is:**

1501 North Technology Way Bld B
Orem, UT 84121

## Article VIII

**The duration of the company shall be**

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

Attachment AAA



**Utah Department of Commerce**
**Division of Corporations & Commercial Code**
160 East 300 South, 2nd Floor, S.M. Box 146705
Salt Lake City, UT 84114-6705
Phone: (801) 530-4849
Toll Free: (877)526-3994 Utah Residents
Fax: (801) 530-6438
Web Site: http://www.commerce.utah.gov

Registration Number: 10247813-0160                                August 31, 2017
Business Name:      SOAR INTERNATIONAL LIMITED LIABILITY COMPANY
Registered Date:    1 FEBRUARY 2017

# CERTIFIED COPY OF
# DOMESTIC LLC

THE UTAH DIVISION OF CORPORATIONS AND COMMERCIAL CODE ("DIVISION") HEREBY
CERTIFIES THAT THE ATTACHED IS TRUE, CORRECT, AND COMPLETE COPY OF THE ENTIRE
FILE OF

      SOAR INTERNATIONAL LIMITED LIABILITY COMPANY

AS APPEARS OF RECORD IN THE OFFICE OF THE DIVISION.

*Kathy Berg*

Kathy Berg
Director
Division of Corporations and Commercial Code

| Dept. of Professional Licensing | Real Estate | Public Utilities | Securities | Consumer Protection |
|---|---|---|---|---|
| (801)530-6628 | (801)530-6747 | (801)530-6651 | (801)530-6600 | (801)530-6601 |

Attachment BBB

EX 41
2730

File Number: 10247813

## LLC

## Certificate of Organization
## OF
## Soar International Limited Liability Company

The undersigned person(s) do hereby adopt the following Certificate of Organization for the purpose of forming a Utah Limited Liability Company.

### Article I

The name of the limited liability company is to be Soar International Limited Liability Company

### Article II

The purpose or purposes for which the company is organized is to engage in: Development training.

The Company shall further have unlimited power to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.

### Article III

The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:

*(Registered Agent Name & Address)*
Sean Kingi Brown Esq



State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and approved on 1, February 2017 in the office of the Division and hereby issues this Certification thereof.



KATHY BERG
Division Director

### Article IV

*Name, Street address & Signature of all members/managers*
Member #1
Jashin Howell
2824 N. Power road
Mesa, AZ 85215
Jashin Howell
Signature

Member #2
Mike Force
16192 coastal highway
Lewes, DE 19958
Mike Force
Signature

DATED 1 February, 2017.

## Article V

Management statement
This limited liability company will be managed by its Members

## Article VI

Records required to be kept at the principal office include, but are not limited to the
following:

### Article VI.1

A current list in alphabetical order of the full name
and address of each member and each manager.

### Article VI.2

A copy of the stamped certificate of Organization
and all *certificates of amendments thereto.*

### Article VI.3

Copies of all tax returns and financial statements
of the company for the three most recent years.

### Article VI.4

A copy of the company's operating agreement and minutes of each meeting of members.

## Article VII

The street address of the principal place of business is:
1426 E 750 N 1st floor
orem, UT 84097

## Article VIII

Attachment BBB

The duration of the company shall be

## Article IX
### Manager Manged

Company appoints Mary Dee as a Manager and signer on the bank accounts as well as Sean Brown and Chris Webb as Managers and Signers on the Chase Bank accounts.

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.



## State of California
### Secretary of State

**L**

75
SI

**STATEMENT OF INFORMATION**
(Limited Liability Company)
Filing Fee $20.00. If this is an amendment, see instructions.
IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

**FILED**
Secretary of State
State of California

**JAN 3 0 2015**

21/30/PC
This Space For Filing Use Only

1. LIMITED LIABILITY COMPANY NAME

The Upside, LLC

**File Number and State or Place of Organization**

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION (if formed outside of California) |
|---|---|
| 201502210122 | CA |

**No Change Statement**

4. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no Statement of Information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 15.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 5 and 7 cannot be P.O. Boxes.)

| | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5. STREET ADDRESS OF PRINCIPAL OFFICE | 340 S. Lemon Ave. | Walnut | CA | 91789 |
| 6. MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5 | | | | |
| 7. STREET ADDRESS OF CALIFORNIA OFFICE | 340 S. Lemon Ave. | Walnut | CA | 91789 |

**Name and Complete Address of the Chief Executive Officer, If Any**

| 8. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| | | | | |

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member** (Attach additional pages, if necessary.)

| | NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 9. | Gerard Joseph | 340 S. Lemon Ave. | Walnut | CA | 91789 |
| 10. | Mary Dee | 340 S. Lemon Ave. | Walnut | CA | 91789 |
| 11. | | | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

12. NAME OF AGENT FOR SERVICE OF PROCESS
Legalzoom.com, Inc.  (C2967349)

| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY
Entertainment

15. THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |
|---|---|---|---|
| 01/28/2015 | Cheyenne Moseley | Auth. Rep. | |

LLC-12 (REV 01/2014)   APPROVED BY SECRETARY OF STATE

Attachment CCC

EX 41
2734



# State of California
## Secretary of State

**STATEMENT OF INFORMATION** 75
(Limited Liability Company)

Filing Fee $20.00. If this is an amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
Secretary of State
State of California

**MAR 2 0 2015**

See Secretary of State's records for exact entity name.

NF

This Space For Filing Use Only

| | |
|---|---|
| 1.  LIMITED LIABILITY COMPANY NAME | |
| The Upside LLC. | |

**File Number and State or Place of Organization**

| 2.  SECRETARY OF STATE FILE NUMBER  201502210122 | 3.  STATE OR PLACE OF ORGANIZATION (If formed outside of California)  CA |
|---|---|

**No Change Statement**

4.  If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no Statement of Information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to **Item 15.**

**Complete Addresses for the Following**  (Do not abbreviate the name of the city.  Items 5 and 7 cannot be P.O. Boxes.)

| 5.  STREET ADDRESS OF PRINCIPAL OFFICE | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 340 S Lemon Ave #1976 | Walnut | CA | 91789 |
| 6.  MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5 | CITY | STATE | ZIP CODE |
| | | | |
| 7.  STREET ADDRESS OF CALIFORNIA OFFICE | CITY | STATE | ZIP CODE |
| 340 S Lemon Ave #1976 | Walnut | **CA** | |

**Name and Complete Address of the Chief Executive Officer, If Any**

| 8.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| | | | | |

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member**  (Attach additional pages, if necessary.)

| 9.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| Gerard Joseph | 340 S Lemon Ave #1976 | Walnut | CA | 91789 |
| 10.  Mary Dee | 340 S Lemon Ave #1976 | Walnut | CA | 91789 |
| 11.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
| | | | | |

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable.  If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

| 12.  NAME OF AGENT FOR SERVICE OF PROCESS | | | |
|---|---|---|---|
| Ria Joseph | | | |
| 13.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY  Winchester | STATE  **CA** | ZIP CODE |

**Type of Business**

| 14.  DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
|---|
| Entertainment Production Company |

| 15.  THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT. | | | |
|---|---|---|---|
| 03/15/2015 | Mary Dee | Member | *[signature]* |
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

LLC-12 (REV 01/2014)                                              APPROVED BY SECRETARY OF STATE

Attachment CCC

I hereby certify that the foregoing
transcript of_____*02*_____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.



JUN 3 0 2017

Date:_____ *KB*

ALEX PADILLA, Secretary of State

Attachment CCC