UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS) ORDER RE PRELIMINARY INJUNCTION**

I.    <u>Introduction</u>

On January 29, 2018, the Federal Trade Commission ("FTC") brought this action asserting claims arising from § 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). Dkt. 1. It sought temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement and other equitable relief for acts and practices in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a). Complaint, Dkt. 1 ¶ 1. The Complaint names the following defendants: Digital Altitude LLC ("Digital Altitude"), Digital Altitude Limited ("Digital Altitude UK"), Aspire Processing LLC ("Aspire Processing"), Aspire Processing Limited ("Aspire Processing UK"), Aspire Ventures Ltd ("Aspire Ventures"), Disc Enterprises Inc. ("Disc"), RISE Systems & Enterprise LLC ("RISE Utah"), Rise Systems & Enterprise LLC ("RISE Nevada"), Soar International Limited Liability Company ("Soar"), The Upside, LLC ("Upside"), Thermography for Life, LLC (dba Living Exceptionally, Inc.) ("Thermography") (collectively "Corporate Defendants"), Michael Force ("Force"), Mary Dee ("Dee"), Morgan Johnson ("Johnson"), Alan Moore ("Moore") and Sean Brown ("Brown") (collectively "Individual Defendants").[1]

The FTC filed an ex parte application seeking a temporary restraining order ("TRO") against Defendants and an order to show cause why a preliminary injunction should not issue ("Application" (Dkt. 5)). An *in camera* hearing on the Application was conducted on February 1, 2018. Dkt. 32. Based on a finding of good cause, the Application was granted and a TRO was issued. Dkt. 34. Among other relief, it imposed an asset freeze on Defendants, subjected the Corporate Defendants to the imposition of a temporary receivership, and barred certain affirmative conduct. Dkt. 32, 34. The hearing on the order to show cause as to the request for the issuance of a preliminary injunction was set for February 15, 2018. Dkt. 32.

On February 12, 2018, the parties[2] filed a stipulation to continue the hearing on the preliminary injunction to permit Defendants additional time to "explore the possibility of stipulating to a Preliminary Injunction,

---

[1] The term "Defendants" is used to refer to all Individual and Corporate Defendants.

[2] Disc is the only party that did not join in this stipulation. When it was filed, Disc had not been served. The FTC represents that service of Disc has now been effected. Dkt. 80. However, Disc has not responded to the Complaint or the Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

and, in the event such an agreement cannot be reached, to prepare for a hearing on the matter." Dkt. 58 at 2. The stipulation was approved by an order that adopted the proposed March 5, 2018 date for the hearing on the request for the issuance of a preliminary injunction. Dkt. 61. The TRO was also extended to the same date. *Id.* Prior to the hearing, Moore, Brown, Johnson and Upside each stipulated to the entry of a preliminary injunction as to each of them. Dkt. 74, 76, 85, 103. These stipulations were approved through corresponding orders. Dkt. 90, 91, 92, 107.

On February 27, 2018, Force, Dee, Thermography[3] and Digital Attitude ("Responding Defendants") filed an opposition to the entry of a preliminary injunction. Dkt. 78. Responding Defendants and the FTC submitted requests to permit live testimony during the preliminary injunction hearing. Dkts. 81, 83, 99. An order was issued requiring that declarations presenting direct testimony for each declarant that the parties sought to have present live testimony be submitted, so that the Court could determine whether such testimony was necessary and appropriate. Dkt. 84. Declarations were filed by Dee and Force. Dkt. 95, 96. The FTC had previously submitted declarations for its proposed witnesses, *see* Dkt. 16-2 at 9-59, Dkt. 24, Dkt. 83-1, and it submitted a supplemental declaration for one of these witnesses. Dkt. 97-1. On March 2, 2018, the FTC filed a reply in support of the entry of a preliminary injunction. Dkt. 102.

On March 5, 2018, a hearing was conducted on the preliminary injunction. The Court granted in part the requests to present live testimony, permitting cross-examination and re-direct examination of Force, Dee and the temporary receiver Thomas Seaman ("Seaman" or "Receiver"). Dkt. 106. Pursuant to the consent of the Responding Defendants and the FTC, the hearing and the TRO were continued to March 6, 2018. At the conclusion of the hearing on March 6, 2018, the request for entry of a preliminary injunction was **GRANTED IN PART**, with the basis stated on the record, and with a more detailed, written order to follow.[4]

**II.   Background**

    A.   Parties

        1.   FTC

The FTC is an independent, federal entity whose jurisdiction includes the right to enforce Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). That statute prohibits unfair or deceptive acts or practices in or affecting commerce. Compl. ¶ 8. "The FTC is authorized to initiate federal district court proceedings . . . to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)." Compl. ¶ 9.

---

[3] Thermography is not listed as a party on the pleadings filed in opposition to the request for a preliminary injunction. However, during the hearing, counsel for Responding Defendants stated that they represent Thermography, and that it joins in the opposition.
[4] Digital Altitude UK, Aspire Processing, Aspire Processing UK, Aspire Ventures, Disc, RISE Utah, RISE Nevada, and Soar did not oppose the entry of a preliminary injunction. Accordingly, the preliminary injunction is entered as to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

2. <u>Corporate Defendants</u>

Digital Altitude is a Delaware limited liability company whose principal place of business is in Santa Monica, California. Compl. ¶ 10. Digital Altitude UK is a United Kingdom company that has allegedly been used to open merchant accounts to process consumers' credit card payments to Digital Altitude. *Id.* ¶ 11. Aspire Processing is a Nevada limited liability company that has allegedly been used to open certain merchant and bank accounts on behalf of Digital Altitude. *Id.* ¶ 12.

