IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DIGITAL ALTITUDE LLC, et al.,<br><br>Defendants. | No. 2:18-CV-00729 JAK (MRWx)<br><br>**DEFAULT JUDGMENT AND FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AGAINST DIGITAL ALTITUDE LLC, ASPIRE PROCESSING LLC, DISC ENTERPRISES INC., RISE SYSTEMS AND ENTERPRISE LLC (UTAH), RISE SYSTEMS AND ENTERPRISE LLC (NEVADA), SOAR INTERNATIONAL LIMITED LIABILITY COMPANY, DIGITAL ALTITUDE LIMITED, ASPIRE PROCESSING LIMITED, AND ASPIRE VENTURES LTD**<br>==JS-6== |

This matter comes before the court upon the motion by Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for the entry of a Default Judgment and Permanent Injunction against Digital Altitude LLC, and application for the same against Aspire Processing LLC, Disc Enterprises Inc. ("Disc"), Rise Systems and Enterprise LLC incorporated in Utah ("Rise Utah"), Rise Systems and Enterprise LLC incorporated in Nevada ("Rise Nevada"), Soar International

1

Limited Liability Company ("Soar"), Digital Altitude Limited, Aspire Processing Limited, and Aspire Ventures Ltd (collectively "Defaulting Defendants").

On January 29, 2018, the FTC filed its Complaint for a Permanent Injunction And Other Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) (Dkt. 1). Pursuant to Fed. R. Civ. P. 65(b), the FTC also filed an ex parte application for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Digital Altitude LLC, Digital Altitude Limited, Aspire Processing LLC, Aspire Processing Limited, Aspire Ventures Ltd, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), Soar International Limited Liability Company, The Upside, LLC, Thermography for Life, LLC, also d/b/a Living Exceptionally, Inc. ("Thermography for Life"), Michael Force, Mary Dee, Morgan Johnson, Alan Moore, and Sean Brown (collectively, "Defendants"). Dkt. 5.

The Court granted the application, issuing a temporary restraining order ("TRO") on February 1, 2018, including an asset freeze, appointment of a receiver, immediate access to Defendants' business premises, and other temporary relief. Dkt. 34. The TRO also ordered Defendants to appear on February 15, 2018 and show cause why a preliminary injunction should not issue against them. The parties stipulated to a continuance of the show cause hearing and the court granted that request, extending the TRO and continuing the hearing to March 5, 2018. Dkt. 61.

The FTC timely served all Defendants with the Complaint, TRO application (and supporting documents), and TRO. *See* FTC's Proofs of Service, Dkt. 37 (Digital Altitude LLC), 41 (Dee), 42 (Johnson), 48 (Brown), 49 (Force), 55, 72, & 155 (Aspire Processing Limited), 55, 71, & 155 (Aspire Ventures Ltd), 45, 55, & 155 (Digital Altitude Limited), 46 (Rise Utah), 47 (Soar), 51 (Aspire Processing

LLC), 52 (Rise Nevada), 53 (Thermography for Life), 80 & 80-1 (Disc).[1] Defendants Sean Brown, Alan Moore, Morgan Johnson, and The Upside, LLC stipulated to the entry of Preliminary Injunctions as to them. Dkt. 74 (Moore), 76 (Brown), 85 (Johnson), 103 (Upside). The Court issued Preliminary Injunctions accordingly. Dkt. 92 (Moore), 90 (Brown), 91 (Johnson), 107 (Upside). Defendants Michael Force, Mary Dee, Digital Altitude, LLC, and Thermography for Life opposed issuance of a Preliminary Injunction. The Court held a hearing on the matter on March 5 and 6, 2018, after which it issued a Preliminary Injunction as to all Defendants who had not stipulated to entry of a Preliminary Injunction. Dkt. 108, 111.

On March 30, 2018, the Clerk of Court entered the default of Defendants Aspire Processing LLC, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), and Soar International Limited Liability Company. Dkt. 133.

On May 14, 2018, the FTC filed an application for entry of default as to Defendants Digital Altitude Limited, Aspire Processing Limited, and Aspire Ventures Ltd, and for default judgment against Digital Altitude Limited, Aspire Processing LLC, Aspire Processing Limited, Aspire Ventures Ltd, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), and Soar International Limited Liability Company. Dkt. 163. The Court held a hearing on the application on July 2, 2018, and determined that Defendants Digital Altitude Limited, Aspire Processing Limited, and Aspire Ventures Ltd were in default. Dkt. 183. The Clerk of Court entered the default of Defendants Digital Altitude Limited, Aspire Processing Limited, and Aspire Ventures Ltd on July 5, 2018. Dkt. 186. The FTC submitted additional briefing regarding the provisions of its proposed final order. Dkts. 183, 193. Upon consideration of the application, the supporting filings, and argument at the July 2, 2018 hearing, the Court found that

---

[1] Defendant Moore waived formal service of process. Docket No. 56.

entry of default judgment was warranted against Defendants Digital Altitude Limited, Aspire Processing LLC, Aspire Processing Limited, Aspire Ventures Ltd, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), and Soar International Limited Liability Company. Dkts. 183, 201.

