UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Patricia Blunt | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:     (IN CHAMBERS) RECEIVER'S THIRD FEE APPLICATION (DKT. 314);**

**RECEIVER'S MOTION FOR APPROVAL TO PAY INTERIM FEES AND COSTS TO RECEIVER'S COUNSEL, LOEB & LOEB, LLP (DKT. 315)**

I.    **Introduction**

On January 29, 2018, the Federal Trade Commission ("FTC") brought this civil enforcement action under section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Complaint alleges that Defendants committed certain unfair and deceptive trade practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Dkt. 1. The FTC sought temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement and other equitable relief. The Complaint names the following defendants: Digital Altitude LLC ("Digital Altitude"), Digital Altitude Limited ("Digital Altitude UK"), Aspire Processing LLC ("Aspire Processing"), Aspire Processing Limited ("Aspire Processing UK"), Aspire Ventures Ltd ("Aspire Ventures"), Disc Enterprises Inc. ("Disc"), RISE Systems & Enterprise LLC ("RISE Utah"), Rise Systems & Enterprise LLC ("RISE Nevada"), Soar International Limited Liability Company ("Soar"), The Upside, LLC ("Upside"), Thermography for Life, LLC (d/b/a Living Exceptionally, Inc.) ("Thermography") (collectively, the "Corporate Defendants"), Michael Force ("Force"), Mary Dee ("Dee"), Morgan Johnson ("Johnson"), Alan Moore ("Moore") and Sean Brown ("Brown") (collectively, the "Individual Defendants").

On February 1, 2018, an *ex parte* temporary restraining order ("TRO") was entered that froze the assets of all defendants in this action and established a receivership as to certain entities. Dkts. 32, 34. Thomas Seaman ("Seaman" or "Receiver") was appointed as receiver. Dkt. 34 at 13. On March 6, 2018, after a two-day hearing was concluded, a preliminary injunction was entered as to all defendants. It continued many of the terms of the TRO with respect to the asset freeze and receivership. Dkt. 111.

On April 6, 2018, Seaman filed an application for payment of $137,886 in fees and expenses incurred through March 31, 2018 ("First Receiver Fee Application" (Dkt. 143)). He also filed a motion for approval to pay counsel that has represented him in this matter, Loeb & Loeb, LLP ("Loeb"), $62,200.00 in attorney's fees and $774.51 in costs ("First Loeb Fee Motion" (Dkt. 144)). The FTC filed a notice of non-opposition to both fee requests. Dkt. 153. On July 2, 2018, a hearing was held on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

First Receiver Fee Application and the First Loeb Fee Motion, and each was granted. Dkt. 183 at 3.

On October 25, 2018, Seaman filed a second interim request for payment of $71,971.51 in fees and expenses incurred between April 1, 2018 and September 30, 2018 ("Second Receiver Fee Application" (Dkt. 252)). He also filed a motion for approval to pay to Loeb $70,464.00 for attorney's fees and $329.89 in costs incurred between April 1, 2018 and August 31, 2018 ("Second Loeb Fee Motion" (Dkt. 253)). Neither the Second Receiver Fee Application nor the Second Loeb Fee Motion was opposed. It was determined that the issues presented by these matters were appropriate for decision without oral argument. Dkt. 268; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. The Second Receiver Fee Application was granted and the Second Loeb Fee Motion was granted in part, with a reduction in the billing rate of Fiona McKeown ("McKeown") from $375/hour to $300/hour. Dkt. 279.

On August 15, 2019, Seaman filed a Receivers' Fifth Report to inform the Court and interested parties about the status of his activities and his preliminary findings. Dkt. 313. On the same date, Seaman filed a third interim request for payment of $29,758.00 in fees incurred between October 1, 2018 and July 31, 2019 ("Third Receiver Fee Application" (Dkt. 314)). On the same date, Seaman also filed a motion for approval to pay to Loeb $87,755.50 in fees and $1,301.22 in costs incurred between September 1, 2018 and July 31, 2019 ("Third Loeb Fee Motion" (Dkt. 315)). The Third Receiver Fee Application and Third Loeb Fee Motion were unopposed. It was determined that the issues presented by these matters were appropriate for decision without oral argument. Dkt. 317; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated in this Order, the Third Receiver Fee Application is **GRANTED** and the Third Loeb Fee Motion is **GRANTED**.