Aspire Processing UK is a United Kingdom company that allegedly has registered a website that directs consumers to Digital Altitude's website for payment. *Id.* ¶ 13. Aspire Ventures is a United Kingdom company that also allegedly operates a website that directs consumers to Digital Altitude's website for payment. *Id.* ¶ 14. Disc is a Nevada corporation that allegedly has been used to open merchant accounts for processing consumers' credit card payments to Digital Altitude. *Id.* ¶ 15.

RISE Utah is a Utah limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 16. RISE Nevada is a Nevada limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 17. Soar is a Utah limited liability company. Digital Altitude allegedly has used its registered address in at least one account with a payment processor. *Id.* ¶ 18. Upside is a California limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 19. Thermography is a Texas limited liability company that allegedly has been involved in Digital Altitude's allegedly fraudulent scheme since 2016. *Id.* ¶ 20.

3. <u>Individual Defendants</u>

Force is a California resident, the CEO and founder of Digital Altitude, the sole shareholder of Digital Altitude UK, and a member and manager of Soar. *Id.* ¶ 21. Dee is a Texas resident, a member and manager of Aspire Processing, RISE Nevada, and Upside, a manager of Thermography, sole director of Digital Altitude UK, sole shareholder of Aspire Processing UK and an officer of Digital Altitude. *Id.* ¶ 22.

Johnson is a Texas resident, member and manager of RISE Nevada, and an officer of Digital Altitude. *Id.* ¶ 23. Moore is a Massachusetts resident, Chief Technology Officer of Digital Altitude, and Secretary of Aspire Processing UK. *Id.* ¶ 24. Brown is a Utah resident, sole principal of RISE Utah, an officer of Aspire Processing and a member of the board of directors of Digital Altitude. *Id.* ¶ 25.

B.    Allegations in Complaint

The Complaint alleges that Defendants operate a fraudulent scheme that takes advantage of consumers seeking to earn money through online businesses. The Complaint also alleges that Defendants falsely represent to such consumers that they can make large sums of money by applying the techniques and methods that are presented to them through the Digital Altitude digital marketing educational program. Compl. ¶ 4. Defendants allegedly represent through online advertisements and other marketing materials that this program will enable them to "start and grow a profitable online business" and "make six figures online in the next ninety days or less." *Id.*; *see id.* ¶¶ 35-37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

It is also alleged that Defendants represent to customers that they will receive "private and personal one-on-one business coaching" from digital marketing experts who are "making 6-Figures in their own online business." *Id.* ¶¶ 54, 56. Defendants' program consists of a series of tiered membership levels. They are called Aspire, Base, Rise, Ascend, Peak and Apex. For a consumer to have access to each, a membership fee must be paid. The membership fee increases for each of the successive levels. *Id.* ¶¶ 33-34. For example, the monthly fee for membership in the Aspire level is either $47 or $97, the one-time fee for Base is $597 and the one-time fee for Apex is $29,997. *Id.* It is alleged that Defendants charged many consumers more than $50,000 in membership fees and that total customer injury likely exceeds $14 million. *Id.* ¶ 6.

It is alleged that consumers are paid by Digital Altitude "when they recruit new consumers to join the program, in the form of commissions on the new consumers' membership fees," but they can only receive commissions for sales of membership levels they have already purchased themselves. *Id.* ¶ 41. Customers reselling Digital Altitude products are referred to as "affiliates." It is alleged that the vast majority of consumers who pay these fees to Digital Altitude never earn substantial income. Therefore it is alleged that consumers do not earn the "six figure" income promoted throughout Digital Altitude's marketing materials. It is alleged that, of those customers who actively seek to attract new program participants, more than 60% make less than $100 per month in commissions. *Id.* ¶ 46. Thus, the FTC alleges that Defendants' representations as to the earning potential of customers who pay for Digital Altitude membership fees are deceptive.

It is further alleged that Defendants' representations as to the "coaching" are deceptive. *Id.* ¶ 54. The coaches are allegedly salespeople paid on commission to sell Digital Altitude memberships to customers, who are not required to have any industry or coaching qualifications. *Id.* ¶ 55. It is also alleged that the role of the coaches is to upsell customers to each successive tier of Digital Altitude membership, not to provide substantive mentoring or other support to assist customers in developing skills to operate their own digital marketing business. It is also alleged that the materials that are provided by Defendants to consumers who purchase memberships from Defendants, have little educational or business value.

The FTC alleges that, after financial institutions closed Defendants' merchant accounts in light of their suspect business practices and the complaints by consumers who paid fees with credit cards, Defendants opened additional merchant accounts. It is alleged that they did so in the names of third parties to ensure that Defendants could continue to benefit from the processing of credit and debit card payments by these third party entities. *Id.* ¶¶ 59-62. It is also alleged that certain misrepresentations were made to financial institutions to induce them to open such accounts. *Id.* ¶¶ 59-64.

  C.  Terms of the TRO

The TRO provided for the following relief:

- Appointment of a Receiver to control the operations of all corporate Defendants;
- Prohibiting Defendants from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact in connection with the advertising, marketing, promoting, or offering for sale of any goods or services;
- Freezing Defendants' assets;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- Permitting the release of up to $5000 from the frozen assets held by Individual Defendants for their necessary living expenses;
- Prohibiting Defendants and certain third parties from destroying or concealing documents, and from transferring, concealing, or otherwise disposing of assets;
- Requiring Defendants to identify all assets, repatriate assets located outside the United States, and make an accounting of their present financial condition and certain business information;
- Providing for expedited discovery; and
- Requiring Defendants to provide immediate access to their business premises for inspection and preservation of evidence.

Dkt. 34.