On July 26, 2018, the Court granted a motion for the withdrawal of counsel for Digital Altitude LLC, and ordered that it "shall obtain new counsel and have such counsel enter an appearance in this action on or before August 13, 2018," warning that "[a] failure to do so may result in the striking of [Digital Altitude LLC's] . . . answer[] (Dkts. 114, 116) and the entry of [its] . . . default[]." Dkt. 201 at 12. No counsel has since entered an appearance for Digital Altitude LLC. By order of the Court, on August 14, 2018, the Clerk of Court struck the Answer of Digital Altitude LLC and entered its default. Dkts. 210 & 211. Since that time, Defendant Digital Altitude LLC has made no filings with the Court and has otherwise given no indication it intends to continue to litigate this matter. Also since that time, Michael Force, CEO and owner of Digital Altitude, LLC, has reached a settlement with the FTC in his individual capacity.

Upon Consideration of the FTC's Motion for Entry of Default Judgment Against Defendant Digital Altitude LLC, the Court hereby **GRANTS** the FTC's motion. IT IS FURTHER ORDERED as follows:

## FINDINGS

A.  This Court has jurisdiction over this matter.

B.  The Complaint charges that Defaulting Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

C.  Defaulting Defendants' activities as alleged in the Complaint are in or affecting commerce as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

D.   Defaulting Defendants had proper notice of this lawsuit. Dkt. 37 (Digital Altitude LLC), 55, 72, & 155 (Aspire Processing Limited), 55, 71, & 155 (Aspire Ventures Ltd), 45, 55, & 155 (Digital Altitude Limited), 46 (Rise Utah), 47 (Soar), 51 (Aspire Processing LLC), 52 (Rise Nevada), 80 & 80-1 (Disc).

E.   Defaulting Defendant Digital Altitude, LLC stopped defending this lawsuit in or about July 2018; all other Defaulting Defendants have failed to answer or otherwise respond to the Complaint.

F.   On March 30, 2018, the Clerk of Court entered the default of Defendants Aspire Processing LLC, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), and Soar International Limited Liability Company. Dkt. 133.

G.   On July 5, 2018, the Clerk of Court entered the default of Defendants Digital Altitude Limited, Aspire Processing Limited, and Aspire Ventures Ltd. Dkt. 186.

H.   On August 14, 2018, by order of the Court, the Clerk of Court struck the Answer of Digital Altitude LLC and entered its default. Dkts. 210 & 211.

I.   The FTC is now entitled to default judgment as to Defaulting Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

J.   The allegations in the Complaint are taken as true against Defaulting Defendants. Those allegations establish that Defaulting Defendants are liable for injunctive and equitable monetary relief for violations of Section 5 of the FTC Act, 15 U.S.C. § 45.

K.   Based on the Receiver's analysis, the consumer injury caused by Defaulting Defendants totals at least fifty-four million dollars ($54,000,000). The Commission is therefore entitled to an award of equitable monetary relief against the Defaulting Defendants in this amount.

L.   Entry of this Final Judgment is in the public interest.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A. "**Acquirer**" or "**Acquiring Bank**" means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g., Visa, MasterCard, American Express or Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, products, or anything else of value.

B. "**Business Coaching Program**" means any program, plan, or product, including those related to work-at-home-opportunities, that is represented, expressly or by implication, to train or teach a participant or purchaser how to establish a business or earn money or other consideration through a business or other activity.

C. "**Corporate Defendants**" means Digital Altitude LLC, Digital Altitude Limited, Aspire Processing LLC, Aspire Processing Limited, Aspire Ventures Ltd, Disc Enterprises Inc., RISE Systems & Enterprise LLC (Utah), RISE Systems & Enterprise LLC (Nevada), Soar International Limited Liability Company, The Upside, LLC, and Thermography for Life, LLC, also d/b/a Living Exceptionally, Inc., and each of their subsidiaries, affiliates, successors, and assigns.

D. "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder

and the Merchant; or (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

E. **"Credit Card Sales Draft"** means any record or evidence of a credit card transaction.

F. **"Defendant(s)"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

G. **"Financial Institution"** means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

H. **"Investment Opportunity"** means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

I. **"Merchant"** means (a) any Person or entity engaged in the sale or marketing of any goods or services, or soliciting a charitable contribution, or (b) any Person or entity who applies for or obtains Payment Processing services.