II.    **Factual Background**

    A.    The Parties

        1.    FTC

The FTC is a regulatory entity whose jurisdiction includes the enforcement of section 5(a) of the FTC Act, 15 U.S.C. § 45(a). That statute prohibits unfair or deceptive acts or practices in or affecting commerce. Dkt. 1 ¶ 8. "The FTC is authorized to initiate federal district court proceedings . . . to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)." *Id.* ¶ 9.

        2.    Defendants

Digital Altitude is a Delaware limited liability company whose principal place of business is in Santa Monica, California. *Id.* ¶ 10. Thermography is a Texas limited liability company. *Id.* ¶ 20. It is alleged that Thermography has been associated with Digital Altitude's operation since 2016. *Id.*

Force is a California resident, the CEO and founder of Digital Altitude, the sole shareholder of Digital Altitude UK, and a member and manager of Soar. *Id.* ¶ 21. Dee is a Texas resident, a member and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

manager of Aspire Processing, RISE Nevada, and Upside, a manager of Thermography, sole director of Digital Altitude UK, sole shareholder of Aspire Processing UK and an officer of Digital Altitude. *Id.* ¶ 22.

Aspire Processing is a Nevada limited liability company. It is alleged that it was used as a vehicle to open certain merchant and bank accounts on behalf of Digital Altitude. *Id.* ¶ 12. Disc is a Nevada corporation that allegedly has been used to open merchant accounts for processing consumers' credit card payments to Digital Altitude. *Id.* ¶ 15. RISE Utah is a Utah limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 16. RISE Nevada is a Nevada limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 17. Soar is a Utah limited liability company. Digital Altitude allegedly has used its registered address in at least one account with a payment processor. *Id.* ¶ 18.

Aspire Processing UK is a United Kingdom company. It is alleged that it has registered a website that directs consumers to Digital Altitude's website for payment. *Id.* ¶ 13. Aspire Ventures is a United Kingdom company that also allegedly operates a website that directs consumers to Digital Altitude's website for payment. *Id.* ¶ 14. Digital Altitude UK is a United Kingdom company that has allegedly been used to open merchant accounts to process consumers' credit card payments to Digital Altitude. *Id.* ¶ 11.

Johnson is a Texas resident, member and manager of RISE Nevada, and an officer of Digital Attitude. *Id.* ¶ 23. Moore is a Massachusetts resident, Chief Technology Officer of Digital Altitude, and Secretary of Aspire Processing UK. *Id.* ¶ 24. Brown is a Utah resident, sole principal of RISE Utah, an officer of Aspire Processing and a member of the board of directors of Digital Altitude. *Id.* ¶ 25. Upside is a California limited liability company that allegedly has been used to open merchant accounts for processing consumers' credit card payments on behalf of Digital Altitude. *Id.* ¶ 19.

       3.      <u>Third Party</u>

Some of the fees and expenses requested in the Third Receiver Fee Application and Third Loeb Fee Motion pertain to a third party, Paradise Media Ventures, LLC ("PMV"). As explained in the Court's July 5, 2019 order, PMV and Digital Altitude on August 5, 2016 entered into a licensing agreement for Digital Altitude's use of certain PMV educational materials. Dkt. 310 at 2-4. Receiver believes that Digital Altitude overpaid PMV by $515,000; PMV contests this alleged overpayment. Dkt. 310 at 4-5.

Receiver unsuccessfully moved for an order from this court directing PMV to disgorge $515,000 in alleged overpayments and to place the funds in a constructive trust. Dkt. 290-1. Although the Court denied the motion (Dkt. 310), the Court reappointed Seaman as Receiver, so that he may give notice of his appointment in Georgia and purse a disgorgement action in Georgia state court. Dkt. 311. Receiver gave notice of his appointment in Georgia and "is preparing a complaint for filing in State court" to recover the $515,000 at issue. Dkt. 313 at 4.

      B.      Allegations of Fraud

The Complaint alleges that Defendants operate a fraudulent scheme that takes advantage of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

consumers seeking to earn money through online businesses. The Complaint also alleges that Defendants falsely represent to such consumers that they can generate substantial revenues by applying the techniques and methods that are presented to them through the Digital Altitude marketing educational program. *Id.* ¶ 4. Defendants allegedly represent through online advertisements and other marketing materials that this program will enable users to "start and grow a profitable online business" and "make six figures online in the next ninety days or less." *Id.*; *see id.* ¶¶ 35-37.