        D.    Evidence Presented

           1.    <u>FTC</u>

The FTC presented a significant amount of documentary evidence and numerous declarations in support of the initial Application seeking the issuance of a TRO. *See* Dkts 16-27. The FTC presented further documentary evidence and declarations in support of its request for an entry of a preliminary injunction. *See* Dkts. 102-1, 102-2, 102-3, 102-4. The FTC submitted evidence including, but not limited to, declarations from 24 consumers who had made purchases from Digital Altitude, screenshots of Digital Altitude websites, transcript excerpts from the depositions of Force and Dee, and copies of Digital Altitude's internal marketing materials. At the outset of the hearing, the FTC moved to admit certain of these documents and other evidence, including the Receiver's First Report and Inventory ("Receiver's Report" (Dkt. 93)). Responding Defendants did not object to the admission of such evidence, and it was admitted. *See* Exs. 1-41, 45, 56, 59-82; Dkt. 93.

           2.    <u>Dee</u>

Dee submitted a declaration stating that she is the Chief Operating Officer of Digital Altitude and principal owner of Thermography. The declaration provides an overview of the services provided by Thermography to Digital Altitude and the role it played in creating a merchant account on behalf of, and facilitating certain payment processing for, Digital Altitude. Dkt. 96 ¶¶ 1-21.

She declares that she "had no control over the content of Digital Altitude's videos," which were "handled by a separate team at Digital Altitude." *Id.* ¶ 24. She further declares that she believes the videos are not deceptive, "hundreds of thousands of people . . . purchased Digital Altitude's programs and videos and have benefited from them," and "only a miniscule [sic] number of people were unhappy with Digital Altitude's programs, compared to the thousands of people who were satisfied." *Id.* ¶ 23.

She declares that sub-entities created to facilitate payment processing were established for what Defendants believed were legitimate business purposes. This includes "to help alleviate—not circumvent—the chargeback issue." *Id.* ¶ 26. She further declares that she "had no knowledge of misrepresentations I, or anyone working on my behalf at Digital Altitude, made regarding the products or services that were offered to consumers . . . [or] consumers['] earnings potential." *Id.* ¶¶ 35-36. She

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

declares that she has incurred and will continue to incur significant medical expenses for her treatment for breast cancer. *Id.* ¶¶ 41-44. She declares that if the terms of the proposed preliminary injunction were adopted, it would impose significant hardships on her. *Id.* ¶ 47.

Dee also testified during the preliminary injunction hearing. She was credible as to many matters, but lacked some credibility as to others. This conclusion is supported by her tone, demeanor, evasive answers and conflicting answers. For example, Dee could not provide a clear or responsive explanation as to the different cost estimates she had provided under oath for her monthly medical expenses in her declaration and in her live testimony.[5] For this reason, less weight is given to her testimony about the nature, value and integrity of the Defendants' operations.

Dee testified that she was responsible for the day-to-day operations of Digital Altitude, She also acknowledged that she was aware of its representations that customers could readily earn income of at least $100,000 within 90 days of purchasing services from Defendants. She is also familiar with the business coaching that was provided to such customers.

Dee also testified that she handled certain customer complaints directly and was aware that certain customers complained of alleged deception by Defendants, including as to the value of the teaching materials and services. She testified as to several email exchanges she had with customers of Digital Altitude who lodged complaints about the lack of value of the services provided and the substantial amounts that were charged for them. *See* Exs. 1-3. She testified that two customers who complained received at least a partial refund of the amounts that each had paid. No documentary evidence was introduced that reflected such payments. She testified that less than 1% of customers filed complaints and that she is not aware of all complaints filed with Digital Altitude. No admissible documentary evidence was introduced to support this assertion.

Dee also testified that she knew that Digital Altitude had high chargeback rates and that certain financial institutions had taken actions to limit Digital Altitude's ability to accept and process certain credit card transactions due to concerns over fraud. However, she attributes the high chargeback rates to innocent mistakes made early in the operation of Digital Altitude. Dee also testified about the third-party merchant account arrangements entered into by Digital Altitude after problems arose with its direct merchant accounts. She stated that these third-party arrangements were drafted and entered into with the advice of counsel. She stated that she believed that these arrangements were proper and provided a more efficient means of managing corporate finances.

3.   Force

Force also submitted a declaration. It states he is the CEO and owner of Digital Altitude. He provided statements that present a general overview of Digital Altitude, its products and its commitment to customer service. It also addresses the contracts presented to and signed by customers purchasing

---

[5]  This Order does not include a detailed discussion of Dee's testimony about her medical conditions. This serves to preserve her privacy as to those matters, which were discussed in detail during her testimony. Those portion of the transcript were sealed in order to preserve her medical privacy. A more detailed discussion is also not presented in this Order because, as explained below, she is permitted to petition the Receiver for the release of her funds to cover necessary medical expenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

certain products from Digital Altitude, the conspicuous display of disclaimers, refund policies and terms of service on Defendants' websites, and his involvement in narrating Digital Altitude's videos. Dkt. 95 ¶¶ 1-10. He declares that he has "no knowledge that Digital Altitude has misrepresented goods or services that it provides." *Id.* ¶ 13. No further details are provided to support this conclusory statement. He also declares that the TRO has caused harm to Digital Altitude employees, affiliates and other customers and that if the request for a preliminary injunction is granted, the relief would impose further hardships on him and his family. *Id.* ¶¶ 14-19.