J. **"Merchant Account"** means any account with an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

K. **"Payment Processing"** means providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, remotely created payment orders, remotely created checks, ACH debits, or debit, credit, prepaid, or stored value cards. Whether accomplished through the use of software or

otherwise, Payment Processing includes, among other things: (a) reviewing and approving Merchant applications for Payment Processing services; (b) providing the means to transmit sales transactions data from Merchants to Acquiring Banks or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquiring Banks or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payment orders, remotely created checks, or ACH checks.

  L. "**Person**" means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

  M. "**Receiver**" means the Receiver appointed in Section IV. J of the Preliminary Injunction (Docket No. 111) and any deputy receivers that shall be named by the Receiver.

## ORDER

**I. PROHIBITIONS RELATED TO THE SALE OF BUSINESS COACHING PROGRAMS AND INVESTMENT OPPORTUNITIES**

  IT IS ORDERED that the Defaulting Defendants are permanently restrained and enjoined from:

  A. Creating, advertising, marketing, promoting, offering for sale, or selling, or assisting others in creating, advertising, marketing, promoting, offering for sale, or selling any Business Coaching Program or any Investment Opportunity;

  B. Holding, directly or through a third-Person, any ownership or other financial interest in any business entity that is creating, advertising, marketing, promoting, offering for sale, or selling, or that assists others in creating, advertising, marketing, promoting, offering for sale, or selling any Business Coaching Program, any Investment Opportunity, or any product to assist in the

creation or development of a Business Coaching Program or an Investment Opportunity.

## II. PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

IT IS FURTHER ORDERED that Defaulting Defendants are permanently restrained and enjoined from:

    A.    Credit Card Laundering;

    B.    Making, or assisting others in making, directly or by implication, any false or misleading statement in order to obtain Payment Processing services;

    C.    Failing to disclose to an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables a Person to accept payments of any kind any material information related to a Merchant Account including, but not limited to, the identity of any owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between an owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third Person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution; and

    D.    Engaging in any tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquiring Bank, or the operators of any payment system, including, but not limited to, tactics such as balancing or distributing sales transactions among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions; or using a shell company to apply for a Merchant Account.

## III. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any good or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

    A.    Consumers who purchase Defaulting Defendants' goods or services will earn or are likely to earn substantial income;

    B.    Consumers who purchase Defaulting Defendants' goods or services will receive business coaching that will provide what the consumers need to build a successful online business; and

    C.    Any other fact material to consumers concerning any good or service, such as: the total costs; any refund policy; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

**IV.    MONETARY JUDGMENT**

    A.    Judgment in the amount of Fifty-Four Million Dollars ($54,000,000) is entered in favor of the Commission against Defaulting Defendants, jointly and severally, as equitable monetary relief.

    B.    Defaulting Defendants are ordered to pay to the Commission Fifty-Four Million Dollars ($54,000,000), less any payment(s) made by or on behalf of any other Defendant to the Commission pursuant to a Final Order in this action as to such Defendant. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

    C.    In partial satisfaction of the judgment against Defaulting Defendants, any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or Person, whether located within the United States or outside the United States, that holds, controls, or maintains frozen

accounts or assets of, on behalf of, or for the benefit of, any Defaulting Defendant shall turn over such account or asset to the FTC, or, if the FTC so designates, the Receiver within 10 days of receiving notice of this Order by any means, including but not limited to via facsimile. Specifically:

    1.    Allied Wallet, Inc. and Allied Wallet Ltd. are ordered, within seven (7) days of entry of this Order, to transfer to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission: all reserve funds and the contents of any other accounts held, controlled, or serviced by Allied Wallet, Inc. or Allied Wallet, Ltd. and associated with any payments processed by, or on behalf of Digital Altitude LLC, including the Merchant Account with the merchant identification number ("MID") ending in 0368 (approximately $285,000).

    2.    WePay, Inc. is ordered, within seven (7) days of entry of this Order, to transfer to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission: all reserve funds or any other accounts held, controlled, or serviced by and associated with any payments processed by, or on behalf of Digital Altitude LLC, including Merchant Accounts with the merchant identification numbers ("MID[s]") ending in 0944 and 5881 (approximately $34,000).

    3.    PayPal Holdings, Inc. is ordered, within seven (7) days of entry of this Order, to transfer to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission: all reserve funds or any other accounts held, controlled, or serviced by and associated with any payments processed by, or on behalf of Digital Altitude LLC, including the account with account number ending in 3737 (approximately $9,000).