It is also alleged that Defendants represent to customers that they will receive "private and personal one-on-one business coaching" from digital marketing experts who are "making 6-Figures in their own online business." *Id.* ¶¶ 54, 56. Defendants' program has a series of tiered membership levels. They are called Aspire, Base, Rise, Ascend, Peak and Apex. A customer must pay a separate fee to obtain access to each level. The membership fee increases for each level. *Id.* ¶¶ 33-34. For example, the monthly fee for membership in the Aspire level is either $47 or $97, the one-time fee for Base is $597 and the one-time fee for Apex is $29,997. *Id.* It is alleged that Defendants charged many consumers more than $50,000 in membership fees and that total customer injury likely exceeds $14 million. *Id.* ¶ 6.

It is alleged that consumers are paid by Digital Altitude "when they recruit new consumers to join the program, in the form of commissions on the new consumers' membership fees," but they can only receive commissions for sales of membership levels they have already purchased themselves. *Id.* ¶ 41. Customers reselling Digital Altitude products are referred to as "affiliates." It is alleged that the vast majority of consumers who pay these fees to Digital Altitude never earn substantial income. Therefore, it is alleged that consumers do not earn the "six figure" income promoted throughout Digital Altitude's marketing materials. It is alleged that, of those customers who actively seek to attract new program participants, more than 60% make less than $100 per month in commissions. *Id.* ¶ 46. Thus, the FTC alleges that Defendants' representations are deceptive as to the earning potential and benefits to customers who pay for Digital Altitude membership fees.

It is further alleged that Defendants' representations as to "coaching" are deceptive. *Id.* ¶ 54. The coaches are allegedly salespeople paid on commission to sell Digital Altitude memberships to customers. To qualify as a coach, a person need not have any industry or related qualifications. *Id.* ¶ 55. It is also alleged that the role of the coaches is to upsell customers to each successive tier of Digital Altitude membership, not to provide substantive mentoring or other support to assist customers in developing skills to operate their own digital marketing business. It is also alleged that the materials that are provided by Defendants to consumers who purchase memberships from Defendants have little educational or business value.

The FTC alleges that financial institutions closed Defendants' merchant accounts in light of their suspect business practices and the complaints by consumers who paid fees with credit cards. Thereafter, Defendants allegedly opened additional merchant accounts. It is alleged that they did so in the names of third parties to ensure that Defendants could continue to benefit from the processing of credit and debit card payments by these third-party entities. *Id.* ¶¶ 59-62. It is also alleged that certain misrepresentations were made to financial institutions to induce them to open such accounts. *Id.* ¶¶ 59-64.

      C.      Remedies Sought in the Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

The Complaint sought temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement and other equitable relief for acts and practices in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.* ¶ 1.

III.   **Analysis**

    A.   Receiver Fee Application

        1.   Legal Standards

A district court "has full power to fix the compensation of [a] receiver and the compensation of the receiver's attorney or attorneys," and "appellate courts are not much inclined to interfere with the exercise of this discretionary power." *Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934); *see Presidio Mining Co. v. Overton*, 286 F. 848 (9th Cir. 1923). *But see SEC v. J.T. Wallenbrock & Assocs.*, 584 F. App'x 424, 425 (9th Cir. 2014) (reversing district court's denial of fees for receiver who provided "billing statements to establish that the fees were reasonable"). When determining compensation for a receiver, a court may consider, *inter alia*, the amount and quality of labor performed, the difficulty and novelty of legal problems solved, the reasonableness of the contingent fee, the value of property recovered, and the successful results. *Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944).

        2.   Previous Order from this Court

The TRO, issued on February 1, 2018, appointed Seaman as Receiver on a temporary basis. Dkt. 34. It provided:

> Receiver and all personnel hired by the Receiver as herein authorized . . . are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.

        3.   Analysis

The Third Receiver Fee Application seeks authorization to withdraw $29,758.00 from the frozen assets for fees incurred from October 1, 2018, through July 31, 2019. Dkt. 314 at 3. The Receiver states that he seeks reimbursement for the following tasks that he and his staff have performed:

- Supported the FTC by providing accounting information in support of final judgments and settlements with the named defendants;
- Complied with subpoenas for records of the receivership entities;
- Continued efforts to recover funds from merchant account reserves;
- Liquidated certain personal property in connection with final judgments; and
- Continued efforts for the return of $515,000 inadvertently overpaid to Paradise Media Ventures.