Force testified during the hearing. He was credible as to many, but not all matters. As with Dee, this conclusion is based on an assessment of his tone and demeanor as well as his lengthy, non-responsive answers to questions. It is also based on his answers to questions about his past income in which he stated that he was uncertain and would have to review his tax returns. He was also unable to explain how he covered living expenses in 2013 and 2014, when his prior testimony was that he did not earn income during either of those years. He also provided different statements on these issues in the Defendants' marketing materials that were provided to consumers. He also failed to provide a straightforward answer when asked whether he was the sole owner of Digital Altitude, having made that representation during his deposition testimony. He provided a somewhat evasive answer when asked how many types of coaches existed in the Digital Altitude system, despite providing a clear and direct answer on this issue during his deposition.

Force testified at the hearing that Digital Altitude's coaches provide significant value to consumers by motivating them to remain committed to the Digital Altitude educational program. He testified that Digital Altitude's materials, including the workbooks and videos, have significant educational value. He testified that he narrated the videos on the Digital Altitude website and that he played a role in drafting the scripts for these videos.

He testified that Digital Altitude seeks anonymous feedback from customers as a means of monitoring the performance of coaches. He further testified that he did not review all of these survey responses but that his department heads would review them and present him with trends needing to be addressed. He also testified that Digital Altitude did not analyze how many customers made over $100,000 in 90 days, nor did it analyze whether certain customers were able to make over $1,000,000 by purchasing the highest level membership. He testified that he could not recall any customers who started successful businesses outside of the resale of Digital Altitude products or whether any such customers had made over $100,000 in 90 days through the operation of such an independent business.

>    4.    Seaman

On March 1, 2018, Seaman filed the Receiver's Report. Dkt. 93. The Receiver's Report was admitted into evidence without objection by Defendants. Dkt. 106.[6] The Receiver's Report sets forth findings by Seaman based on the work that he and his staff performed over a one-month period after he was appointed. The Receiver's Report includes findings that, based on a review of Digital Altitude's internal materials, no affiliates reselling Digital Altitude products have received commissions of at least $100,000 during any 90-day period, and that only one affiliate ever received commissions that exceeded $100,000.

---

[6] During the hearing, Seaman testified about the contents of the Receiver's Report, including that based on all of the work that he has performed, he firmly believes that the statements in the Report are true and correct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

It also concludes that Digital Altitude cannot be operated lawfully or profitably, and that such a finding motivated his decision to cease all business operations to preserve the entity's remaining assets so that they could be used to provide restitution and other relief to aggrieved consumers.

Seaman testified during the preliminary injunction hearing. He was very credible. His demeanor and tone support this conclusion. He provided direct answers and did not overstate his knowledge or recollection. He testified that he and his staff have spent considerable time reviewing materials since the initiation of the receivership, and that they had reviewed and jointly discussed thousands of pages of materials.

He also testified about the decision he made to cancel a Digital Altitude event planned for Whistler, British Columbia for February 18, 2018.[7] He testified that the event would require a significant expenditure of Digital Altitude's resources and that it was appropriate to cease the entity's business operations, including such events. He further testified that the coaching call scripts he reviewed contained misleading representations as to earnings potential and that such calls provided little to no educational value to customers. Rather, he testified that such call scripts demonstrated that coaches were instructed to use high-pressure sales techniques. He testified that he has received a significant number of consumer complaints, refund requests and other negative comments about Digital Altitude. He further testified that a considerable investment of time, resources and funds would be necessary to modify or remake Digital Altitude's products so that they could offer some value. He also testified that a review of all of the materials available left him uncertain as to what precise benefits Digital Altitude was seeking to offer its customers.[8] He testified that the educational materials were of no real value, but just restated general and broad business principles.

III.   **Analysis**

A.   Legal Standards

Pursuant to § 13(b) of the FTC Act, an injunction is an available remedy with respect to alleged violations of the statute that are being enforced by the FTC. 15 U.S.C. § 53(b). "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond." *Id.* "Harm to the public interest is presumed." *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989). Section 13(b) also "empowers district courts to grant 'any ancillary relief necessary to accomplish complete justice.'" *FTC v. Commerce Planet*, 815 F.3d 593, 598 (9th Cir. 2016) (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994)). Courts have routinely granted the injunctive relief sought here. *See e.g.*, *FTC v. Bunzai Media Group*, No. 2:15-CV-4527-GW (PLAx), 2015 WL 5305243 (C.D. Cal. Sept. 9, 2015); *see also FTC v. Affordable*

---

[7]   Responding Defendants questioned whether he reviewed two Digital Altitude workbooks prior to making this decision. *See* Ex. 108, 109. He reviewed the documents and stated that he could not recall whether he personally reviewed them, but stated that his staff reviewed documents he did not personally review, and that he discussed with them their content and significance.

[8]   Responding Defendants contend that this statement shows that Seaman's testimony is not credible and that he is not qualified to oversee Digital Altitude. These arguments are not persuasive. Seaman's testimony demonstrates sufficient familiarity with Digital Altitude's business operations. Further, his statements are consistent with an independent review by the Court of the relevant marketing materials.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

*Media, LLC*, 179 F.3d 1228, 1232 & n.2 (9th Cir. 1999); *FTC v. American Nat. Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir. 1987).

To obtain a preliminary injunction, the FTC "need not show irreparable harm." *Affordable Media*, 179 F.3d at 1233. "Under this more lenient standard, 'a court must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities." *Id.* (quoting *FTC v. Warner Comm'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984)). "Because irreparable injury must be presumed in a statutory enforcement action, the district court need only to find some chance of probable success on the merits." *World Wide Factors*, 882 F.2d at 347 (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987)). "Under the second prong of this analysis, public interests are generally entitled to stronger consideration than private interests." *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *2 (E.D. Wash. Aug. 13, 2013) (citing *World Wide Factors*, 882 F.2d at 347) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.")). "Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers and effective relief for the [FTC]." *World Wide Factors*, 882 F.2d at 347.