    D.    Defaulting Defendants' Taxpayer Identification Numbers (Employer Identification Numbers) may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E. All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F. The asset freeze is modified to permit the payments identified in this Section. Upon completion of those payments, the asset freeze is dissolved as to Defaulting Defendants.

## V. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A. Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defaulting Defendants must provide it, in the form prescribed by the Commission, within 14 days; and

B. Disclosing, using, or benefitting from customer information, including the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, other identifying information, or

| | |
|---|---|
| 1 | any data that enables access to a customer's account (including a credit card, bank |
| 2 | account, or other financial account), that any Defendant obtained prior to entry of |
| 3 | this Order in connection with any activity that pertains to the sale of money- |
| 4 | making opportunities and/or purported educational or coaching products or |
| 5 | services provided online; and |
| 6 |     C.    Failing to destroy such customer information in all forms in their |
| 7 | possession, custody, or control within 30 days after receipt of written direction to |
| 8 | do so from a representative of the Commission. |
| 9 | Provided, however, that customer information need not be disposed of, and |
| 10 | may be disclosed, to the extent requested by a government agency or required by |
| 11 | law, regulation, or court order. |
| 12 | **VI.   COOPERATION** |
| 13 | IT IS FURTHER ORDERED that Defendant Digital Altitude LLC must |
| 14 | fully cooperate with representatives of the Commission in this case and in any |
| 15 | investigation related to or associated with the transactions or the occurrences that |
| 16 | are the subject of the Complaint. Defendant Digital Altitude LLC must provide |
| 17 | truthful and complete information, evidence, and testimony. Defendant Digital |
| 18 | Altitude LLC must cause its officers, employees, representatives, or agents to |
| 19 | appear for interviews, discovery, hearings, trials, and any other proceedings that a |
| 20 | Commission representative may reasonably request upon 14 days written notice, or |
| 21 | other reasonable notice, at such places and times as a Commission representative |
| 22 | may designate, without the service of a subpoena. |
| 23 | **VII.  RECEIVER'S FINAL REPORT AND DISBURSEMENT** |
| 24 | IT IS FURTHER ORDERED that: |
| 25 |     A.    No later than 180 days after entry of this Order, or within 30 days of |
| 26 | the termination of the Receivership over Defendant Thermography for Life, LLC, |
| 27 | also d/b/a Living Exceptionally, Inc., whichever is later, the Receiver shall file and |
| 28 | serve on the parties a report (the "Final Report") to the Court that details the steps |

taken to dissolve the Receivership Estate. The Final Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership. Any party or the Receiver may request that the Court extend the deadline for filing of the Final Report for good cause.

B. No later than 14 days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

C. The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

1. Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

2. Pay all remaining funds to the Commission or its designated agent to reduce the monetary judgment in Section IV.

D. With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental application. If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve funds after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Commission or its designated agent.

E. Any and all uncollected judgments obtained for the benefit of the Defaulting Defendants shall be assigned to the Commission for further collection efforts.

**VIII. ORDER ACKNOWLEDGMENTS**

IT IS FURTHER ORDERED that Defaulting Defendants obtain acknowledgments of receipt of this Order:

A. Each Defaulting Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. From each individual or entity to which a Defaulting Defendant delivered a copy of this Order, that Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**IX. COMPLIANCE REPORTING**

IT IS FURTHER ORDERED that Defaulting Defendants make timely submissions to the Commission:

A. One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Defaulting Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B. For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defaulting Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:

creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Digital Altitude, et al. (Digital Altitude LLC), No. X180021.

## X. RECORDKEEPING

IT IS FURTHER ORDERED that Defaulting Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defaulting Defendants must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone

numbers; job title or position; dates of service; and (if applicable) the reason for termination;

    C. records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

    D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

    E. a copy of each unique advertisement or other marketing material.

**XI. COMPLIANCE MONITORING**

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant Digital Altitude LLC's compliance with this Order, including the financial representations upon which part of the judgment was suspended, and any failure to transfer any assets as required by this Order:

    A. Within 14 days of receipt of a written request from a representative of the Commission, Defendant Digital Altitude LLC must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

    B. For matters concerning this Order, the Commission is authorized to communicate directly with Defendant Digital Altitude LLC. Defendant Digital Altitude LLC must permit representatives of the Commission to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

    C. The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant Digital Altitude LLC or any individual or entity affiliated with

Defendant Digital Altitude LLC, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**XII.  RETENTION OF JURISDICTION**

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  March 6, 2019

JOHN A. KRONSTADT
UNITED STATES DISTRICT JUDGE