*Id.* at 3-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

In support of the Third Receiver Fee Application, the Receiver submitted itemized billing records and analyses of the services provided, which are organized by activity. Dkt. 314-1. The summary of the data presented by the Receiver is reproduced here:

| Timekeeper | Hours | Rate | Cost |
|---|---|---|---|
| Thomas Seaman (receiver) | 22.5 | $400 | $9,000.00 |
| Alison Juroe (project manager) | 39.5 | $210 | $8,295.00 |
| Darren Clevenger (project manager) | 32.7 | $170 | $5,559.00 |
| Timothy McDonnell (project manager) | 35.0 | $160 | $5,600.00 |
| Administrative Assistants | 16.4 | $80 | $1,304.00 |
| **Total** | **146.1** | | **$29,758.00** |
| **Weighted Average Rate** | | **$204** | |

| Task | Hours | Average Rate | Amount |
|---|---|---|---|
| Accounting and Reporting | 33.7 | $180 | $6,056.00 |
| Consumer Relations | 14.0 | $155 | $2,176.00 |
| Litigation & Support | 2.8 | $113 | $315.00 |
| Project Management | 50.4 | $182 | $9,197.00 |
| Receiver | 22.5 | $400 | $9,000.00 |
| Receivership Administration | 6.4 | $79 | $504.00 |
| Research Files | 1.4 | $170 | $238.00 |
| Sell Liquidate Assets | 12.0 | $170 | $2,040.00 |
| Takeover Property | 2.9 | $80 | $232.00 |
| **Total** | **146.1** | | **$29,758.00** |
| **Weighted Average Rate** | | **$204** | |

As noted, the terms of the TRO and preliminary injunction include that the "Receiver and all personnel hired by the Receiver . . . are entitled to reasonable compensation for performance of duties pursuant to this Order," with these amounts to be paid from the Defendants' frozen assets. Dkt. 34 at 22; Dkt. 111 at 24.

A review of the detailed materials submitted by the Receiver, as well as the Receiver's Fifth Report (Dkt. 313), confirms that compensation for all identified services provided between October 1, 2018 and July 31, 2019 is appropriate. The review also shows that the hourly rates charged by the Receiver and his staff are reasonable; that duplicative and unnecessary work was not performed; that the issues addressed by Receiver and his staff required all of the work performed; and that they were successful in taking control of business entities and assets in accordance with the prior Orders issued in this action. Although the Receiver was unsuccessful in his motion for an order to compel PMV to disgorge $515,000 in alleged overpayments, the Receiver diligently pursued these funds by preparing an action in a Georgia state court. The data also shows that more than 84% of all services were completed by the Receiver's staff, whose hourly billing rates were significantly lower than his. This confirms that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

Receiver was effective in delegating work in a manner that would reduce the total amount of fees. The weighted average rate is $204, which is lower than the blended hourly rate of $210 agreed to between Receiver and the FTC. Dkt. 314 at 5.

For the foregoing reasons, the Third Receiver Fee Application is **GRANTED**, and a corresponding withdrawal of $29,758.00 may be made by the Receiver from the available funds.

      B.     Third Loeb Fee Motion

          1.     Legal Standards

A court overseeing litigation is charged with determining the reasonableness of a request for an award of attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The reasonableness is measured, in part, by applying the "lodestar" approach:

> The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it.

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal citations and quotation marks omitted).

Courts rely on the "*Kerr* factors" when assessing the reasonableness of the lodestar figure. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). These factors are as follows:

> (i) the time and labor required, (ii) the novelty and difficulty of the questions involved, (iii) the skill requisite to perform the legal service properly, (iv) the preclusion of other employment by the attorney due to acceptance of the case, (v) the customary fee, (vi) whether the fee is fixed or contingent, (vii) time limitations imposed by the client or the circumstances, (viii) the amount involved and the results obtained, (ix) the experience, reputation, and ability of the attorneys, (x) the "undesirability" of the case, (xi) the nature and length of the professional relationship with the client, and (xii) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

In applying the reasonableness standard to the hours worked by counsel for which an award is sought, those that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "Employing multiple attorneys or firms is not per se unreasonable." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010). If, however, "two or more attorneys have duplicated each other's work, then the number of hours submitted should be reduced, since some of the work was unnecessary and the time claimed would therefore be unreasonable." *Id.* (quoting *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984)). Additionally, "hours that are billed in block-format may be reduced." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, No. 2:11-CV-03838-ODW, 2015 WL 1470796, at *2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

(C.D. Cal. Mar. 31, 2015).