    B.    Application

        1.    <u>Likelihood of Success on the Merits</u>

            a)    Legal Standards

The Complaint alleges that, in violation of Section 5(a) of the FTC Act, Defendants made misrepresentations regarding earnings and services. Section 5(a) prohibits "[u]nfair methods of competition in or affecting commerce[ ] and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). A misrepresentation may be express or implied. *FTC v. Figgie Int'l*, 994 F.2d 595, 604 (9th Cir. 1993). "[A] practice falls within this prohibition (1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006) (citing *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)).

"A solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures." *Cyberspace.com*, 453 F.3d at 1200; *see also FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) ("Deception may be found based on the 'net impression' created by a representation."). A misrepresentation is likely to mislead consumers if the express or implied statement is false, or if the party making it lacked a reasonable basis for asserting that it was true. *Pantron*, 33 F.3d at 1096. A misrepresentation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201. "Express product claims are presumed to be material." *Pantron*, 33 F.3d at 1095-96.

To establish liability as to Force or Dee arising from the alleged misconduct of Digital Altitude and the other corporate defendants, the FTC must demonstrate that the corporate entity "committed misrepresentations of a kind usually relied on by a reasonably prudent person and resulted in consumer injury," and that the individual person "participated directly in the violations or had authority to control the entities." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014) (citing *FTC v. Publ'g Clearing*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

*House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997)). "[T]he FTC must also show that [the individual defendant] 'had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted.'" *Id.* (quoting *Publ'g Clearing House*, 104 F.3d at 1171). "To satisfy the knowledge requirement, the FTC must show 'that [an individual defendant] had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.' " *Id.* at 1101-02 (quoting *Publ'g Clearing House*, 104 F.3d at 1171). "The FTC need not show that [the individual defendant] intended to defraud consumers in order for [her] to be personally liable." *Id.* at 1102 (citing *Publ'g Clearing House*, 104 F.3d at 1171). "And '[t]he extent of [an individual defendant's] involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability.'" *Id.* (quoting *Affordable Media*, 179 F.3d at 1235).

      b)     Application

           i.     Whether the FTC Met its Burden to Show Misrepresentations to Consumers

The FTC presented substantial evidence to support its claim that Digital Altitude made false representations to customers. This included statements about the amount that customers were likely to earn if they purchased Digital Altitude products, *e.g.,* that they were likely to earn at least $100,000 within the first 90 days of operations after they purchased the products and services of Digital Altitude. Other representations concerned the business coaching services provided to customers, including that customers would be provided with one-on-one business coaching from successful digital marketing entrepreneurs and that this service was a central component to the Digital Altitude program.

The Receiver's Report, the content of which Seaman confirmed during his testimony, states that based upon his review of Digital Altitude internal documents, he concluded that no Digital Altitude affiliate has ever earned $100,000 in commissions in 90 days, and that only one affiliate has ever earned $100,000 in lifetime commissions from Digital Altitude. His review also led him to conclude that most affiliates receive little, if any, income through commissions. The FTC also introduced evidence about certain marketing materials that represented to customers who purchased the Peak level product would be able to grow a business with revenues of six figures to one with revenues of seven-figures. Force testified that he was not aware of any data that supported this claim.

The FTC introduced evidence that the services of Digital Altitude were of little value to those learning to operate an online business, and were primarily focused on persuading customers to purchase more expensive services from Digital Altitude. The evidence included screenshots of Digital Altitude websites and advertisements, transcripts from Digital Altitude videos, which Force narrated, internal marketing materials, the aforementioned 24 consumer declarations and complaints by other customers. During his testimony, Force could not identify the basis upon which the representations about earnings were made. He also testified that that Digital Altitude did not use a data-based approach to tracking the earnings of its affiliates. However, he testified that he had received testimonials from certain customers at Digital Altitude events.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

Defendants argued that declarations from 24 dissatisfied Digital Altitude customers is a very small sample size given the thousands of customers who purchased services. They also argued that there are many satisfied customers. However, very limited evidence was presented by Defendants in support of this claim.[9] The FTC also submitted evidence demonstrating that it received a significant number of customer complaints related to Digital Altitude. Further, the Receiver testified about receiving many complaints from consumers during his short tenure.

The FTC also presented evidence that supported its claim that Digital Altitude's representations as to the expertise, digital marketing experience and income of its coaches were untrue. Force testified that the role of the coaches was to motivate Digital Altitude customers to continue advancing through the steps of the program and that such support was of substantial value to the customers. He compared it to the role of a fitness coach who encourages a client to train effectively. Force did not dispute that coaches encouraged customers to purchase additional services from Defendants by enrolling in successive membership levels. Defendants presented copies of the educational materials provided to customers. They contained certain information about sales, marketing, planning and commitment. The FTC presented competing evidence, including the testimony of the Receiver and the comments of customers, as to the limited value of these generic materials about business operations.

The Receiver testified that, based on a review of Digital Altitude's workbooks, videos and other educational materials, it is his opinion that they offer little value. Force disagreed. He testified that the materials provided useful insights about how to operate successfully in digital marketing, especially for customers with little to no experience in the field. Force testified that customers were able to gain accreditation with the Social Media Marketing University ("SMMU") through their Digital Altitude membership. He said that this is an important example of the educational value provided by Digital Altitude products. However, at his deposition, Force testified that Digital Altitude ended its contract with SMMU because it was not providing any value. Ex. 17.

A consideration of the conflicting testimony as to the value of the educational materials, the relative credibility of the witnesses who provided that testimony, as well as review of the materials themselves, which were introduced as exhibits, shows that for purposes of the request for a preliminary injunction, the FTC's position is more persuasive.