To determine the reasonableness of an attorney's hourly rate, it is appropriate to consider evidence as to the billing rates charged by other counsel of comparable reputation for similar work in the same geographic area. *Welch*, 480 F.3d at 946. "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* at 945-46. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

    2.    <u>Application</u>

The TRO and preliminary injunction order each states that "all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them," to be paid from Defendants' frozen assets. Dkt. 34 at 22; Dkt. 111 at 24. The Receiver retained Loeb to "represent him and assist him in carrying out his duties in this matter." Dkt. 315 at 5. The Receiver states that he selected this firm "based upon Loeb's strong experience and reputation in the area of representation of receivers in matters such as this," and "upon [Loeb's] offer of significant reductions in [its] standard rates for this representation." *Id.*

The Receiver seeks approval for the payment of $87,755.50 in fees charged by Loeb for the services it provided between September 1, 2018 through July 31, 2019, and $1,301.22 for costs incurred in connection with this representation. *Id.* at 3. In support of this request, Loeb has submitted biographies for the three attorneys who worked on the matter, partially redacted itemized billing invoices for services performed, line-item list of expenses incurred, and summary tables of the services that have been provided. *See* Dkts. 316-1 to 316-6. These materials reflect that Loeb provided the following services:

- Assisted the Receiver in the dispute with respect to the alleged overpayment to PMV, including a motion for disgorgement/turnover of the funds, and a motion to reappoint the receiver;
- Assisted the Receiver in his ongoing efforts to investigate potential claims that the receivership entities may hold against certain third parties;
- Prepared and filed the Receiver's periodic reports and fee applications on behalf of himself and Loeb;
- Evaluated and responded to an argument by the FTC that certain of the receivership entities had waived the attorney-client privilege with respect to certain matters; and
- Addressed a class action filed against Digital Altitude.

Dkt. 315 at 6.

Two Loeb partners, Lance N. Jurich ("Jurich") and Benjamin R. King ("King"), as well as senior counsel Daniel Friedman ("Friedman"), provided services to the Receiver. Jurich's standard hourly billing rate is $900, but that rate was reduced to $695 in this matter. *Id.* at 6. King's standard hourly billing rate is $775, but that rate was reduced to $595 in this matter. *Id.* at 7. Friedman's standard hourly billing rate is $750, which was reduced to $575 in this matter. Dkts. 253-3, 253-4. Fiona McKeown ("McKeown"), who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

works as a legal assistant at Loeb, also provided certain support services to the Receiver. Her hourly billing rate is $380, which was reduced to $300 in this matter. *Id.*

        a)      Reasonable Hourly Rates

The Court previously approved as reasonable the $695 hourly rate for Jurich, the $595 hourly rate for King, and the $300 hourly rate for McKeown in its order granting the Second Loeb Fee Motion. Dkt. 279 at 10. For the reasons given in the previous order, these rates remain reasonable.

Friedman is senior counsel at Loeb's Los Angeles office with significant experience in complex commercial litigation. Dkt. 316-6 at 2. King declares that Friedman was admitted to the bar in 1992. Dkt. 316 ¶ 10. Friedman's standard hourly billing rate, and the lower rate that he charged in this matter, are similar to those of Jurich and King. The charged rates are also consistent with the rates of other similar counsel in comparable matters that have been litigated in this District. For all of these reasons, it has been established that the hourly rate of $575 for Friedman is reasonable.