At the outset of the hearing, the Court raised issues with respect to whether the materials provided by Defendants had been used by any customers to develop digital businesses independent of serving as affiliates of Digital Altitude. Defendants' counsel acknowledged that this was a significant issue because it would undermine the claim of the FTC that the Defendants' operations were improper, designed to induce purchases without corresponding value, and established to induce customers to recruit others to purchase the products. Notwithstanding this colloquy, Defendants did not introduce any evidence of such independent, successful business operations by any customer. Force testified that he could not identify any customer who fit into this category.

---

[9] Defendants proffered what was represented to be a summary of certain survey information provided to them by customers. Ex. 110. The objection to the admission of that exhibit was sustained for several reasons, including that the survey itself was not proffered, and no basis for its reliability was presented.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

As noted, Dee testified that two of those identified by the FTC as dissatisfied customers received refunds from Digital Altitude. No documentary evidence was provided to support this statement.

Responding Defendants also argue that their representations are not misleading because Digital Altitude websites contain relevant disclaimers and disclosures and customers sign contracts disclaiming their reliance on any of the challenged representations. This argument is not persuasive. The standard for determining if a misrepresentation is actionable under the FTC Act is whether the "net impression" is "likely to mislead," even when it also "contains truthful disclosures." *Cyberspace.com*, 453 F.3d at 1200. For purposes of the request for the issuance of a preliminary injunction, Responding Defendants have not put forth sufficient evidence to rebut that presented by the FTC that the net impression of Defendants' advertising, marketing and other representations has been misleading.

\*          \*          \*

For the foregoing reasons, the FTC has presented sufficient evidence to support a finding that it is likely to prevail on the merits with respect to whether Responding Defendants made misrepresentations, or ones that were without a reasonable basis to consumers regarding earning potential and business coaching. . Similarly, it has met this burden with respect to whether such misrepresentations were material to the decisions by consumers to purchase Digital Altitude products and services. Finally, it has met this burden as to whether an ordinary customer behaving reasonably under the circumstances would have been misled.

ii.     Individual Liability of Force and Dee

Force testified that he is the CEO and owner of Digital Altitude, participated in drafting the scripts for Digital Altitude videos, narrated all of these videos, and was active role in managing and overseeing Digital Altitude's business operations. Dee testified that she is the COO of Digital Altitude and played an active role in managing and overseeing Digital Altitude's business operations. Force and Dee each declared that he or she was without any actual knowledge of any misrepresentations or intent to make or promote any such misrepresentations. They argue that the FTC has not demonstrated that it can pierce the corporate veil and impose personal liability for conduct of corporate officers acting within the corporate purpose.

The corporate veil doctrine has not been advanced by the FTC as a basis for liability. Rather, as noted under the FTC Act, an individual defendant may be liable if he or she "had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted.'" *Grant Connect*, 763 F.3d at 1101 (quoting *Publ'g Clearing House*, 104 F.3d at 1171). For purposes of the motion for a preliminary injunction, the FTC has presented sufficient evidence on this issue. Thus, it has shown a likelihood of success on the merits that Force and Dee each "had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id.* at 1101-02 (quoting *Publ'g Clearing House*, 104 F.3d at 1171). Further, control over entities involved in a fraudulent scheme "establishes strong evidence of . . . knowledge," and "[t]he extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability." *Affordable Media*, 179 F.3d at 1235.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
| --- | --- | --- | --- |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

The evidence as to the potential liability of Force and Dee included that each held a high position within Digital Altitude, through which each carried out substantial, day-to-day oversight, management and control of its operations. It also met the applicable standard as to whether each was aware of the nature of the representations being made to consumers. For example, each was integral to the operations of Digital Altitude and oversaw the work of others. Force was an active owner. He participated in preparing the materials at issue, appeared on all of the relevant videos and presented at conferences operated by Defendants. The evidence also supported the assertion that Dee was very active in overseeing her staff and the operations of Digital Altitude.

The evidence was also sufficient to meet the current standard about knowledge of the misrepresentations that were made to consumers. Neither Force nor Dee could identify the basis for the claim that Digital Altitude customers could earn a six-figure income in less than 90 days of purchasing its services and products. Nor did either present evidence about taking any steps to substantiate those representations.

Dee testified about her communications with customers who had complained about the representations made, and services and products provided, by Digital Altitude. She also testified that she was aware that Digital Altitude had problems with high chargeback rates due to consumer dissatisfaction, that payment processors had terminated certain Digital Altitude merchant accounts, and that Digital Altitude was placed on certain lists by credit card processors for identifying high-fraud-risk entities.

Force and Dee each testified about the substantial positive feedback that they had received from many customers. Force testified about steps that were taken to terminate certain coaches who did not meet the high standards that Digital Altitude imposed on their performance. He also testified about the process pursuant to which consumers could provide anonymous reviews of coaches. This testimony is consistent with that offered by the FTC as to the substantial role that Force and Dee played in the operations of Digital Altitude. Under the current evidentiary standards, it was not sufficient to rebut the evidence presented by the FTC as to the alleged deception of consumers.

*          *          *

For the foregoing reasons, the FTC has presented sufficient evidence to support a finding that it is likely to prevail on the merits with respect to whether Force and Dee are liable for the alleged violations of Digital Altitude.