For these reasons, the billing rates of $695/hour for Jurich, $595/hour for King, $575/hour for Friedman, and $300/hour for McKeown are approved.

        b)      Reasonable Hours Spent on Tasks

In support of the Third Loeb Fee Motion, Receiver submitted itemized billing invoices and summary tables of services performed. The summary of the data is reproduced in the following table.

| Task | Hours Worked | Hourly Rate Charged | Total |
|---|---|---|---|
| **Receiver's Reports** | | | |
| Benjamin King (partner) | 7.7 | $595.00 | $4,581.50 |
| **Case Monitoring and Review** | | | |
| Lance Jurich (partner) | 0.4 | $695.00 | $278,00 |
| Benjamin King (partner) | 6.2 | $595.00 | $3,689.00 |
| **Fact Gathering** | | | |
| Lance Jurich (partner) | 1.2 | $695.00 | $834.00 |
| Benjamin King (partner) | 1.2 | $595.00 | $714.00 |
| **Return of Funds** | | | |
| Lance Jurich (partner) | 3.4 | $695.00 | $2,363.00 |
| Benjamin King (partner) | 3.1 | $595.00 | $1,844.50 |
| **Souza (PMV) Dispute** | | | |
| Lance M. Zurich (partner) | 7.9 | $695.00 | $5,490.50 |
| Benjamin King (partner) | 63.9 | $595.00 | $38,020.50 |
| Daniel Friedman (senior counsel) | 5.4 | $575.00 | $3,105.00 |
| **Fee Applications (Receiver and Loeb)** | | | |
| Lance Jurich (partner) | 0.4 | $695.00 | $278.00 |
| Benjamin King (partner) | 11.0 | $595.00 | $6,545.00 |
| Fiona McKeown (paralegal) | 19.7 | $370.00 | $5,910.00 |
| **Reappointment of Receiver** | | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

| | | | |
|---|---|---|---|
| Lance Jurich (partner) | 1.2 | $695.00 | $834.00 |
| Benjamin King (partner) | 22.3 | $595.00 | $13,268.50 |
| **Totals** | **155.0** | | **$87,755.50** |

As noted, Loeb, as counsel for Receiver, is entitled to "reasonable compensation" for work performed pursuant to Receiver's "duties" under the TRO and preliminary injunction order. The amount of time spent by Loeb personnel in connection with this matter is reasonable, and the tasks required were performed efficiently.[1] In addition, most of these tasks warranted work by senior attorneys, due to their complexity and unique characteristics.[2] Further, more than 90% of the attorney hours reflect work performed by a Loeb partner or senior counsel with lower rates, and more than 10% of the total hours billed reflect work by a legal assistant. Collectively, this shows that Loeb made reasonable efforts to limit the dollar amount of its fees in this matter.

c)     Reasonable Costs

The Receiver seeks approval for the payment of $1,301.22 for costs incurred by Loeb in connection with this representation between September 1, 2018 and July 31, 2019. The record shows that these costs were incurred for Lexis research, local travel, messenger and courier fees, online research fees for PACER, photocopying and postage expenses, and service fees, for what appears to be UCLA library research. Dkt. 315 at 9; *see* Dkt. 315-1.

These costs are reasonable, and they are customary and expected for this type of representation.

\*               \*               \*

Based on a review of the materials submitted by Receiver and Loeb, and for the reasons stated in this Order, an award of reasonable attorney's fees and expenses is appropriate, consistent with the terms of the TRO and preliminary injunction order. Thus, the Third Loeb Fee Motion is **GRANTED**, and payment of $87,755.50 to Loeb for its fees, $1301.22 to Loeb for its expenses, is approved.

**IV.     Conclusion**

For the reasons stated in this Order, the Third Receiver Fee Application is **GRANTED** and the Third Loeb Fee Motion is **GRANTED**.

---

[1] The Receiver stated that a "review of the invoices that Loeb has provided . . . reflect, in my opinion, an efficient approach to the various tasks I have asked Loeb to undertake." Dkt. 315 at 11. He also states that he "believe[s] Loeb's experience in this matter has avoided the need for significant additional fees that may have been incurred by less experienced counsel in terms of additional research and analysis time which Loeb has performed quickly or avoided the need for altogether." *Id.*

[2] The Receiver stated: "While Loeb has associates who stand ready to assist with this matter, the assistance that the Receiver has required thus far has not been of the type that can be efficiently and effectively handled by an associate. Most, if not all, of the work performed thus far has involved high-level advice requiring a strong background in, and understanding of, receivership law, negotiation, and procedure. This matter has not involved thus far the type of standard litigation activities where associate and paralegal help is most readily utilized . . . ." Dkt. 315 at 7-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00729 JAK (MRWx) | Date | October 5, 2020 |
|---|---|---|---|
| Title | Federal Trade Commission v. Digital Altitude, LLC, et al. | | |

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    PB