2.    <u>Balance of the Equities</u>

a)    Legal Standards

"[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *Affordable Media*, 179 F.3d at 1236 (quoting *World Wide Factors*, 882 F.2d at 347). "[T]he public interest in preserving the illicit proceeds of [a fraudulent business scheme] for restitution to the victims is great." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

b)    Application

Responding Defendants argue that the balance of equities weighs against entry of the preliminary injunction. They argue that continuing the receivership and asset freeze would harm the consumers the FTC is seeking to protect. Specifically, they argue that Digital Altitude would be precluded from paying affiliates their earned commissions, consumers would not receive the products and services purchased from Digital Altitude, and consumers would not be able to attend the Digital Altitude events for which they may already have made financial commitments. Responding Defendants also contend that the private hardships imposed on Force and Dee are significant. Force and Dee each refers to the difficulty each will have in meeting personal and family expenses if their assets remain frozen. As noted, Dee presented evidence about her current, serious health condition, and the expenses she will incur in addressing it.

The FTC argues that the public interest in the requested relief outweighs these private interests. It contends that the preliminary injunction is necessary to prevent further unlawful business practices that mislead thousands of consumers. It also contends that, absent the entry of the requested injunctive relief, such consumers will continue to make payments to Defendants for services and products that have no value.

The FTC also contends that the asset freeze is warranted to maintain funds that can be used to provide restitution to consumers who have been deceived by Defendants. Based on the Receiver's Report, the FTC argues that collectively, consumers may be entitled to receive restitution of as much as $50 million. The Receiver's Report states that the current assets of Responding Defendants total approximately $2 million.

A balancing of these hardships favors the entry of a preliminary injunction. The public interest is to "receive greater weight," *Affordable Media*, 179 F.3d at 1236, and Responding Defendants have not demonstrated that the private interests outweigh this presumption. The need to protect consumers from further potential deception and losses, and to provide a means for restitution to consumers if the FTC ultimately prevails on the merits, outweighs the private interests that have been identified. Further, the most significant hardships identified by Force and Dee concern their respective needs to meet day-to-day and health care expenses. This issue is addressed in the terms of the preliminary injunction, which permits each to apply for the release of funds to meet reasonable expenses.[10]

---

[10] Responding Defendants have offered to modify certain advertising and marketing representations to address certain issues raised by the FTC. Specifically, they are willing to "place even more conspicuous disclosures on all … websites to prominently feature the differences between the expected earnings of its affiliates and those individuals who do not wish to work with Digital Altitude," "make changes to its more aggressive advertising campaigns," and "cooperate with the FTC to reform their use of [sic] to meet any reasonable requests of the department." Dkt. 78 at 12, 16. These proposals are not sufficient to address all of the issues raised by the evidence that the FTC has presented. Nor does this offer moot the FTC's requests for preliminary and permanent injunctive relief. *See Affordable Media*, 179 F.3d at 1237 ("[A]n action for an injunction does not become moot merely because the conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the defendant's would be free to return to [their] old ways." (quoting *FTC v. Am. Standard Credit Sys., Inc.* 874 F. Supp. 1080, 1087 (C.D. Cal. 1994))). However, the terms of the preliminary injunction include a means by which Defendants can make a proposal for the modification to the business approach and materials of Defendants. The nature of such a proposal, its cost and sources of funding, can all be considered if such an application is presented to the Receiver.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

      3.   <u>Conclusion</u>

The FTC has demonstrated a likelihood of success on the merits and that the balance of equities weighs in favor of entering the preliminary injunction. Therefore, the request for the entry of a preliminary injunction is **GRANTED**.

**IV.   <u>The Terms of the Preliminary Injunction</u>**

      A.   Background

The authority to grant injunctive relief under Section 13(b) includes "all the inherent equitable powers . . . for the proper and complete exercise" of the court's jurisdiction. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982) (citation omitted). This includes the authority to freeze assets, when the party seeking such relief has demonstrated that the assets would likely be dissipated and unavailable for subsequent remedies that may be entered. *Id.* at 1113; *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

The FTC has requested that the preliminary injunction include all terms set forth in the TRO, which include a continuation of the receivership and asset freeze. It argues that Force and Dee should not be permitted to withdraw from the frozen funds to cover living and medical expenses. Responding Defendants argue that any preliminary injunction should be narrowly tailored to prohibit deceptive business practices. They also contend that the FTC has not put forth sufficient evidence to justify the receivership and asset freeze.

Seaman opined that Digital Altitude cannot be operated profitably or lawfully. For these reasons, he concluded that its operations should be suspended in order to preserve available assets. For the reasons stated above, this position has merit. Accordingly, the continuation of the receivership is necessary and appropriate.

The evidence is also sufficient to show that the FTC is likely to prevail on the merits with respect to its claims that Defendants made misrepresentations to financial institutions when creating third-party merchant accounts. This includes the claim that Defendants did so to sidestep the attempts by processors to discontinue services to Digital Altitude. When considered together with the evidence about misrepresentations, harm to consumers, and the roles of the Defendants, an asset freeze is warranted. It will protect the presently available funds that may be applied to restitution or other remedies. The FTC has presented evidence that as much as $50 million may be appropriate as restitution to consumers. The available assets total approximately $2 million.

The request by the FTC that no disbursements can be made by the Receiver to Force or Dee is rejected. Instead, each may apply to the Receiver for disbursements to meet reasonable and necessary living and medical expenses that cannot be covered by the applicant through his or her other assets, income or resources, those of his or her spouse, or those that may be shown to have been transferred by the applicant to another person to avoid potential recovery as to claims like those brought in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

The following sections provide the specific terms of the preliminary injunction.[11]

     B.     Prohibited Business Activities

Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

- Consumers who purchase Defendants' purported money-making opportunities will earn or are likely to earn substantial income;
- Consumers who purchase Defendants' purported money-making opportunities will receive business coaching that will provide what the consumers need to build a successful online business; and
- Any other fact material to consumers concerning any good or service, such as: the total costs; any refund policy; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

     C.     Prohibition on Release of Customer Information

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

- Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and
- Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

---

[11] This Order and the following terms and restrictions apply to Responding Defendants and the defendants who have not opposed the entry of a preliminary injunction, Digital Altitude UK, Aspire Processing, Aspire Processing UK, Aspire Ventures, Disc, RISE Utah, RISE Nevada, and Soar. The other defendants, Johnson, Moore, Brown, and Upside, are subject to the terms of the preliminary injunctions to which each has stipulated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

D.    Asset Freeze

1.    General Requirements

Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

- Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:
  - owned or controlled, directly or indirectly, by any Defendant;
  - held, in part or in whole, for the benefit of any Defendant;
  - in the actual or constructive possession of any Defendant; or
  - owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any Corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.
- Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;
- Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or
- Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant. The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time the TRO was entered; and (2) Assets obtained by Defendants after the TRO was entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order or the TRO. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order, or the unfreezing of limited funds pursuant to this Order.

2.    Availability of Funds Immediately Necessary for Essential Living and Medical Expenses

Force and Dee may petition to the Receiver for release of funds immediately necessary for essential living and medical expenses of such person or his or her dependents or spouse. Any such petition shall identify with specificity the expenses for which the funds are sought as well as appropriate evidence in support of such expenses. The Receiver may exercise his discretion in determining whether such a request is for necessary expenses in an appropriate amount and for which the requesting party has no reasonably available alternative means for payment from his or her other assets, or those of his spouse. In assessing any petition, the Receiver may consider and balance the public interest served by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

preserving the frozen assets for potential relief to consumers should the FTC prevail in this action. In seeking the release of funds, Force and Dee each may elect to petition the Receiver for a release of the same amount of funds each month, with each specifying a monthly amount. This would not preclude specific requests for other expenses during any month. The Receiver may consider such monthly disbursements if he determines that it would be a more efficient means of addressing the request for release of funds. To the extent there is a disagreement between Force and/or Dee and the Receiver as to the amount to be distributed, it may be presented to the Court for resolution.

Upon granting a petition, the Receiver shall notify one or more financial institutions holding funds of the petitioning party, instructing the financial institution(s) to release funds to the petitioning party in the amount requested. Any petitioning party who receives such funds pursuant to such a petition shall document the use of the funds, including by maintaining receipts and other evidence showing how the funds were applied, and providing such receipts or other evidence to the Receiver upon his request.

     E.     Duties of Asset Holders and Other Third Parties

Any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) and that has held, controlled, or maintained custody, through an account or otherwise, of (a) any Document on behalf of any Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (b) any Document or Asset associated with credits, debits or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities, shall:

- Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;
- Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;
- Provide the FTC's counsel and the Receiver, within three (3) business days of receiving a copy of this Order, a sworn statement setting forth:
  - The identification number of each such account or Asset;
  - The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|----------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- o The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and
- Upon the request of the FTC's counsel or the Receiver, promptly provide the FTC's counsel and the Receiver with copies of all records or other Documents pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order, or the unfreezing of funds pursuant to this Order.

   F.      Non-Interference with Repatriation

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

- Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or
- Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

   G.      Consumer Credit Reports

The FTC may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

   H.      Preservation of Records

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

- Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

- Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

    I.    Report of New Business Activity

Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the FTC's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

    J.    Receiver

Thomas Seaman is appointed as receiver of the Receivership Entities with full powers of an equity receiver until further order by this Court. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

    K.    Duties and Authority of Receiver

The Receiver is directed and authorized to accomplish the following:

- Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity.
- Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated.
- Conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|----------|--------------------------|------|---------------|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

- Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

- Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

- Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so.

- Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to the FTC's representatives, agents, and assistants, as well as Defendants and their representatives.

- Enter into and cancel contracts and purchase insurance as advisable or necessary.

- Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities.

- Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order.
- Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;
- Maintain accurate records of all receipts and expenditures incurred as Receiver.
- Allow the FTC's representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.
- Allow the FTC's representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities.
- Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency.
- Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably.
- Report to this Court every 90 days as to: (1) the steps taken by the Receiver to implement the terms of the Order; (2) the value of all assets and sum of all liabilities of the Receivership Entities; (3) the steps the Receiver intends to take in the future to protect receivership assets, recover receivership assets from third parties, and adjust receivership liabilities; and (4) any other matters which the Receiver believes should be brought to the Court's attention.
- If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity.
- If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.
- Consider any petitions submitted by Dee or Force for funds necessary for essential living or medical expenses and transmit appropriate instructions to financial institutions pursuant to this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

L.      Cooperation with Receiver

Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

M.      Non-Interference with Receiver

Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

- Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;
- Transacting any of the business of the Receivership Entities;
- Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or
- Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

N.      Stay of Actions

Except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including, but not limited to:

- Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;
- Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or
- Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

O.    Compensation of Receiver

Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

P.    Distribution of Order by Defendants

Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide the FTC and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

Q.    Outstanding Obligations as Provided by the TRO

To the extent any Defendant has failed to fully satisfy its obligations under the TRO, it shall do so within two days of the issuance of this Order. Such obligations include, but are not limited to, the following:

- Financial Disclosures (Dkt. 34 at 10)
- Foreign Asset Repatriation (*id.* at 10-11)
- Transfer of Receivership Property to Receiver (*id.* at 18-19)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | March 9, 2018 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

- Immediate Access to Business Premises and Records (*id.* at 23-24)
- Provision of Information to Receiver (*id.* at 19)

**V.      Conclusion**

For the reasons stated in this Order, the request for the entry of a preliminary injunction is **GRANTED IN PART**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      ak